# EXHIBIT "G"

# AIA® Document A133™ – 2019

### *Standard Form of Agreement Between Owner and Construction Manager as Constructor* where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price

**AGREEMENT** made as of the «12th» day of «March» in the year «2021 »
*(In words, indicate day, month, and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address, and other information)*

« Scope FLP Pennington SM, LLC »
« One Biscayne Tower »
« 2 South Biscayne Blvd »
« Suite 2000 »
« Miami, FL 33131 »

and the Construction Manager:
*(Name, legal status, address, and other information)*

«Scungio Borst & Associates »
«2 Riverside Drive, Suite 500 »
«Camden, NJ 08103»
P: 856-757-0100 – F:856-757-9115

for the following Project:
*(Name, location, and detailed description)*

«Pennington Medical
«Pennington, NJ»
«Renovation and conversion of an existing multi-floor office building into a medical center.»

The Architect:
*(Name, legal status, address, and other information)*

«Spiezle Architectural Group Inc.»
«1395 Yardville Hamilton Square Road »
« Suite 2A »
« Hamilton, NJ 08691 »

The Owner and Construction Manager agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2017, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**ELECTRONIC COPYING** of any portion of this AIA® Document to another electronic file is prohibited and constitutes a violation of copyright laws as set forth in the footer of this document.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                        (1665748333)

1

TABLE OF ARTICLES

1        INITIAL INFORMATION

2        GENERAL PROVISIONS

3        CONSTRUCTION MANAGER'S RESPONSIBILITIES

4        OWNER'S RESPONSIBILITIES

5        COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

6        COMPENSATION FOR CONSTRUCTION PHASE SERVICES

7        COST OF THE WORK FOR CONSTRUCTION PHASE

8        DISCOUNTS, REBATES, AND REFUNDS

9        SUBCONTRACTS AND OTHER AGREEMENTS

10       ACCOUNTING RECORDS

11       PAYMENTS FOR CONSTRUCTION PHASE SERVICES

12       DISPUTE RESOLUTION

13       TERMINATION OR SUSPENSION

14       MISCELLANEOUS PROVISIONS

15       SCOPE OF THE AGREEMENT

EXHIBIT A  GUARANTEED MAXIMUM PRICE AMENDMENT
EXHIBIT B  INSURANCE AND BONDS
EXHIBIT C  SCHEDULE

ARTICLE 1    INITIAL INFORMATION
§ 1.1 This Agreement is based on the Initial Information set forth in this Section 1.1.
*(For each item in this section, insert the information or a statement such as "not applicable" or "unknown at time of execution.")*

§ 1.1.1 The Owner's program for the Project, as described in Section 4.1.1:
*(Insert the Owner's program, identify documentation that establishes the Owner's program, or state the manner in which the program will be developed.)*

« »

§ 1.1.2 The Project's physical characteristics:
*(Identify or describe pertinent information about the Project's physical characteristics, such as size; location; dimensions; geotechnical reports; site boundaries; topographic surveys; traffic and utility studies; availability of public and private utilities and services; legal description of the site, etc.)*

« First phase of rehabilitation and conversion of an approximate 24,619 SF multi-floor office building into a medical center ("Building"). The First Phase consists of three individual tenant spaces on the first floor, one for Robert Wood Johnson, one for Global Neurosciences Institute ("GNI") and other one for Axiva Infusion, occupying approximately 20,052 SF including but not limited to the common area such as main lobby, training room and corridor. The first phase also included the improvement of exterior areas. »

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                          (1665748333)

**§ 1.1.3** The Owner's budget for the Guaranteed Maximum Price, as defined in Article 6:
*(Provide total and, if known, a line item breakdown.)*

« »

**§ 1.1.4** The Owner's anticipated design and construction milestone dates:

.1    Design phase milestone date and design document deliverable dates are set forth in the Preliminary Schedule attached as Exhibit B, and the List of Deliverables by Phase attached as Exhibit C:

« »

.2    Construction commencement date:

« as set forth in Preliminary Schedule attached as Exhibit C. »

.3    Substantial Completion date or dates:

« as set forth in Preliminary Schedule attached as Exhibit C. »

.4    Other milestone dates:

« as set forth in Preliminary Schedule attached as Exhibit C. »

**§ 1.1.5** The Owner's requirements for accelerated or fast-track scheduling, or phased construction, are set forth below:
*(Identify any requirements for fast-track scheduling or phased construction.)*

« »

**§ 1.1.6** The Owner's anticipated Sustainable Objective for the Project:
*(Identify and describe the Owner's Sustainable Objective for the Project, if any.)*

« N/A »

**§ 1.1.6.1** If the Owner identifies a Sustainable Objective, the Owner and Construction Manager shall complete and incorporate AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, into this Agreement to define the terms, conditions and services related to the Owner's Sustainable Objective. If E234–2019 is incorporated into this agreement, the Owner and Construction Manager shall incorporate the completed E234–2019 into the agreements with the consultants and contractors performing services or Work in any way associated with the Sustainable Objective.

**§ 1.1.7** Other Project information:
*(Identify special characteristics or needs of the Project not provided elsewhere.)*

« The Building will be occupied by GNI on the second floor. The fire safety equipment must be maintained operational during the whole construction period. The restroom, fresh water, Cooling, electricity, the elevator and any equipment or material needed for GNI to use his premise on the second floor must be operational. »

**§ 1.1.8** The Owner identifies the following representative in accordance with Section 4.2:
*(List name, address, and other contact information.)*

« Aldric Jahouel »
« Executive Vice President »
« Flagler Investment Healthcare »
« One Biscayne Tower »
« 2 South Biscayne Blvd »
« Miami, Florida - 33131 »

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                        (1665748333)

3



**§ 1.1.9** The persons or entities, in addition to the Owner's representative, who are required to review the Construction Manager's submittals to the Owner are as follows:
*(List name, address and other contact information.)*

« Aldric Jahouel »
« Executive Vice President »
« Flagler Investment Healthcare »
« One Biscayne Tower »
« 2 South Biscayne Blvd »
« Miami, Florida - 33131 »

**§ 1.1.10** The Owner shall retain the following consultants and contractors:
*(List name, legal status, address, and other contact information.)*

  .1 Geotechnical Engineer:



  .2 Civil Engineer:

   «O'DONNELL & NACCARATO »
   « 701 Market Street »
   « Suite 6000 »
   « Philadelphia, PA - 19106 »
   « (215) 925 - 3788 »

  .3 Other, if any:
   *(List any other consultants retained by the Owner, such as a Project or Program Manager.)*

   « »

**§ 1.1.11** The Architect's representative:
*(List name, address, and other contact information.)*

« Thomas Perrino - CEO »
« Bill Hendrickson – Director of Healthcare »
«Spiezle Architectural Group Inc.»
«1395 Yardville Hamilton Square Road »
« Suite 2A »
« Hamilton, NJ 08691 »

**§ 1.1.12** The Construction Manager identifies the following representative in accordance with Article 3:
*(List name, address, and other contact information.)*

« Jim Buckley – President »
« William Elia – Project Manager »
« Matthew Elicker – Preconstruction Director»
«2 Riverside Drive, Suite 500 »
«Camden, NJ 08103»
P: 856-757-0100 – F:856-757-9115

**§ 1.1.13** The Owner's requirements for the Construction Manager's staffing plan for Preconstruction Services, as required under Section 3.1.9:

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. **WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
**User Notes:** (1665748333)

4



*(List any Owner-specific requirements to be included in the staffing plan.)*

§ **1.1.14** The Owner's requirements for subcontractor procurement for the performance of the Work:
*(List any Owner-specific requirements for subcontractor procurement.)*

Minimum of three quotations by package from three different qualified subcontractor. The construction manager must provide a Bid table analysis with the quantity, unit price and must explain and justify the selection of the subcontractor retained for the work. The Construction Manager must show the subcontractor' contract included exhibit such as drawings, specification and list of qualification.

§ **1.1.15** Other Initial Information on which this Agreement is based:

§ **1.2** The Owner and Construction Manager may rely on the Initial Information. Both parties, however, recognize that such information may materially change, and, in that event, the Owner and the Construction Manager shall appropriately adjust the Project schedule, the Construction Manager's services, and the Construction Manager's compensation. The Owner shall adjust the Owner's budget for the Guaranteed Maximum Price and the Owner's anticipated design and construction milestones, as necessary, to accommodate material changes in the Initial Information.

§ **1.3** Neither the Owner's nor the Construction Manager's representative shall be changed without ten days' prior notice to the other party.

## ARTICLE 2    GENERAL PROVISIONS
§ **2.1 The Contract Documents**
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement, all of which form the Contract and are as fully a part of the Contract as if attached to this Agreement or repeated herein. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, the Contract Documents will also include the documents described in Section 3.2.3 and identified in the Guaranteed Maximum Price Amendment and revisions prepared by the Architect and furnished by the Owner as described in Section 3.2.8. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern unless expressly provided otherwise in another Contract Document to which Construction Manager and Owner are signatory. An enumeration of the Contract Documents, other than a Modification, appears in Article 15.

§**2.1. Order of Precedence.**
If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern. The order of Precedence for Contract interpretation and application purposes shall be as follows: Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Details, Addenda, Change Orders, Change Directives, issued prior to the execution of this Agreement, other documents listed in this Agreement, and Modifications issued after execution of this Agreement, unless otherwise set forth and agreed to by the Parties in writing. As it relates to any item regarding the Guaranteed Maximum Price and the associated Scope of Work or cost of the Work, the Guaranteed Maximum Price Proposal and associated Guaranteed Maximum Price Amendment to the Contract shall take precedence to any other document listed or mentioned herein, unless otherwise set forth and agreed to by the Parties in writing.

§ **2.2 Relationship of the Parties**
The Construction Manager accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Construction Manager's skill and judgment in furthering the interests of the Owner to furnish efficient construction administration, management services, and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish or approve, in a timely manner, information required by the Construction Manager and to make payments to the Construction Manager in accordance with the requirements of the Contract Documents. Construction Manager shall be an independent contractor to the Owner,

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                           (1665748333)

and nothing herein or in any Contract Documents shall be deemed to make the Construction Manager an employee, partner, or joint ventures with the Owner. Nothing contained in this Agreement or in any Contract Document shall be deemed to create a contractual relationship between the Owner and any Subcontractor or Supplier, or third party other than the Construction Manager. Neither the Construction Manager nor any Subcontractor or Supplier will have the authority to create or assume any obligation or liability, express or implied binding upon Owner, nor to act or purport to act as the agent for Owner for any purpose, except to the extent expressly provided in this Agreement.

### § 2.3 General Conditions
§ 2.3.1 For the Preconstruction Phase, AIA Document A201™–2017, General Conditions of the Contract for Construction, shall apply as follows: Section 1.5, Ownership and Use of Documents; Section 1.7, Digital Data Use and Transmission; Section 1.8, Building Information Model Use and Reliance; Section 2.2.4, Confidential Information; Section 3.12.10, Professional Services; Section 10.3, Hazardous Materials; Section 13.1, Governing Law. The term "Contractor" as used in A201–2017 shall mean the Construction Manager.

§ 2.3.2 For the Construction Phase, the general conditions of the contract shall be as set forth in A201–2017, which document is incorporated herein by reference. The term "Contractor" as used in A201–2017 shall mean the Construction Manager.

### ARTICLE 3    CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager's Preconstruction Phase responsibilities are set forth in Sections 3.1 and 3.2, and in the applicable provisions of A201-2017 referenced in Section 2.3.1. The Construction Manager's Construction Phase responsibilities are set forth in Section 3.3. The Owner and Construction Manager may agree, in consultation with the Architect, for the Construction Phase to commence prior to completion of the Preconstruction Phase, in which case, both phases will proceed concurrently. The Construction Manager shall identify a representative authorized to act on behalf of the Construction Manager with respect to the Project.

### § 3.1 Preconstruction Phase

The scope of Preconstruction Services to be provided by the Construction Manager are set forth in the Construction Manager's Pre-Construction Services proposal as accepted by the Owner and attached hereto as

### § 3.1.1 Extent of Responsibility
The Construction Manager shall exercise reasonable care in performing its Preconstruction Services. The Owner and Architect shall be entitled to rely on, and shall not be responsible for, the accuracy, completeness, and timeliness of services and information furnished by the Construction Manager. The Construction Manager, however, does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price. The Construction Manager is not required to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Construction Manager shall promptly report to the Architect and Owner any nonconformity discovered by or made known to the Construction Manager as a request for information in such form as the Architect may require.

§ 3.1.2 The Construction Manager shall provide a preliminary evaluation of the Owner's program, schedule, and construction budget requirements, each in terms of the other.

### § 3.1.3 Consultation
§ 3.1.3.1 The Construction Manager shall schedule and conduct meetings with the Architect and Owner to discuss such matters as procedures, progress, coordination, and scheduling of the Work. The Construction Manager, Architect, Owner, and other Design Consultants, shall jointly participate in recommendations for improvements, selection of materials, and building systems and equipment. The Construction Manager shall also provide recommendations consistent with the Project requirements to the Owner on constructability; availability of materials and labor; time requirements for procurement, installation and construction; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, life-cycle data, and possible cost reductions..

§ 3.1.3.2 The Construction Manager shall advise the Owner and Architect on proposed site use and improvements, selection of materials, building systems, and equipment. The Construction Manager shall also provide recommendations to the Owner and Architect, consistent with the Project requirements, on constructability; availability of materials and labor; time requirements for procurement, installation and construction; prefabrication; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, preliminary budgets, life-cycle data, and

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                    (1665748333)

possible cost reductions. The Construction Manager shall consult with the Architect regarding professional services to be provided by the Construction Manager during the Construction Phase.

### § 3.1.4 Project Schedule

When Project requirements in Section 4.1.1 have been sufficiently identified, the Construction Manager shall prepare and

periodically update a Project schedule for the Architect's review and the Owner's acceptance. The Construction Manager shall obtain the Architect's approval for the portion of the Project schedule relating to the performance of the Architect's services. The Project schedule shall coordinate and integrate the Construction Manager's services, the Architect's services, other Owner consultants' services, and the Owner's responsibilities; and identify items that affect the Project's timely completion. The updated Project schedule shall include the following: submission of the Guaranteed Maximum Price proposal; components of the Work; times of commencement and completion required of each Subcontractor; ordering and delivery of products, including those that must be ordered in advance of construction; and the occupancy requirements of the Owner.

### § 3.1.5 Phased Construction

If requested by Owner, Construction Manager, in consultation with the Architect, shall provide recommendations with regard to accelerated or fast-track scheduling, procurement, and sequencing for phased construction. The Construction Manager shall take into consideration cost reductions, cost information, constructability, provisions for temporary facilities, and procurement and construction scheduling issues. Phasing of construction shall be incorporated into the design and construction documents prepared by the Architect and Design Consultants at the appropriate stage of development of the documents and prior to the Construction Manager's preparation of the corresponding GMP and schedule.

### § 3.1.6 Cost Estimates

§ 3.1.6.1 Based on the preliminary design and other design criteria prepared by the Architect, the Construction Manager shall prepare, for the Architect's review and the Owner's approval, preliminary estimates of the Cost of the Work or the cost of program requirements using area, volume, or similar conceptual estimating techniques. If the Architect or Construction Manager suggests alternative materials and systems, the Construction Manager shall provide cost evaluations of those alternative materials and systems.

§ 3.1.6.2 As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Construction Manager shall prepare and update, at appropriate intervals agreed to by the Owner, Construction Manager and Architect, an estimate of the Cost of the Work with increasing detail and refinement. The Construction Manager shall include in the estimate those costs to allow for the further development of the design, price escalation, and market conditions, until such time as the Owner and Construction Manager agree on a Guaranteed Maximum Price for the Work. The estimate shall be provided for the Architect's review and the Owner's approval. The Construction Manager shall inform the Owner and Architect in the event that the estimate of the Cost of the Work exceeds the latest approved Project budget and make recommendations for corrective action.

§ 3.1.6.3 If the Architect is providing cost estimating services as a Supplemental Service, and a discrepancy exists between the Construction Manager's cost estimates and the Architect's cost estimates, the Construction Manager and the Architect shall work together to reconcile the cost estimates.

§ 3.1.7 As the Architect progresses with the preparation of the Schematic Design, Design Development and Construction Documents, the Construction Manager shall consult with the Owner and Architect and make recommendations regarding constructability and schedules, for the Architect's review and the Owner's approval.

§ 3.1.8 The Construction Manager shall provide recommendations and information to the Owner and Architect regarding equipment, materials, services, and temporary Project facilities.

§ 3.1.9 The Construction Manager shall provide a staffing plan for Preconstruction Phase services for the Owner's review and approval.

§ 3.1.10 If the Owner identified a Sustainable Objective in Article 1, the Construction Manager shall fulfill its Preconstruction Phase responsibilities as required in AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, attached to this Agreement.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                                        (1665748333)

## § 3.1.11 Subcontractors and Suppliers

**§ 3.1.11.1** If the Owner has provided requirements for subcontractor procurement in section 1.1.14, the Construction Manager shall provide a subcontracting plan, addressing the Owner's requirements, for the Owner's review and approval.

**§ 3.1.11.2** The Construction Manager shall develop bidders' interest in the Project. The Construction Manager will award construction subcontracts to those respective bidders which the Construction Manager judges to best serve the interests of the Project, taking into consideration price and all other relevant factors; provided that award to other than the lowest responsible and responsive bidder shall require approval by Owner. The Construction Manager shall enter into subcontracts directly with those subcontractors, and the Construction Manager shall be the single point of responsibility for all construction activities and subcontracts relating to the construction of the Project.

**§ 3.1.11.3** The processes described in Article 9 shall apply if bid packages will be issued during the Preconstruction Phase.

## § 3.1.12 Procurement

The Construction Manager shall prepare, for the Architect's review and the Owner's acceptance, a procurement schedule for items that must be ordered in advance of construction. The Construction Manager shall expedite and coordinate the ordering and delivery of materials that must be ordered in advance of construction. If the Owner agrees to procure any items prior to the establishment of the Guaranteed Maximum Price, the Owner shall procure the items on commercially reasonable terms and conditions acceptable to the Construction Manager. Upon the establishment of the Guaranteed Maximum Price, the Owner shall assign all contracts for these items to the Construction Manager and the Construction Manager shall thereafter accept responsibility for them.

## § 3.1.13 Compliance with Laws

The Construction Manager shall comply with applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to its performance under this Contract, and with equal employment opportunity programs, and other programs as may be required by governmental and quasi-governmental authorities.

## § 3.1.14 Other Preconstruction Services

Insert a description of any other Preconstruction Phase services to be provided by the Construction Manager, or reference an exhibit attached to this document
*(Describe any other Preconstruction Phase services, such as providing cash flow projections, development of a project information management system, early selection or procurement of subcontractors, etc.)*

## § 3.2 Guaranteed Maximum Price Proposal

**§ 3.2.1** At a time to be mutually agreed upon by the Owner and the Construction Manager, the Construction Manager shall prepare a Guaranteed Maximum Price proposal for the Owner's and Architect's review, and the Owner's acceptance. The Guaranteed Maximum Price in the proposal shall be the sum of the Construction Manager's estimate of the Cost of the Work, the Construction Manager's contingency described in Section 3.2.4, and the Construction Manager's Fee described in Section 6.1.2.

**§ 3.2.2** To the extent that the Contract Documents are anticipated to require further development, the Guaranteed Maximum Price includes the costs attributable to such further development consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include unforeseen conditions not reasonably inferable from the design, changes in scope, systems, kinds, and quality of materials, finishes, or equipment, all of which, if required, shall be incorporated by Change Order.

**§ 3.2.3** The Construction Manager shall include with the Guaranteed Maximum Price proposal a written statement of its basis, which shall include the following:

    .1    A list of the Drawings and Specifications, including all Addenda thereto, and the Conditions of the Contract.

    .2    A list of any allowances and the clarifications and assumptions made by the Construction Manager in the preparation of the Guaranteed Maximum Price proposal, including assumptions under Section 3.2.2;

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                          (1665748333)

.3    A statement of the proposed Guaranteed Maximum Price, including a statement of the estimated Cost of the Work organized by trade categories or systems, including allowances; the Construction Manager's contingency set forth in Section 3.2.4; and the Construction Manager's Fee;

.4    The anticipated date of Substantial Completion upon which the proposed Guaranteed Maximum Price is based; and

.5    A date by which the Owner must accept the Guaranteed Maximum Price: and

.6    A breakdown of the items contained in Construction Manager's General Conditions, including a lump sum amount for Construction Manager's staffing.

**§ 3.2.4** In preparing the Construction Manager's Guaranteed Maximum Price proposal, the Construction Manager shall include a contingency for the Construction Manager's exclusive use, subject to Owner's approval and in accordance with §3.2.4.1 to cover those costs that are included in the Guaranteed Maximum Price but not otherwise allocated to another line item or included in a Change Order.

**§3.2.4.1** The CM Contingency shall exist to cover expected but unknown costs that are not detailed in the Guaranteed Maximum Price, or increased costs properly incurred in the performance of the Work which arise after the beginning of the Work and which were and which could not have reasonably been anticipated, but which are not properly considered a Change Order, such as (i) refinement of details of design within the scope and standard of quality and quantities on which the Guaranteed Maximum Price is based, (ii) correction of minor defects or omissions in the Work, (iii) minor items required by the Contract Documents but not included in Subcontractor or Vendor scopes of work, (iv) field coordination issues not purchased in any Subcontractor or Vendor scope of work – including installation tolerances, (v) schedule acceleration, used in the interest of the Construction Manager to benefit the Project schedule through the use of premium time or overtime for select trades or equipment costs (except to the extent the Construction Manager or a Subcontractor is at fault), (vi) claim settlements with Subcontractors, (vii) insurance claims including those of the Construction Manager or Subcontractors, (viii) shift work, design conflicts and changes in the final design plans (except for Owner directed scope changes or additions to the Work more appropriately addressed under Article 5.3), (ix) availability of material, material or labor cost escalations, (x) corrective Work as a result of damage by parties unknown, (xi) errors in estimating, or (xii) any other items or costs necessary or appropriate to the timely and proper completion of the Project. If the expenditure relates to the failure of a Subcontractor to perform its Work in accordance with the terms and conditions of its subcontracts, then Construction Manager shall demonstrate, to Owner's reasonable satisfaction, that Construction Manager has in good faith exercised all reasonable steps to obtain performance by the Subcontractor or the Subcontractor's surety. The Construction Manager's contingency is not intended for nor shall it be used for Owner directed scope changes or additions to the Work more appropriately addressed under Article 6.3. Amounts may be charged against Contingency only with the Owner's written consent, which shall not be unreasonably withheld. When Owner has approved a draw against Contingency, the Construction Manager shall increase the relevant Trade Work budgeted line item(s) by the amount of the decrease the Contingency line item accordingly. To the extent that there are aggregate savings between the line items for each portion of the Work in the GMP and the amount of each Subcontract ("Trade Work Buy-Out"), such aggregate savings shall be added to the Contingency. In no circumstances shall Contingency be transferred or applied to Construction Manager's staffing costs, General Requirements or General Conditions, unless approved in advance by Owner.

**§3.2.4.2** At 80% completion of the buyout process, as defined by 80% of the dollar value of the work, "buyout savings", if any, shall be added to the Construction Contingency.

**§3.2.4.3. Unspent Contingency.** Any unspent contingency remaining as of the date of final completion shall be shared by the Owner and Construction Manager. The difference as of the date of final completion between the total aggregate sum of the (i) Cost of the Work plus the Construction Manager's Fee and (ii) the GMP (such difference being the "Savings") shall be shared 80% to Owner and 20% to Construction Manager, with the balance due the Owner issued as a deduct Owner Change Order.

**§ 3.2.5** The Construction Manager shall meet with the Owner and Architect to review the Guaranteed Maximum Price proposal. In the event that the Owner or Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

**§ 3.2.6** If the Owner notifies the Construction Manager that the Owner has accepted the Guaranteed Maximum Price proposal in writing before the date specified in the Guaranteed Maximum Price proposal, the Guaranteed Maximum Price proposal shall be deemed effective without further acceptance from the Construction Manager. Following acceptance of a Guaranteed Maximum Price, the Owner and Construction Manager shall execute the Guaranteed Maximum Price

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                          (1665748333)

Amendment amending this Agreement, a copy of which the Owner shall provide to the Architect. The Guaranteed Maximum Price Amendment shall set forth the agreed upon Guaranteed Maximum Price with the information and assumptions upon which it is based.

**§ 3.2.7** Except as specifically authorized by issuance of a partial Notice to Proceed or similar separate agreement clearly authorizing the Construction Manger to incur identified costs, the Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work prior to the execution of the Guaranteed Maximum Price Amendment and issuance of a Notice to Proceed., unless the Owner provides prior written authorization for such costs.

**§ 3.2.8** The Owner shall authorize preparation of revisions to the Contract Documents that incorporate the agreed-upon assumptions and clarifications contained in the Guaranteed Maximum Price Amendment. The Owner shall promptly furnish such revised Contract Documents to the Construction Manager. The Construction Manager shall notify the Owner and Architect of any inconsistencies between the agreed-upon assumptions and clarifications contained in the Guaranteed Maximum Price Amendment and the revised Contract Documents.

**§ 3.2.9** The Construction Manager shall include in the Guaranteed Maximum Price all sales, consumer, use and similar taxes for the Work provided by the Construction Manager that are legally enacted, whether or not yet effective, at the time the Guaranteed Maximum Price Amendment is executed.

### § 3.3 Construction Phase
### § 3.3.1 General
**§ 3.3.1.1** For purposes of Section 8.1.2 of A201–2017, the date of commencement of the Work shall mean the date of commencement of the Construction Phase.

**§ 3.3.1.2** The Construction Phase shall commence upon the Owner's execution of the Guaranteed Maximum Price Amendment and Issuance of Notice to Procced or, prior to acceptance of the Guaranteed Maximum Price proposal, by written agreement of the parties. The written agreement shall set forta a description of the Work to be performed by the Construction Manager, and any insurance and bond requirements for Work performed prior to execution of the Guaranteed Maximum Price Amendment.

### § 3.3.2 Administration
**§ 3.3.2.1** The Construction Manager shall schedule and conduct meetings to discuss such matters as procedures, progress, coordination, scheduling, and status of the Work. The Construction Manager shall prepare and promptly distribute minutes of the meetings to the Owner and Architect.

**§ 3.3.2.2** Upon the execution of the Guaranteed Maximum Price Amendment, the Construction Manager shall prepare and submit to the Owner and Architect a construction schedule for the Work and a submittal schedule in accordance with Section 3.10 of A201–2017. The construction schedule shall incorporate the various subdivisions of the Work, including the proposed starting and completion dates thereof, as well as the totality of the Work. The Schedule shall be updated every thirty (30) days and submitted to the Architect with Applications for Payment. Each updated Schedule shall contain a comparison of actual progress with the estimated progress as stated in the original Schedule. If any Schedule submitted shows the Work to be behind schedule (as the schedule may have been adjusted pursuant to the provisions of the General Conditions), then the Construction Manager shall submit to the Architect and Owner for their review and approval a narrative description of the means and methods Construction Manager intends to employ to expedite the progress of the Work to ensure timely completion.

### § 3.3.2.3 Monthly Report
The Construction Manager shall record the progress of the Project. On a monthly basis, or otherwise as agreed to by the Owner, the Construction Manager shall submit written progress reports to the Owner and Architect, showing percentages of completion and other information required by the Owner.

### § 3.3.2.4 Daily Logs
The Construction Manager shall keep, and make available to the Owner and Architect, a daily log containing a record for each day of weather, portions of the Work in progress, number of workers on site, identification of equipment on site, problems that might affect progress of the work, accidents, injuries, and other information required by the Owner.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                                (1665748333)



### § 3.3.2.5 Cost Control

The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect and shall provide this information in its monthly reports to the Owner and Architect, in accordance with Section 3.3.2.3 above.

## ARTICLE 4    OWNER'S RESPONSIBILITIES
### § 4.1 Information and Services Required of the Owner

§ 4.1.1 The Owner shall provide information with reasonable promptness, regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, constraints, and criteria, including schedule, space requirements and relationships, flexibility and expandability, special equipment, systems, sustainability, and site requirements.

§ 4.1.2 Prior to the execution of the Guaranteed Maximum Price Amendment, the Construction Manager may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements to fulfill the Owner's obligations under the Contract. After execution of the Guaranteed Maximum Price Amendment, the Construction Manager may request such information as set forth in A201-2017 Section 2.2.

§ 4.1.3 The Owner shall establish and periodically update the Owner's budget for the Project, including (1) the budget for the Cost of the Work as defined in Article 7, (2) the Owner's other costs, and (3) reasonable contingencies related to all of these costs. If the Owner significantly increases or decreases the Owner's budget for the Cost of the Work, the Owner shall notify the Construction Manager and Architect. The Owner and the Architect, in consultation with the Construction Manager, shall thereafter agree to a corresponding change in the Project's scope and quality.

### § 4.1.4 Structural and Environmental Tests, Surveys and Reports.

During the Preconstruction Phase, the Owner shall furnish the following information or services, if required, with reasonable promptness. The Construction Manager shall be entitled to rely on the accuracy of information and services furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 4.1.4.1 The Owner shall furnish tests, inspections, and reports, required by law and as otherwise agreed to by the parties, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

§ 4.1.4.2 The Owner shall furnish surveys describing physical characteristics, legal limitations, and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; designated wetlands; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and other necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark.

§ 4.1.4.3 The Owner, if such services are required, shall furnish services of geotechnical engineers, which may include test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations.

§ 4.1.5 During the Construction Phase, the Owner shall furnish information or services required of the Owner by the Contract Documents with reasonable promptness.

§ 4.1.6 If the Owner identified a Sustainable Objective in Article 1, the Owner shall fulfill its responsibilities as required in AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as Constructor Edition, attached to this Agreement.

### § 4.2 Owner's Designated Representative

The Owner shall identify a representative authorized to act on behalf of the Owner with respect to the Project. The Owner's representative shall render decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201–2017, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                      (1665748333)

### § 4.3 Architect
The Owner shall retain an Architect. . The Owner shall provide the Construction Manager with a copy of the scope of services in the executed agreement between the Owner and the Architect, and any further modifications to the Architect's scope of services in the agreement.

### ARTICLE 5    COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
### § 5.1 Compensation
§ 5.1.1 For the Construction Manager's Preconstruction Phase services described in Sections 3.1 and 3.2, the Owner shall compensate the Construction Manager as follows:
*(Insert amount of, or basis for, compensation and include a list of reimbursable cost items, as applicable.)*

« In accordance with Exhibit A, Construction Manager's Proposal for Preconstruction Services, dated       »

§ 5.1.2 The hourly billing rates for Preconstruction Phase services of the Construction Manager and the Construction Manager's Consultants and Subcontractors, if any, are set forth below.
*(If applicable, attach an exhibit of hourly billing rates or insert them below.)*

« See Exhibit A-1, Hourly Billing Rates (Effective 5/1/19 - 4/30/20)»

| Individual or Position | Rate |
|---|---|
| | |

§ 5.1.2.1 Hourly billing rates for Preconstruction Phase services include all costs to be paid or incurred by the Construction Manager, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, and shall remain unchanged unless the parties execute a Modification.

§ 5.1.3 If the Preconstruction Phase services covered by this Agreement have not been completed within «  » ( «  » ) months of the date of this Agreement, through no fault of the Construction Manager, the Construction Manager's compensation for Preconstruction Phase services shall be equitably adjusted.

### § 5.2 Payments
§ 5.2.1 Unless otherwise agreed in writing, payments for services shall be made monthly in proportion to services performed.

§ 5.2.2 Payments are due and payable upon presentation of the Construction Manager's invoice. Amounts unpaid without justification «thirty  » ( «30 » ) days after the invoice date shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Construction Manager.
*(Insert rate of monthly or annual interest agreed upon.)*

«1 » % «one percent per month »

### ARTICLE 6    COMPENSATION FOR CONSTRUCTION PHASE SERVICES
### § 6.1 Contract Sum
§ 6.1.1 The Owner shall pay the Construction Manager the Contract Sum in current funds for the Construction Manager's performance of the Contract after execution of the Guaranteed Maximum Price Amendment. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Construction Manager's Fee.

§ 6.1.2 The Construction Manager's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Construction Manager's Fee.)*

« Construction Manager's Fee of 3.3_% of the Cost of the Work shall be fixed as a lump sum amount as part of the executed Guaranteed Maximum Price Amendment. »

§ 6.1.3 The method of adjustment of the Construction Manager's Fee for changes in the Work:

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                                          (1665748333)

« Construction Manager shall be entitled to a _3.3 % Fee on any net increase (after appropriate deduction for removed scope or other avoided costs) in the Cost of the Work resulting from the change. »

§ **6.1.4** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

« Subcontractors overhead will be limited to 5%; Subcontractor's profit will be limited to 10%. »

§ **6.1.5** Rental rates for Construction Manager-owned equipment shall not exceed «Five» percent (« 5 » %) of the standard rental rate paid at the place of the Project.

§ **6.1.6** Liquidated damages, if any:
*(Insert terms and conditions for liquidated damages, if any.)*

« In the event Construction Manager fails to achieve Substantial Completion on or before the deadline established in the Project schedule adopted with the GMP Amendment, and Construction Manager is not otherwise entitled to a Contract Time extension in accordance with the Contract Documents, the Construction Manager shall pay to Owner as liquidated damages a per diem amount of $850.00_____.

Owner may invoice Construction Manager monthly or offset any liquidated damages payable from Construction Manager to Owner against payments owing by Owner to Construction Manager.

The Construction Manager acknowledges and agrees that the afore-described sums are payable to Owner as liquidated damages, and not as a penalty, based solely on and only for late delivery of Substantial Completion, and that the Construction Manager's risk of payment of same is adequately compensated for in the Contract Sum to be paid to Construction Manager pursuant to this Agreement »

§ **6.1.7** Other:
*(Insert provisions for bonus, cost savings or other incentives, if any, that might result in a change to the Contract Sum.)*

« The Construction Manager is to provide support to fill all necessary sales tax exemption form ST-8 from State of New Jersey and provide any necessary information to comply with requirement of the form ST-8 to obtain the certificate of exempt capital improvement » EXHIBIT F

### § 6.2 Guaranteed Maximum Price
The Construction Manager guarantees that the Contract Sum shall not exceed the Guaranteed Maximum Price set forth in the Guaranteed Maximum Price Amendment, subject to additions and deductions by Change Order as provided in the Contract Documents. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement or additional compensation from the Owner.

### § 6.3 Changes in the Work
§ **6.3.1** The Owner may, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions, or other revisions. The Owner shall issue such changes in writing. The Construction Manager may be entitled to an equitable adjustment in the Contract Time as a result of changes in the Work.

§ **6.3.1.1** The Architect may order minor changes in the Work as provided in Article 7 of AIA Document A201–2017, General Conditions of the Contract for Construction.

§ **6.3.2** Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of the Guaranteed Maximum Price Amendment may be determined by any of the methods listed in Article 7 of AIA Document A201–2017, General Conditions of the Contract for Construction.

§ **6.3.3** Adjustments to subcontracts awarded on the basis of a stipulated sum shall be determined in accordance with Article 7 of A201–2017, as they refer to "cost" and "fee," and not by Articles 6 and 7 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior written consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. **WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                          (1665748333)

13

§ **6.3.4** In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in Article 7 of AIA Document A201–2017 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Construction Manager's Fee as defined in Section 6.1.2 of this Agreement.

**§6.3.5** Before performing any additional or changed Work for which Construction Manager intends to seek an increase in the Guaranteed Maximum Price or extension of the Contract Time, Construction Manager shall first advise Owner in writing that it considers such Work to constitute changed or additional Work for which it is entitled to a Change Order and shall provide an estimate in regard to the additional cost and time required to perform such Work.  No alteration, addition, omission, or change in the Work shall be made except upon Owner or Architect's written direction, and no work performed by Construction Manager outside the scope of Work will be recognized or paid for unless the same is included within a written Change Order, Construction Change Directive or otherwise requested in writing by Owner or Architect. In the event of a disagreement as to whether such work is additional or changed, or regarding the amount of adjustment to the Guaranteed Maximum Price or Contract Time, Architect and/or Owner may direct Construction Manager in writing to perform such work notwithstanding such disagreement, in which event Construction Manager must proceed to perform the work and may submit a claim pursuant to Article 9 herein.  Construction Manager shall keep daily records of all costs and expenses incurred in the performance of any disputed extra work.  Failure to provide the notice required and/or to follow procedures set forth herein shall affect a waiver of all claims relating to or arising from the matters or events giving rise to or requiring the claimed additional or changed work.

## ARTICLE 7    COST OF THE WORK FOR CONSTRUCTION PHASE
### § 7.1 Costs to Be Reimbursed
§ **7.1.1** The term Cost of the Work shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. The Cost of the Work shall include the items set forth in Sections 7.1 through 7.7 as reflected in the GMP summary attached to or included in the GMP Amendment.

§ **7.1.2** Where, pursuant to the Contract Documents, any cost is subject to the Owner's prior approval, the Construction Manager shall obtain such approval in writing prior to incurring the cost.

§ **7.1.3** Costs shall be at rates not higher than the standard rates paid at the place of the Project, except with prior approval of the Owner.

### § 7.2 Labor Costs
§ **7.2.1** Wages or salaries of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's prior approval, at off-site workshops, in accordance the rates set forth in Exhibit A-1.

§ **7.2.2** Agreed billing rates of the Construction Manager's supervisory and administrative personnel when stationed at the site and performing Work, with the Owner's prior approval.

§ **7.2.2.1** Agreed billing rates of the Construction Manager's supervisory and administrative personnel when performing Work and stationed at a location other than the site, but only for that portion of time required for the Work, and limited to the personnel and activities listed below:
*(Identify the personnel, type of activity and, if applicable, any agreed upon percentage of time to be devoted to the Work.)*

«Personnel shall be billable for that time off-site attributable to the Project and included in the Project GMP.»

§ **7.2.3** Agreed billing rates of the Construction Manager's supervisory or administrative personnel engaged at factories, workshops or while traveling, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

§ **7.2.4** Costs paid or incurred by the Construction Manager, as required by law or collective bargaining agreements, for taxes, insurance, contributions, assessments and benefits and, for personnel not covered by collective bargaining agreements, customary benefits such as sick leave, medical and health benefits, holidays, vacations and pensions, provided such costs are based on wages and salaries included in the Cost of the Work under Sections 7.2.1 through 7.2.3.

§ **7.2.5** If agreed rates for labor costs, in lieu of actual costs, are provided in this Agreement, the rates shall remain unchanged throughout the duration of this Agreement, unless the parties execute a Modification.

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                        (1665748333)

**§ 7.3 Subcontract Costs**
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts and this Agreement.

**§ 7.4 Costs of Materials and Equipment Incorporated in the Completed Construction**
**§ 7.4.1** Costs, including transportation and storage at the site, of materials and equipment incorporated, or to be incorporated, in the completed construction.

**§ 7.4.2** Costs of materials described in the preceding Section 7.4.1 in excess of those actually installed to allow for reasonable waste and spoilage. Unused excess materials, if any, shall become the Owner's property at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager. Any amounts realized from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 7.5 Costs of Other Materials and Equipment, Temporary Facilities and Related Items**
**§ 7.5.1** Costs of transportation, storage, installation, dismantling, maintenance, and removal of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site and fully consumed in the performance of the Work. Costs of materials, supplies, temporary facilities, machinery, equipment, and tools, that are not fully consumed, shall be based on the cost or value of the item at the time it is first used on the Project site less the value of the item when it is no longer used at the Project site. Costs for items not fully consumed by the Construction Manager shall mean fair market value.

**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment, and hand tools not customarily owned by construction workers that are provided by the Construction Manager at the site, and the costs of transportation, installation, dismantling, minor repairs, and removal of such temporary facilities, machinery, equipment, and hand tools. Rates and quantities of equipment owned by the Construction Manager, or a related party as defined in Section 7.8, shall be subject to the Owner's prior approval. The total rental cost of any such equipment may not exceed the purchase price of any comparable item.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of the Construction Manager's site office, including general office equipment and supplies.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

**§ 7.6 Miscellaneous Costs**
**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract.

**§ 7.6.1.1** Costs for self-insurance, for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 7.6.1.2** Costs for insurance through a captive insurer owned or controlled by the Construction Manager, with the Owner's prior approval.

**§ 7.6.2** Sales, use, or similar taxes, imposed by a governmental authority, that are related to the Work and for which the Construction Manager is liable.

**§ 7.6.3** Fees and assessments for the building permit, and for other permits, licenses, and inspections, for which the Construction Manager is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents; except those related to defective or nonconforming Work for which reimbursement is excluded under Article 13 of AIA Document A201–2017 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process, or product, required by the Contract Documents.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING:
This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®
Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible
under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019,
and is not for resale.
User Notes:                                                                                                   (1665748333)

**§ 7.6.5.1** The cost of defending suits or claims for infringement of patent rights arising from requirements of the Contract Documents, payments made in accordance with legal judgments against the Construction Manager resulting from such suits or claims, and payments of settlements made with the Owner's consent, unless the Construction Manager had reason to believe that the required design, process, or product was an infringement of a copyright or a patent, and the Construction Manager failed to promptly furnish such information to the Architect as required by Article 3 of AIA Document A201–2017. The costs of legal defenses, judgments, and settlements shall not be included in the Cost of the Work used to calculate the Construction Manager's Fee or subject to the Guaranteed Maximum Price.

**§ 7.6.6** Costs for communications services, electronic equipment, and software, directly related to the Work and located at the site, with the Owner's prior approval.

**§ 7.6.7** Costs of document reproductions and delivery charges.

**§ 7.6.8** Deposits lost for causes other than the Construction Manager's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.11** That portion of the reasonable expenses of the Construction Manager's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work that has been approved in advance by Owner in writing.

**§ 7.7 Other Costs and Emergencies**
**§ 7.7.1** Other costs incurred in the performance of the Work, with the Owner's prior approval.

**§ 7.7.2** Costs incurred in taking action to prevent threatened damage, injury, or loss, in case of an emergency affecting the safety of persons and property, as provided in Article 10 of AIA Document A201–2017.

**§ 7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Construction Manager, Subcontractors, or suppliers, provided that such damaged or nonconforming Work was not caused by the negligence of, or failure to fulfill a specific responsibility by, the Construction Manager, and only to the extent that the cost of repair or correction is not recovered by the Construction Manager from insurance, sureties, Subcontractors, suppliers, or others.

**§ 7.7.4** The costs described in Sections 7.1 through 7.7 shall be included in the Cost of the Work, notwithstanding any provision of AIA Document A201–2017 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 7.9.

**§ 7.8 Related Party Transactions**
**§ 7.8.1** For purposes of this Section 7.8, the term "related party" shall mean (1) a parent, subsidiary, affiliate, or other entity having common ownership of, or sharing common management with, the Construction Manager; (2) any entity in which any stockholder in, or management employee of, the Construction Manager holds an equity interest in excess of ten percent in the aggregate; (3) any entity which has the right to control the business or affairs of the Construction Manager; or (4) any person, or any member of the immediate family of any person, who has the right to control the business or affairs of the Construction Manager.

**§ 7.8.2** If any of the costs to be reimbursed arise from a transaction between the Construction Manager and a related party, the Construction Manager shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction in writing, then the cost incurred shall be included as a cost to be reimbursed, and the Construction Manager shall procure the Work, equipment, goods, or service, from the related party, as a Subcontractor, according to the terms of Article 9. If the Owner fails to authorize the transaction in writing, the Construction Manager shall procure the Work, equipment, goods, or service from some person or entity other than a related party according to the terms of Article 9.

**§7.8.3** The following companies are "related parties" as that term is defined by §7.8.2:

**§ 7.9 Costs Not To Be Reimbursed**
**§ 7.9.1** The Cost of the Work shall not include the items listed below:

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                            (1665748333)



.1   Salaries and other compensation of the Construction Manager's personnel stationed at the Construction
Manager's principal office or offices other than the site office, except as specifically provided in Section
7.2, or as may be provided in Article 14;

.2   Bonuses, profit sharing, incentive compensation, and any other discretionary payments, paid to anyone
hired by the Construction Manager or paid to any Subcontractor or vendor, unless the Owner has provided
prior approval;

.3   Expenses of the Construction Manager's principal office and offices other than the site office or associated
with personnel in Section 7.2.2.1.;

.4   Overhead and general expenses, except as may be expressly included in Sections 7.1 to 7.7;

.5   The Construction Manager's capital expenses, including interest on the Construction Manager's capital
employed for the Work;

.6   Except as provided in Section 7.7.3 of this Agreement, costs due to the negligence of, or failure to fulfill a
specific responsibility of the Contract by, the Construction Manager, Subcontractors, and suppliers, or
anyone directly or indirectly employed by any of them or for whose acts any of them may be liable;

.7   Any cost not specifically and expressly described in Sections 7.1 to 7.7;

.8   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed
Maximum Price to be exceeded; and

.9   Costs for services incurred during the Preconstruction Phase;

.10  Losses and expenses arising out of the dishonesty on the part of any employee or representative of the
Construction Manager or any of the Construction Manager's Subcontractors; and

.11  Provided that the Owner has paid the Construction Manager all amounts then properly due and payable
under this Agreement, any sums spent or costs incurred by the Construction Manager, or for which the
Construction Manager is liable or obligated, in connection with any construction liens filed or served,
whether or not any such line or claim is wrongfully asserted or arises from a bona fide dispute between the
Construction Manager and any contractor or Subcontractor.

## ARTICLE 8    DISCOUNTS, REBATES, AND REFUNDS
§ 8.1 Cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner if (1) before
making the payment, the Construction Manager included the amount to be paid, less such discount, in an Application for
Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Construction Manager
with which to make payments; otherwise, cash discounts shall accrue to the Construction Manager. Trade discounts,
rebates, refunds, and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the
Construction Manager shall make provisions so that they can be obtained.

§ 8.2 Amounts that accrue to the Owner in accordance with the provisions of Section 8.1 shall be credited to the Owner
as a deduction from the Cost of the Work.

## ARTICLE 9    SUBCONTRACTS AND OTHER AGREEMENTS
§ 9.1 Those portions of the Work that the Construction Manager does not customarily perform with the Construction
Manager's own personnel shall be performed under subcontracts or other appropriate agreements with the Construction
Manager. The Owner may designate specific persons from whom, or entities from which, the Construction Manager shall
obtain bids. The Construction Manager shall obtain bids from Subcontractors, and from suppliers of materials or
equipment fabricated especially for the Work, who are qualified to perform that portion of the Work in accordance with
the requirements of the Contract Documents. The Construction Manager shall deliver such bids to the Architect and
Owner with an indication as to which bids the Construction Manager intends to accept. The Owner then has the right to
review the Construction Manager's list of proposed subcontractors and suppliers in consultation with the Architect and,
subject to Section 9.1.1, to object to any subcontractor or supplier. Any advice of the Architect, or approval or objection
by the Owner, shall not relieve the Construction Manager of its responsibility to perform the Work in accordance with
the Contract Documents. The Construction Manager shall not be required to contract with anyone to whom the
Construction Manager has reasonable objection.

§ 9.1.1 When a specific subcontractor or supplier (1) is recommended to the Owner by the Construction Manager; (2) is
qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract
Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction
Manager may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between
the bid of the person or entity recommended to the Owner by the Construction Manager and the amount of the subcontract
or other agreement actually signed with the person or entity designated by the Owner.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING:
This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®
Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible
under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019,
and is not for resale.
User Notes:                                                                                                      (1665748333)

**§ 9.2** Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement and shall not be awarded on the basis of cost plus a fee without the Owner's prior written approval. If a subcontract is awarded on the basis of cost plus a fee, the Construction Manager shall provide in the subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Construction Manager in Article 10.

## ARTICLE 10    ACCOUNTING RECORDS

The Construction Manager shall keep full and detailed records and accounts related to the Cost of the Work, and exercise such controls, as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Construction Manager's records and accounts, including complete documentation supporting accounting entries, books, job cost reports, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, Subcontractor's invoices, purchase orders, vouchers, memoranda, and other data relating to this Contract. The Construction Manager shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 11    PAYMENTS FOR CONSTRUCTION PHASE SERVICES
### § 11.1 Progress Payments
**§ 11.1.1** Based upon Applications for Payment submitted by the Construction Manager, and upon review and approval by the Owner and the Lender, the Owner shall make progress payments on account of the Contract Sum, to the Construction Manager, as provided below and elsewhere in the Contract Documents.

**§ 11.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**§11.1.3** Provided that an Application for Payment is received by the Owner not later than the fifth (5th) day of the month, the Owner shall make payment of the certified amount to the Construction Manager not later than the fifth (5th) day of the following month. If an Application for Payment is received by the Owner after the application date fixed above, payment shall be made by the Owner not later than forty (45) days after the date the Construction Manager sends the Application for Payment to the Owner and/or Architect. The Owner has twenty (20) days to review the application for Payment and any supporting documentation to determine if there are any concerns. Any such concerns must be placed in writing and returned to the Construction Manager before the twenty-day period has expired or the Application for payment shall be deemed accepted and payment authorized. In the event there is some concern regarding the Application for Payment or any portion thereof, Owner must ensure that its written notice details the nature of those concerns and the dollar amounts of the relevant Application for Payment impacted by those concerns. As required by the New Jersey Prompt Payment Act, N.J.S.A § 2A:30A-1 et seq. all undisputed amounts must be paid to the Construction Manager within the referenced thirty (30) day period. Owner and Construction Manager agree to cooperate in the rapid resolution of any disputed items brought to the Construction Manager's attention in conjunction with any application for payment and resolve that dispute as quickly and amicably as practical. If Owner and Construction Manager are unable to quickly and amicably resolve any dispute or concerns raised in the twenty-day notice period, the Parties shall submit the dispute for dispute resolution pursuant to the dispute resolution provisions of the Contract Documents. If the dispute is resolved in favor of payment to the Construction Manager, Owner shall pay all such sums within fifteen (15) days of the date of the resolution. Each request for an advance also shall be accompanied by (i) partial releases of liens executed by the General Contractor and by all subcontractors who have a right to claim a lien under applicable laws, and (ii), a title search, dated not earlier than five (5) days prior to the date the subject advance is requested to be made, evidencing that no mechanics lien is of record against the Mortgaged Property. Borrower's request for the final construction advance shall also be accompanied by conditional final releases of liens upon payment, executed by the General Contractor and all other persons who have the right to claim a lien under all applicable laws. Complete and final releases of liens shall be provided by the General Contractor and all other persons who have the right to claim lien under all applicable laws. Upon receipt by the General Contractor of final payment. Advances shall be used, and may only be used, to pay the costs for which such Advances were requested.

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                      (1665748333)

18



**§11.1.4** Upon written request by the Owner, the Construction Manager shall make available to the Owner for inspection personnel time reports, petty cash reports, receipted invoices or invoices with check vouchers attached, and any other evidence reasonably required by the Owner to demonstrate the sum of the labor hours billed to the Owner, at contracted billing rates, plus other costs disbursed by the Construction Manager on account of the Cost of the Work, equal or exceed the labor costs billed by the Construction Manager, less that portion of those payments attributable to the Construction Manager's Fee and Insurance Charges. Construction Manager shall provide or make available to Owner the above records within seven (7) days of receipt of the request.    To the extent practicable, Owner and Construction Manager shall agree prior to execution of the Contract on the specific types, categories or forms of records Construction Manager shall be required to keep.  In the absence of such agreement, Construction Manager shall utilize and keep those types and forms of documents and information as is customarily used in the industry in conjunction with projects of this type, size, complexity.

**§11.1.5** Each Application for Payment shall be based on the most recent approved schedule of values in accordance with the Contract Documents.  The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Construction Manager's Fee and Insurance and other charges shall be shown as single separate items.  The schedule of values shall be prepared in such form and supported by such data as is necessary to substantiate its accuracy.  The schedule shall be used as a basis for reviewing the Construction Manager's Applications for Payment.

**§11.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.  The percentage of completion shall be the percentage of that portion of the Work which has actually been completed.

**§11.1.7** Subject to the other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    .1   Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of the General Conditions.

    .2   Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing.

    .3   Add the Construction Manager's supervisory and administrative personnel, General Conditions, Fee and Insurance Charge, less retainage of ten percent (10%). The Construction Manager's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;

    .4   Subtract retainage of ten percent (10%) from that portion of the Work that the Construction Manager self-performs.

    .5   Subtract the aggregate of previous payments made by the Owner.

    .6   Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation.

    .7   Subtract amounts, if any, for which the Architect or Owner has provided written notification of adjustment or withheld or nullified a Certificate for Payment as provided in Section 9.5 of the General Conditions.  Such written notification shall be provided to the Construction Manager within twenty (20) days of submission of the Application for Payment; and

    .8   Notwithstanding the above, there shall be no retainage held on the following:

        Bond Payments,

        Insurance Charges,

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                                    (1665748333)

Permit/Approval Fees and charges (if any),
Construction Manager's supervisory and administrative personnel costs and General Conditions,
The Construction Manager's Fee.

**§11.1.8** The Owner and Construction Manager shall agree upon (1) a mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Construction Manager shall execute subcontracts in accordance with those agreements.

**§11.1.9** The Construction Manager shall be entitled to make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site. The Owner's approval of an Application for Payment that includes such payments to suppliers for materials or equipment which have not been delivered and stored at the site shall not be unreasonably withheld. Notwithstanding the foregoing, the Construction Manager shall be permitted to include on Applications for Payment to the Owner for stored materials, advanced payments, and other project management and general requirement costs that are related to the performance of the Work on behalf of subcontractors and vendors as described in Article 6, and the Owner shall make progress payments on account of the Contract Sum to the Construction Manager as provided in Article 7 of this agreement.

**§11.1.10** In taking action on the Construction Manager's Applications for Payment, the Owner shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Owner's representative has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data; that the Owner's representative has made exhaustive or continuous on-site inspections; or that the Owner's representative has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

**§11.1.11** Where a discreet trade or separately identifiable portion of the Work has been completed, the Construction Manager may submit to the Architect and Owner a request for release of all of or a portion of the retainage previously withheld on that trade or portion of Work, such a request shall not be unreasonably withheld by the Owner or Owner's representative .

**§11.1.12** Upon Substantial Completion of the Work, the Construction Manager may request that the retainage be reduced to a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Owner's representative or Owner shall assign to specific line items, in the most recent schedule of values, that the Owner's representative or Owner determines with agreement by the Construction Manager for incomplete Work, retainage applicable to such work and unsettled claims.

**§ 11.1.4** With each Application for Payment, the Construction Manager shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner to demonstrate that payments already made by the Construction Manager on account of the Cost of the Work equal or exceed progress payments already received by the Construction Manager, plus payrolls for the period covered by the present Application for Payment, less that portion of the progress payments attributable to the Construction Manager's Fee.

**§ 11.1.4.1** As a condition precedent to receiving progress payments, the Construction Manager will deliver to the Owner conditional lien releases in a form provided by Owner and approved by Contractor as required by Section 9.6.7.1 of the AIA Document A201-2017 executed by the Construction Manager and the major Subcontractors and equipment or material suppliers to be identified and agreed upon in conjunction with the establishment of the GMP; comply with all conditions for disbursement under the construction financing within the control of the CM; and not be in material default of any obligation hereunder.

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                      (1665748333)

**§ 11.1.5** Each Application for Payment shall be based on the most recent schedule of values submitted by the Construction Manager in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among: (1) the various portions of the Work; (2) any contingency for costs that are included in the Guaranteed Maximum Price but not otherwise allocated to another line item or included in a Change Order; and (3) the Construction Manager's Fee.

**§ 11.1.5.1** The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. The schedule of values shall be used as a basis for reviewing the Construction Manager's Applications for Payment.

**§ 11.1.5.2** The allocation of the Guaranteed Maximum Price under this Section 11.1.5 shall not constitute a separate guaranteed maximum price for the Cost of the Work of each individual line item in the schedule of values.

**§ 11.1.5.3** When the Construction Manager allocates costs from a contingency to another line item in the schedule of values, the Construction Manager shall submit supporting documentation to the Owner .

**§ 11.1.6** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the percentage of that portion of the Work which has actually been completed.

**§ 11.1.7** In accordance with AIA Document A201–2017 and subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

**§ 11.1.7.1** The amount of each progress payment shall first include:

.1 That portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the most recent schedule of values;

.2 That portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction or, if approved in writing in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3 That portion of Construction Change Directives that the Architect determines, in the Architect's professional judgment, to be reasonably justified; and

.4 The Construction Manager's Fee, computed upon the Cost of the Work described in the preceding Sections 11.1.7.1.1 and 11.1.7.1.2 at the rate stated in Section 6.1.2 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work included in Sections 11.1.7.1.1 and 11.1.7.1.2 bears to a reasonable estimate of the probable Cost of the Work upon its completion.

**§ 11.1.7.2** The amount of each progress payment shall then be reduced by:

.1 The aggregate of any amounts previously paid by the Owner;

.2 The amount, if any, for Work that remains uncorrected and for which the Owner has previously withheld a Certificate for Payment as provided in Article 9 of AIA Document A201–2017;

.3 Any amount for which the Construction Manager does not intend to pay a Subcontractor or material supplier, unless the Work has been performed by others the Construction Manager intends to pay;

.4 For Work performed or defects discovered since the last payment application, any amount for which the Architect may withhold payment, or nullify a Certificate of Payment in whole or in part, as provided in Article 9 of AIA Document A201–2017;

.5 The shortfall, if any, indicated by the Construction Manager in the documentation required by Section 11.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.6 Retainage withheld pursuant to Section 11.1.8.

## § 11.1.8 Retainage
**§ 11.1.8.1** For each progress payment made prior to Substantial Completion of the Work, the Owner may withhold the following amount, as retainage, from the payment otherwise due:
*(Insert a percentage or amount to be withheld as retainage from each Application for Payment. The amount of retainage may be limited by governing law.)*

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                              (1665748333)

21



« Progress payments shall be subject to retention of ten percent (10%), until such time as the Project is fifty percent (50%) complete, at which time retention shall thereafter be made at five percent (5%). When the Architect issues a certificate of Substantial Completion in accordance with §9.8.1 of the A201 General Conditions of Contract, Contractor shall be entitled to invoice for the balance of retention, minus a sum equal to one hundred fifty percent (150%) of the value of remaining punch list items as determined by the Architect. Payment of all remaining retention shall be made as part of the Final Payment due to Construction Manager. »

**§ 11.1.8.1.1** The following items are not subject to retainage:
*(Insert any items not subject to the withholding of retainage, such as general conditions, insurance, etc.)*

«
Insurance Charges,
Permit/Approval Fees and charges (if any),
Project Management and General Conditions,
The Construction Manager's Fee »

**§ 11.1.8.2** Reduction or limitation of retainage, if any, shall be as follows:
*(If the retainage established in Section 11.1.8.1 is to be modified prior to Substantial Completion of the entire Work, insert provisions for such modification.)*

« »

**§ 11.1.8.3** Except as set forth in this Section 11.1.8.3, upon Substantial Completion of the Work, the Construction Manager may submit an Application for Payment that includes the retainage withheld from prior Applications for Payment pursuant to this Section 11.1.8. The Application for Payment submitted at Substantial Completion shall not include retainage as follows:
*(Insert any other conditions for release of retainage, such as upon completion of the Owner's audit and reconciliation, upon Substantial Completion.)*

«Upon Substantial Completion, retainage shall be lowered to 5% of billed costs, except for those costs not subject to retainage as detailed in Section 11.1.8.1.1. »

**§ 11.1.10** Except with the Owner's prior written approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and suitably stored at the site.

**§ 11.1.11** The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments to Subcontractors, and the percentage of retainage held on Subcontracts, and the Construction Manager shall execute subcontracts in accordance with those agreements.

**§ 11.1.12** In taking action on the Construction Manager's Applications for Payment the Owner and Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager, and such action shall not be deemed to be a representation that (1) the Owner or Architect have made a detailed examination, audit, or arithmetic verification, of the documentation submitted in accordance with Section 11.1.4 or other supporting data; (2) that the Owner or Architect have made exhaustive or continuous on-site inspections; or (3) that the Owner or Architect have made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract..

**§ 11.2 Final Payment**
**§ 11.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Construction Manager when
 .1  the Construction Manager has fully performed the Contract, except for the Construction Manager's responsibility to correct Work as provided in Article 12 of AIA Document A201–2017, and to satisfy other requirements, if any, which extend beyond final payment;
 .2  the Construction Manager has submitted a final accounting for the Cost of the Work and a final Application for Payment; and A Certificate of Final Completion has been issued by the Architect.
 .3 -> The Construction Manager has provided all required conditional final releases of liens.

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes: (1665748333)

**§ 11.2.2** Within 30 days of the Owner's receipt of the Construction Manager's final accounting for the Cost of the Work, the Owner shall conduct an audit of the Cost of the Work or notify the Architect that it will not conduct an audit.

**§ 11.2.2.1** If the Owner conducts an audit of the Cost of the Work, the Owner shall, within 10 days after completion of the audit, submit a written report based upon the auditors' findings to the Architect.

**§ 11.2.2.2** Within seven days after receipt of the written report described in Section 11.2.2.1, or receipt of notice that the Owner will not conduct an audit, and provided that the other conditions of Section 11.2.1 have been met, the Architect will either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager, or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Article 9 of AIA Document A201–2017. The time periods stated in this Section 11.2.2 supersede those stated in Article 9 of AIA Document A201–2017. The Architect is not responsible for verifying the accuracy of the Construction Manager's final accounting.

**§ 11.2.2.3** If the Owner's auditors' report concludes that the Cost of the Work, as substantiated by the Construction Manager's final accounting, is less than claimed by the Construction Manager, the Construction Manager shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Article 15 of AIA Document A201–2017. A request for mediation shall be made by the Construction Manager within 30 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

**§ 11.2.3** The Owner's final payment to the Construction Manager shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

« »

**§ 11.2.4** If, subsequent to final payment, and at the Owner's request, the Construction Manager incurs costs, described in Sections 7.1 through 7.7, and not excluded by Section 7.9, to correct defective or nonconforming Work, the Owner shall reimburse the Construction Manager for such costs, and the Construction Manager's Fee applicable thereto, on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If adjustments to the Contract Sum are provided for in Section 6.1.7, the amount of those adjustments shall be recalculated, taking into account any reimbursements made pursuant to this Section 11.2.4 in determining the net amount to be paid by the Owner to the Construction Manager.

**§ 11.3 Interest**
Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

« one percent » % « 1% » per month

**ARTICLE 12    DISPUTE RESOLUTION**
**§ 12.1 Initial Decision Maker**
**§ 12.1.1** Any Claim between the Owner and Construction Manager shall be resolved in accordance with the provisions set forth in this Article 12 and Article 15 of A201–2017. However, for Claims arising from or relating to the Construction Manager's Preconstruction Phase services, no decision by the Initial Decision Maker shall be required as a condition precedent to mediation or binding dispute resolution, and Section 12.1.2 of this Agreement shall not apply.

**§ 12.1.2** Unless otherwise provided, the Owner's representative will serve as the Initial Decision Maker pursuant to Article 15 of AIA Document A201–2017 for Claims arising from or relating to the Construction Manager's Construction Phase services, unless the parties appoint below another individual, not a party to the Agreement, to serve as the Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Owner's Representative.)*

« »

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. **All rights reserved. WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                    (1665748333)

23

DC

§ **12.2 Binding Dispute Resolution**
For any Claim subject to, but not resolved by mediation pursuant to Article 15 of AIA Document A201–2017, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box.)*

[ «» ]    Arbitration pursuant to Article 15 of AIA Document A201–2017

[ «X» ]    Litigation in a court of competent jurisdiction

[ «» ]    Other: *(Specify)*

«»

If the Owner and Construction Manager do not select a method of binding dispute resolution, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.

§12.3   During the pendency of any dispute with Owner or any other party (with the exception of Owner's failure to adhere to the payment obligations contained in the Agreement), CM shall continue performing all of its services hereunder and Owner shall continue to make Progress Payments as provided herein, except that the Owner may reasonably withhold any payment to the CM if Owner disputes, in good faith, the amount claimed due to CM; provided, however, such amounts withheld shall be limited to the actual amount in dispute and Owner shall continue to pay all amounts not in dispute as and when due.

**ARTICLE 13    TERMINATION OR SUSPENSION**
§ **13.1 Termination Prior to Execution of the Guaranteed Maximum Price Amendment**
§ **13.1.1** If the Owner and the Construction Manager do not reach an agreement on the Guaranteed Maximum Price, the Owner may terminate this Agreement upon not less than seven days' written notice to the Construction Manager, and the Construction Manager may terminate this Agreement, upon not less than seven days' written notice to the Owner.

§ **13.1.2** In the event of termination of this Agreement pursuant to Section 13.1.1, the Construction Manager shall be compensated for those Preconstruction Phase services and any authorized Work performed prior to receipt of a notice of termination, in accordance with the terms of this Agreement. In no event shall the Construction Manager's compensation under this Section exceed the compensation set forth in Section 5.1.

§ **13.1.3** Prior to the execution of the Guaranteed Maximum Price Amendment, the Owner may terminate this Agreement upon not less than seven days' written notice to the Construction Manager for the Owner's convenience and without cause, and the Construction Manager may terminate this Agreement, upon not less than seven days' written notice to the Owner, for the reasons set forth in Article 14 of A201–2017.

§ **13.1.4** In the event of termination of this Agreement pursuant to Section 13.1.3, the Construction Manager shall be equitably compensated for Preconstruction Phase services and Work authorized and performed prior to receipt of a notice of termination. In no event shall the Construction Manager's compensation under this Section exceed the compensation set forth in Section 5.1.

§ **13.1.5** If the Owner terminates the Contract pursuant to Section 13.1.3 after the commencement of the Construction Phase but prior to the execution of the Guaranteed Maximum Price Amendment, the Owner shall pay to the Construction Manager an amount calculated as follows, which amount shall be in addition to any compensation paid to the Construction Manager under Section 13.1.4:

  .1    Take the Cost of the Work incurred by the Construction Manager to the date of termination;
  .2    Add the Construction Manager's Fee computed upon the Cost of the Work performed prior to the date of termination at the rate stated in Section 6.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                        (1665748333)

time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

   .3   Subtract the aggregate of previous payments made by the Owner for Construction Phase services.

**§ 13.1.6** The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 13.1.5.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders. All Subcontracts, purchase orders and rental agreements entered into by the Construction Manager will contain provisions allowing for assignment to the Owner as described above.

**§ 13.1.6.1** If the Owner accepts assignment of subcontracts, purchase orders or rental agreements as described above, the Owner will reimburse or indemnify the Construction Manager for all costs arising under the subcontract, purchase order or rental agreement, if those costs would have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner chooses not to accept assignment of any subcontract, purchase order or rental agreement that would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager will terminate the subcontract, purchase order or rental agreement and the Owner will pay the Construction Manager the costs necessarily incurred by the Construction Manager because of such termination.

**§ 13.2 Termination or Suspension Following Execution of the Guaranteed Maximum Price Amendment**
**§ 13.2.1 Termination**
The Contract may be terminated by the Owner or the Construction Manager as provided in Article 14 of AIA Document A201–2017.

**§ 13.2.2 Termination by the Owner for Cause**
**§ 13.2.2.1** If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2017, the amount, if any, to be paid to the Construction Manager under Article 14 of AIA Document A201–2017 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

   .1   Take the Cost of the Work incurred by the Construction Manager to the date of termination;
   .2   Add the Construction Manager's Fee, computed upon the Cost of the Work to the date of termination at the rate stated in Section 6.1 or, if the Construction Manager' Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion;
   .3   Subtract the aggregate of previous payments made by the Owner; and
   .4   Subtract the costs and damages incurred, or to be incurred, by the Owner under Article 14 of AIA Document A201–2017.

**§ 13.2.2.2** The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 13.2.2.1.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 13, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

**§ 13.2.3 Termination by the Owner for Convenience**
If the Owner terminates the Contract for convenience in accordance with Article 14 of AIA Document A201–2017, then the Owner shall pay the Construction Manager a termination fee as follows:
*(Insert the amount of or method for determining the fee, if any, payable to the Construction Manager following a termination for the Owner's convenience.)*

«The Owner shall pay the Construction Manager a Fee corresponding to work performed up to the termination date and 30% of the remaining unpaid portion of the GMP fee.»

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
User Notes:                                                                                                   (1665748333)

### § 13.3 Suspension

The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2017; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Article 14 of AIA Document A201–2017, except that the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 6.1 and 6.3.5 of this Agreement. In case of lockdown decide by the state of New Jersey, the contract will be suspended until the lockdown removal. The site must be secured, and all rental equipment must be suspended as well or removed until the official restart of the project

### ARTICLE 14    MISCELLANEOUS PROVISIONS

§ 14.1 Terms in this Agreement shall have the same meaning as those in A201–2017. Where reference is made in this Agreement to a provision of AIA Document A201–2017 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

### § 14.2 Successors and Assigns

§ 14.2.1 The Owner and Construction Manager, respectively, bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements, and obligations contained in the Contract Documents. Except as provided in Section 14.2.2 of this Agreement, and in Section 13.2.2 of A201–2017, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 14.2.2 The Owner may, without consent of the Construction Manager, assign the Contract to a lender providing construction financing for the Project, if the lender assumes the Owner's rights and obligations under the Contract Documents. The Construction Manager shall execute all consents reasonably required to facilitate the assignment.

### § 14.3 Insurance and Bonds
### § 14.3.1 Preconstruction Phase
INTENTIONNALY DELETED

### § 14.3.1.6 Other Insurance
*(List below any other insurance coverage to be provided by the Construction Manager and any applicable limits.)*
PER EXHIBIT B

| Coverage | Limits |
|---|---|
|  |  |

§ 14.3.1.7 **Additional Insured Obligations.** To the fullest extent permitted by law, the Construction Manager shall cause the primary and excess or umbrella polices for Commercial General Liability and Automobile Liability to include the Owner as an additional insured for claims caused in whole or in part by the Construction Manager's negligent acts or omissions. The additional insured coverage shall be primary and non-contributory to any of the Owner's insurance policies and shall apply to both ongoing and completed operations.

§ 14.3.1.8 The Construction Manager shall provide certificates of insurance to the Owner that evidence compliance with the requirements in this Section 14.3.1.

### § 14.3.2 Construction Phase
After execution of the Guaranteed Maximum Price Amendment, the Owner and the Construction Manager shall purchase and maintain insurance as set forth in AIA Document A133™–2019, Standard Form of Agreement Between Owner and Construction Manager as Constructor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, Exhibit B, Insurance and Bonds, and elsewhere in the Contract Documents.

### § 14.3.2.1 Intentionally Deleted

§ 14.4 Notice in electronic format, pursuant to Article 1 of AIA Document A201–2017, may be given in accordance with AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, if completed, or as otherwise set forth below:
*(If other than in accordance with AIA Document E203–2013, insert requirements for delivering notice in electronic format such as name, title, and email address of the recipient and whether and how the system will be required to generate a read receipt for the transmission.)*

**AIA Document A133™ – 2019.** Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
**User Notes:**                                                                    (1665748333)

**§ 14.5** Other provisions:

« §14.5.1 Provided that Owner has paid Construction Manager all amounts due under this Agreement, the Construction Manager shall complete the Work free of any laborer's, materialman's, mechanic's or other lien (a "Lien") on any part of the Work or the Project and shall not permit any Lien to be filed or otherwise imposed on any part of the Work or the Project. The Construction Manager shall be required as a condition to receiving payment under an Application for Payment to furnish Owner with conditional partial waivers of all Liens on its behalf and from those major Subcontractors and equipment or material Suppliers identified in connection with establishment of the GMP for the portions of the Work for which the Owner has previously made payment to the Construction Manager. If a Lien claim is filed for sums which have been paid to Construction Manager, and the Construction Manager does not, within ten (10) days following written notice by Owner, either (i) take steps seeking to cause such Lien to be released and discharged or (ii) furnish an appropriate surety bond in the amount required by applicable state law, including notice to the Owner of any disputed payment obligation by Construction Manager related thereto, the Owner shall have the right to bond off such Lien or pay all sums necessary to obtain such release and discharge and to deduct the same from the next succeeding Application for Payment until the total amount of same shall be recouped. If any such Lien remains unsatisfied after all payments are made, and Construction Manager has failed to comply with its obligations under this Section, the Construction Manager shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.   »

**§14.5.2** The Construction Manager, Owner and Architect shall assist each other in applying for and securing of any and all permits and governmental licenses and inspections necessary for the proper execution and completion of the Work. The Owner shall pay all costs and fees for all such permits, approvals, licenses, and inspections; such fees shall be excluded from the Cost of the Work as defined herein. Construction Manager shall have no obligation to commence or continue any of the Work without all necessary permits, approvals, licenses, and inspections and shall have no responsibility for delays in obtaining such permits, approvals, licenses, and inspections that result from the acts or omissions of others.

**§14.5.3** The Owner and Construction Manager agree that it is more cost effective for the Construction Manager to perform certain supervisory, administrative, accounting, and overall project management services form the Construction Manager's principal office, as opposed to a site office. Therefore, personnel stationed at the Construction Manager's principal office or other offices shall be included in the Cost of the Work.

**§14.5.4** All design and construction documents and models prepared for the project shall be provided to the Construction Manager electronically in both CAD/CADD format, (DWG/DXF, etc.), Revit format (RVT), Navisworks (NWD), and Portable Document File (pdf) or similar format inclusive of all required files and libraries, required for their use, free of charge. All files across the various design disciplines are to have locations coordinated so X, Y, Z ranges are aligned to a known benchmark point; the electronic files shall be a clean set of files with the information and data required for construction. An adequate number of hard copies shall be provided free of charge to obtain permits and approvals and execute the Work of the project, including for the preparation of submittals, shop drawings, coordination studies, drawings, etc. In addition, the complete project manual or set of project specifications shall be provided in an electronic format as stated above and/or as a Portable Document File (pdf) or similar format free of charge and that an adequate number of hard copies will be provided free of charge to execute the Work of the project.

## ARTICLE 15   SCOPE OF THE AGREEMENT
**§ 15.1** This Agreement represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Construction Manager.

**§ 15.2** The following documents comprise the Agreement:

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. **WARNING:** This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019, and is not for resale.
**User Notes:**                                                                                    (1665748333)

.1    AIA Document A133™–2019, Standard Form of Agreement Between Owner and Construction Manager
as Constructor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed
Maximum Price

.2    AIA Document A133™-2019, Exhibit A, Guaranteed Maximum Price Amendment, if executed

.3    ~~AIA Document A133™–2019, Exhibit B, Insurance and Bonds~~

.4    AIA Document A201™–2017, General Conditions of the Contract for Construction

.5    ~~AIA Document E203™–2013, Building Information Modeling and Digital Data Exhibit, dated as
indicated below:
(Insert the date of the E203-2013 incorporated into this Agreement.)~~



.6    Other Exhibits:
*(Check all boxes that apply.)*

[  ]    ~~AIA Document E234™–2019, Sustainable Projects Exhibit, Construction Manager as
Constructor Edition, dated as indicated below:
(Insert the date of the E234-2019 incorporated into this Agreement.)~~

Exhibit C – Project Schedule.
Exhibit D – GMP Proposal.
Exhibit E – Clarifications.
Exhibit F – ST-8 Form.
Exhibit G – Construction Drawings.
Exhibit H - Project Manual-HVAC MARK UP-MEPFP REPORT-INSPECTION REPORT
Exhibit I – Maximum Payment Cash Flow

[  ]    Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
|  |  |  |  |

.7    Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA
Document A201–2017 provides that the advertisement or invitation to bid, Instructions to Bidders,
sample forms, the Construction Manager's bid or proposal, portions of Addenda relating to bidding or
proposal requirements, and other information furnished by the Owner in anticipation of receiving bids or
proposals, are not part of the Contract Documents unless enumerated in this Agreement. Any such
documents should be listed here only if intended to be part of the Contract Documents.)*



This Agreement is entered into as of the day and year first written above.

OWNER *(Signature)*                                    CONSTRUCTION MANAGER *(Signature)*    3/12/2021

« »« »  Didier Choukroun, Manager                    James M. Buckley, President
*(Printed name and title)*                              *(Printed name and title)*

AIA Document A133™ – 2019. Copyright © 1991, 2003, 2009, and 2019 by The American Institute of Architects. All rights reserved. WARNING:
This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®
Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible
under the law. This draft was produced by AIA software at 09:08:52 ET on 11/27/2019 under Order No.2959409898 which expires on 12/16/2019,
and is not for resale.
User Notes:                                                                              (1665748333)