IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **SCUNGIO BORST & ASSOCIATES, LLC** | : | **BANKRUPTCY NO. 22-10609(AMC)** |
| | : | |
| **Debtor** | : | |
| | : | |

**DECLARATION OF SCOTT P SCUNGIO, SOLE MANAGING MEMBER OF SCUNGIO & COMPANY LLC, A MEMBER OF THE DEBTOR IN SUPPORT OF CHAPTER 11 PETITION AND MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE REJECTION OF EXECUTORY CONTRACTS**

I, SCOTT P. SCUNGIO, hereby declare under penalty of perjury:

1. I am the sole managing member of Scungio & Company LLC ("SCLLC") which together with Philip L. Borst ("Borst") are the only members of Scungio Borst & Associates, LLC, a Pennsylvania limited liability company (the "Debtor"). In this capacity, I am generally familiar with the Debtor's day to day operations, business, financial affairs, and books and records.

2. On March 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of Pennsylvania under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code").

3. The Debtor is liquidating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, and information supplied to me by other members of the Debtor's management and the Debtor's advisors. I am authorized to submit this Declaration on behalf of the Debtor, and, if called upon to testify, I could and would testify competently to the facts set

forth herein.

## BACKGROUND

A. **Commencement of the Chapter 11 Case**

5. On the Petition Date, the Debtor filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of Pennsylvania under chapter 11 of title 11 of the Bankruptcy Code. The Debtor filed in the Eastern District of Pennsylvania because it is organized under the laws of the Commonwealth of Pennsylvania. The Debtor's registered address with the Commonwealth of Pennsylvania is located at 117 Moore Drive, Media, PA 19063.

B. **The Debtors' Business**

6. In 2001, I opened SCLLC, a Pennsylvania Limited Liability Company, which operated a construction consulting firm in Media, Pennsylvania. Two years later, on March 12, 2003, SCLLC and Borst formed the Debtor, a Pennsylvania limited liability company, by filing Certificate of Organization with the Department of State of the Commonwealth of Pennsylvania under the Pennsylvania Limited Liability Company Act. The Debtor opened offices on the waterfront in Camden, New Jersey and Delaware.

7. The Debtor is a professional service firm that provides construction management, general contracting, and project management services. Its management has over 50 years of combined construction knowledge and project management experience in retail, commercial, institutional, multi-family, pharmaceutical, public space, healthcare and mixed-use projects.

C. **The Debtor's Business**

8. I have been involved in the construction industry for over thirty (30) years and for the last eighteen (18) years with the Debtor.

9. The Debtor's primary office is located at 2 Riverside Drive, Suite 500, Camden, NJ 08103. Prior to the Petition Date, the Debtor employed approximately 25 persons. As of the Petition Date, the Debtor employs only four (4) persons.

10. The Debtor's primary assets consist of cash (approximately $63,000); accounts receivable with respect to various construction projects (approximately $1,200,000), the Debtor's Collection Action (as herein defined) (approximately $12,000,000); and the employee retention credits (approximately $693,257).

### D. Capital Structure and Prepetition Indebtedness

11. As of the Petition Date, the Debtor's total loan obligations are approximately $4,144,000 and consist of, a term loan and line of credit. The Debtor's loan obligations are described in greater detail below.

12. Term Loan. On March 17, 2020, the Debtor entered into a certain Note (the "Term Note") with Financial Resources Federal Credit Union ("Lender") providing a U.S. Small Business Administration ("SBA") guaranteed term loan, SBA Loan No. 42662970-06 in the principal amount of $4,430,000.00 (the "Term Loan"). As of the Petition Date, the outstanding principal obligation under the Term Loan was approximately $3,865,817.13.

13. Revolving Credit Facility. On March 17, 2020, the Debtor entered into a certain Note (the "Line Note") with Lender providing a SBA guaranteed revolving credit facility, SBA Loan No. 42666970-08 of $350,000.00 (the "Line of Credit"). As of the Petition Date, the outstanding principal obligation under the Line Note was approximately $278,511.59.

14. Security for the Term Loan. On March 17, 2020, the Debtor executed a security agreement with Lender with respect to the Term Loan (the "Security Agreement for Term Loan") whereby the Debtor inter alia (a) granted Lender a security interest in its equipment, fixtures,

3

inventory, accounts, instruments, chattel paper, general intangibles, mechanics lien filed by the Debtor against KPG-MCG Curtis Tenant, LLC et. al. for $7,444,073.05 and the $11,800,000 lawsuit filed by the Debtor against KPG, et. al., and (b) the Debtor consented to the Lender's filing or recording of any documents necessary to perfect, continue, amend, or terminate its security interest.

15. <u>Security for the Line of Credit</u>. On March 17, 2020, the Debtor executed a security agreement with Lender with respect to the Line of Credit (the "<u>Security Agreement for Line of Credit</u>") whereby the Debtor <u>inter alia</u> (a) granted Lender a security interest in all assets of the Debtor, and (b) the Debtor consented to the Lender's filing or recording of any documents necessary to perfect, continue, amend, or terminate its security interest.

16. <u>Additional Collateral</u>. Borst and I, each executed an Unconditional Guarantee in favor of the Lender with respect to the Term Loan and the Line of Credit. In addition, Borst and his wife, provided collateral mortgages on their home, and two (2) other properties.

17. <u>Lender's Security Interest</u>. In preparation for the filing of this bankruptcy case, I was surprised to learn from Debtor's counsel that after reviewing the loan documents and UCC-1's filed by the Lender, it was Debtor's counsel conclusion that the Lender failed to properly perfect its security interest in the Debtor's assets and as a result, the loan obligations due the Lender should be listed as unsecured claims. Specifically, I was advised that the Lender recorded its UCC-1 financing statement with the New Jersey Secretary of the Treasury but, since the Debtor is a Pennsylvania limited liability company, the Lender's UCC-1 financing statement should have been recorded with the Secretary of the Commonwealth of Pennsylvania in order to be a perfected security interest in the assets of the Debtor. Debtor's counsel reached out to the Lender prior to

4

the Petition Date and advised them of this discovery so that it could perform its own investigation of this issue and advise if it had documents to evidence the perfection of its security interest.

18. The unpaid aggregate liability of the Debtors under the Term Loan and Line of Credit excluding accrued interest as of the Petition Date is approximately $4,144,329, which based on advice of counsel (for the reasons set forth above) are designated as unsecured claims in this bankruptcy case subject to amendment if it is determined at a later date that the Lender holds a perfected security interest in the assets of the Debtor.

19. In the ordinary course of business, the Debtor incurs unsecured indebtedness to various trade vendors, subcontractors, service providers, and taxing authorities, among others. As of the Petition Date, the Debtor had approximately $7.8 million of additional unsecured claims.

F. **Circumstances Giving Rise to the Chapter 11 Filing**

20. On or about October 2015, the Debtor entered into an agreement with KPG-MCG Curtis Tenant, LLC, a Delaware limited liability company ("KPG") for the conversion of a portion of the east side of the Curtis Center building from original industrial space, turned commercial office space on seven existing floors interspersed among eleven floors, into 63 luxury, residential units, including the construction of four, two story penthouses units on the roof of the building, new dual elevators and mechanical shaft in an existing stairway, retro-fitting of existing areas on the ground floor and garages to provide common amenities and building support functions, and new mechanical, electrical and plumbing systems to both expand and upgrade existing building systems to support the new apartments (the "Lyndon at the Curtis Project").

21. The Debtor's financial problems began in 2018 when it completed the Lyndon at the Curtis Project and was unable to collect the balance that it was due from KPG.

22. On or about October 31, 2018, the Debtor filed with the Court of Common Pleas of Philadelphia County, Pennsylvania, case no. 1810M0013, a Notice of Mechanics Lien Claim in the amount of $7,444,073.05 against KPG, Curtis Center TIC I LLC, and Curtis Center TIC II LLC with respect to the real property located 601 Walnut Street, Philadelphia, PA 19106.

23. On February 8, 2019, the Debtor commenced litigation against KPG and DAS Architects, Inc. in the Court of Common Pleas of Philadelphia County, Pennsylvania, case no. 190200666, asserting a variety of claims to collect the amounts owed it (the "Debtor's Collection Action").

24. The amounts owed to the Debtor by KPG are in excess of $12,000,000 and consist of various claims, including but not limited to, (a) the accounts receivable for the final owner approved billings, (b) the claims for time related project charges, including but not limited to, applicable general condition cost overruns, subcontractor claims, delayed start and night shift work, temporary protection and safety clean up charges and (c) the claims under the Contractor and Subcontractor Payment Act ("CASPA").

25. KPG in this case has failed to make proper payments to the Debtor and under CASPA is subject to an imposed 1% interest rate per month and 1% penalty on the amount due and outstanding. Further, CASPA mandates the award of attorneys' fees and fees to a contractor that successfully pursues a claim under CASPA.

26. As of the Petition Date, the litigation against KPG is still pending, the claim remains unpaid and the Debtor was never able to fully recover from this substantial loss.

27. In February 2020, in order to alleviate the Debtor's cash flow issues caused by inter alia KPG failing to pay the amount it owes the Debtor, the Debtor was in the process of obtaining the Term Loan and Line of Credit from the Lender.

28.     On or about March 11, 2020, as the Debtor was in the process of closing on the Term Loan and Line of Credit with the Lender, the World Health Organization declared the outbreak of a strain of the coronavirus disease (the "COVID-19") a pandemic.

29.     The COVID-19 outbreak in the United States resulted in temporary shutdowns of work sites mandated by state and local governments starting in March 2020 through May, 2020 which resulted in the shutdown of all of the Debtor's projects during this period, and the delay and cancellation of many projects including, several new projects.

30.      The Debtor is dependent on its workforce to deliver its services.  In response to COVID-19, the Debtor implemented new protocols to promote social distancing and enhance health and safety measures on its projects and in its offices to conform to regulatory requirements and the best practices encouraged by governmental and regulatory authorities.

31.     The financial consequence of the COVID-19 pandemic upon the Debtor was substantial losses.

32.     Recently, the Debtor's business experienced a reduction of new contract revenues in excess of $25 million dollars.  The Debtor's severe cash flow shortage has caused the Debtor to be unable to pay its debts as they come due.

33.     The culmination of these events has resulted in the Debtor concluding that it is unable to sustain its operations, or to continue to perform the approximately eight (8) construction jobs it has pending, four (4) of which are close to completion.

34.     In addition, the Debtor was no longer able sustain its workforce of approximately twenty-five (25) persons.  As a result, on March 10, 2022 the Debtor paid a final payroll for its workforce and laid off all of its employees as of the close of business on the Petition Date, except for four (4) employees, including Borst and I, that remain with the

Debtor to assist in the liquidation of the Debtor's assets and the prosecution of the Debtor's Collection Action.

35. During the Chapter 11 case, the Debtor intends to liquidate its assets, pursue the prosecution of the Debtor's Collection Action and distribute the proceeds in accordance with the priorities of the Bankruptcy Code under a plan of liquidation confirmed by the Bankruptcy Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of March, 2022.　　　　　By: /s/ Scott P. Scungio
　　　　　　　　　　　　　　　　　　　　　　　　SCOTT P. SCUNGIO,
　　　　　　　　　　　　　　　　　　　　　　　　Sole managing member of SCLLC,
　　　　　　　　　　　　　　　　　　　　　　　　Member of the Debtor