**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>SCUNGIO BORST & ASSOCIATES, LLC,<br><br>Debtor | Chapter 11<br><br>Case No. 22-10609 (AMC) |

**OBJECTION AND RESERVATION OF RIGHTS
OF KPG-MCG CURTIS TENANT, LLC TO APPLICATION OF DEBTOR
FOR THE ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF BOCHETTO & LENTZ, P.C. AS SPECIAL LITIGATION
COUNSEL PURSUANT TO 11 U.S.C. §§ 327(e) AND 328(a), FED. R. BANKR. P. 2014,
AND LOCAL BANKRUPTCY RULE 2014-1**

KPG-MCG Curtis Tenant, LLC ("KPG-MCG"), by and through its undersigned counsel, hereby files this Objection (the "Objection") and Reservation of Rights[1] to the Application of Debtor for the Entry of an Order Authorizing the Retention and Employment of Bochetto & Lentz, P.C. as Special Litigation Counsel Pursuant to 11 U.S.C. §§ 327(e) and 328(a), Federal Rule of Bankruptcy Procedure 2014, and Local Rule of Bankruptcy Procedure 2014-1 (the "Application"), and respectfully represents as follows:

**FACTUAL BACKGROUND**

1.  On or about October 27, 2015, KPG-MCG and Scungio Borst & Associates, LLC (the "Debtor") entered a "Cost of the Work Plus a Fee with a Guaranteed Maximum Price" agreement (the "Contract"), whereby the Debtor agreed to serve as the general

---

[1] The filing of this Objection and Reservation of Rights shall not be deemed or construed to be a waiver of any of the rights of KPG-MCG in this proceeding including, without limitation, to (i) have final orders in non-core matters entered only after *de novo* review by a higher court, (ii) trial by jury in any proceeding so triable in this case, or any case, controversy, or adversary proceeding related to this case, (iii) have the reference withdrawn in any matter subject to mandatory or discretionary withdrawal, or (iv) any other rights, claims, actions, defenses, setoffs, or recoupments to which KPG-MCG may be entitled in law or in equity, all of which rights, claims, actions, defenses, setoffs, and recoupments are expressly reserved.

contractor/construction manager for a construction project known as the "Lyndon at the Curtis" at the Curtis Center in Philadelphia (the "Project").

2. On October 31, 2018 (the "Lien Claim Date"), the Debtor filed a mechanic's lien (the "Lien") against certain real property located at 601 Walnut Street, Philadelphia, PA 19103 (the "Property") in the amount of $7,444,073.05 upon the commencement of an action in the Court of Common Pleas of Philadelphia County in a proceeding styled *Scungio Borst & Associates, LLC v. KPG-MCG Curtis Tenant, LLC, et al.*, October Term 2018, Case No. M0013 (the "Mechanic's Lien Action").

3. Shortly thereafter, the Debtor filed a Complaint Upon Mechanics' Lien Claim (the "Mechanic's Lien Complaint") in the Mechanic's Lien Action. The Mechanic's Lien Complaint alleged, among other things, the Debtor had performed work at the Property with an original base contract price of $24,858,119, and that the Debtor had provided additional labor, materials, equipment, and services under "change orders" that increased the contract price to $39,079,768.90. According to the Debtor, KPG-MCG was in default of its obligations to the Debtor on the Lien Claim Date because it had failed to pay no less than $7,444,073.05, which was allegedly due and owing for labor, materials, equipment, and services furnished by the Debtor under the Contract.

4. Several other actions have also been commenced between the parties related to the Contract. On or about February 8, 2019, the Debtor commenced a second action in the Court of Common Pleas of Philadelphia County styled *Scungio Borst & Associates, LLC v. KPG-MCG Curtis Tenant LLC*, February Term 2019, Case No. 00666 (the "SBA Action") upon the filing of a complaint asserting contract, quasi contract, and statutory claims under the Payment Act against KPG-MCG (the "SBA Complaint"). On or about May 17, 2019, KPG-MCG commenced an action in the Court of Common Pleas of Philadelphia County styled *KPG-MCG Curtis Tenant, LLC v.*

*Scungio Borst & Associates, LLC, et al.*, November Term 2018, Case No. 01154 (the "KPG-MCG Action" and, together with the SBA Action, the "Civil Actions" and collectively with the Mechanic's Lien Action, the "Litigation"), asserting claims against the Debtor for failure to perform as required by the Contract.[2]

5. The SBA Action and the KPG-MCG Action were consolidated for discovery purposes with certain other actions brought by subcontractors seeking payment from the Debtor related to the Project, including: *Cippco, Inc. v. Scungio Borst & Associates, LLC, et al.*, Court of Common Pleas of Philadelphia County, January Term 2019, Case No. 02911; *DWD Mechanical Contractor Inc. v. Scungio Borst & Associates LLC, et al.*, Court of Common Pleas of Philadelphia County, March Term 2019, Case No. 02707; and *Component Assembly Systems Inc. v. KPG-MCG Curtis Tenant LLC et al.*, Court of Common Pleas of Philadelphia County, August Term 2019, Case No. 02079 (the "Consolidated Subcontractor Actions").

6. Substantial progress has been made in the Litigation. Without the assistance of the Debtor, KPG-MCG has settled nearly all the Consolidated Subcontractor Actions directly with the various subcontractors. Importantly, the Debtor has not provided any credit to KPG-MCG for the resolution of these claims.

7. Further, and most critically, on November 3, 2021, and following summary judgment practice, **the Court in the Mechanic's Lien Action reduced the Debtor's Lien from $7,444,073.05 to $224,201.48**.

8. Over the course of the Litigation, and while Bochetto & Lentz, P.C. ("B&L") was representing the Debtor, no fewer than seven (7) discovery orders were entered against the Debtor, including two (2) orders for sanctions. On March 10, 2022, KPG-MCG filed yet another Motion

---

[2] KPG-MCG expressly reserves the right to seek an order from this Court granting it relief from the automatic stay for the purposes of, *inter alia*, continuing with its prosecution and defense of the Litigation.

3

for Contempt (the "Motion for Contempt") as a result of the Debtor's repeated and ongoing violations of multiple orders that had been entered in the SBA Action specifically requiring the Debtor to respond to certain requests for discovery.

9. The Motion for Contempt, which sought, *inter alia*, the stay of the Litigation, an order striking the SBA Complaint, and sanctions in an amount not to exceed $25,000.00, remains pending because one day after it was filed, on March 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

10. On April 5, 2022, the Debtor filed the instant Application, seeking to employ B&L as special counsel for the purpose of representing the Debtor in the Litigation.

11. For the reasons set forth below, KPG-MCG objects to the retention of B&L as special counsel to the Debtor in this proceeding.

## **OBJECTION**

12. The appointment of special counsel in bankruptcy cases is governed by Section 327 of the Bankruptcy Code, which provides that a debtor-in-possession, "with the court's approval, may employ, for a specified special purpose, other than to represent the [debtor-in-possession] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

13. Accordingly, "special counsel may be appointed if: (1) the representation is in the best interest of the estate; (2) the attorney represented the debtor in the past; (3) the attorney is for a specific purpose approved by the court; and (4) the attorney does not represent or hold an interest

4

adverse to the debtor or the debtor's estate." Phila. Newspapers, LLC v. Official Comm. of Unsecured Creditors, 408 B.R. 585, 597 (E.D. Pa. 2009).

14. "It is the debtor's burden to show that the proposed employment of special counsel is proper." In re Phila. Newspapers, LLC, 416 B.R. 438, 445 (Bankr. E.D. Pa. 2009); see also In re Johnson, 433 B.R. 626, 635 (Bankr. S.D. Tex. 2010). Employment of special counsel cannot be based on some hypothetical or speculative benefit; special counsel must be engaged for the purpose of providing a benefit to the estate, not merely a benefit to the debtor. Phila. Newspapers, 416 B.R. at 445 (citing Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 575 (3d Cir. 1997)). Further, the retention provisions of the Bankruptcy Code, including Section 327(e), "should be strictly construed in order to maintain the integrity of the bankruptcy process." In re Temp-Way Corp., 95 B.R. 343, 346 (E.D. Pa. 1989).

15. The Application raises certain questions with respect to (a) interests B&L may hold that are adverse to the Debtor and/or to the estate, (b) the proposed *ex parte* payment of costs that may be incurred during the course of B&L's employment, including to certain expert witnesses that hold pre-petition claims, (c) whether pursuit of the Litigation will be in the best interest of the bankruptcy estate or for the sole benefit of the Debtor and its principals, and (d) the potential for B&L to be called as a witness in the Litigation. Accordingly, KPG-MCG files this Objection.

**B&L holds an interest adverse to the Debtor or the Debtor's estate.**

16. As noted above, special counsel may be appointed in a bankruptcy case if the proposed "attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

17. "The Bankruptcy Code does not define the phrase 'hold or represent an interest adverse to the estate.'" In re AroChem Corp., 176 F.3d 610, 623 (2nd Cir. 1999). Instead, some

5

courts, including those in the Second, Fifth, and Seventh Circuits, have employed the definition provided in the matter of In re Roberts, 46 B.R. 815 (Bankr. D. Utah 1985), in which the Court stated that such an attorney would "possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant…or possess a predisposition under circumstances that render such a bias against the estate." Id. (expressly noting that whether applicant was a pre-petition creditor was relevant to consideration of whether applicant "held" an interest adverse to the estate).

18. B&L claims to hold an existing pre-petition unsecured "claim in the amount of $31,550.45 for unpaid litigation costs for experts, depositions, and expenses as of the Petition Date". Application, ¶ 28. The Debtor has also admitted that the Unpaid Costs are due and owing to B&L on its Schedules. See ECF No. 50, § 3.26.[3]

19. The proposed Post-Petition Engagement Letter suggests that B&L will "retain" the claim for Unpaid Costs following its retention as special counsel for the Debtor. See Application, ¶ 28. Little information is provided in the Post-Petition Engagement Letter concerning when or how the Unpaid Costs will be paid, but B&L "expects" they will be paid from the Debtor's gross recovery from the State Court Litigation, a claim that is both contingent and unliquidated. See id.

20. B&L is only "willing to be retained on a contingent fee basis of twenty percent (20%) of any funds recovered **plus** the Costs and Expenses **and** the reimbursement of the Unpaid Costs" and has therefore apparently not agreed to waive its pre-petition claim for Unpaid Costs. Application, ¶ 29. B&L therefore either possesses an economic interest that would tend to lessen the value of the bankruptcy estate, or a predisposition that would render a bias against the Debtor's estate, in violation of the requirements of 11 U.S.C. § 327(e).

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

21. Accordingly, the Objection should be sustained, and the Application should be denied.

**The Application contains insufficient information to determine whether the proposed representation is in the best interest of the Debtor's estate.**

22. With respect to the best interest of the estate, the Third Circuit requires that "the attorneys' employment must be in the best interest of the estate, which means property of the estate is threatened and the need for services is real. Employment cannot be based on some 'hypothetical or speculative benefit." In re Engel, 124 F.3d 567, 575 (3d Cir. 1997) (citation omitted). "Bankruptcy courts have discretion 'to evaluate each case on its facts, taking all circumstances into account." In re BH&P, Inc., 949 F.2d 1300, 1315 (3d Cir. 1991).

23. The Application raises substantial questions about who will actually benefit from B&L's services.

24. As an initial matter, the Debtor's schedules suggest that Federal Resources Financial Credit Union ("FRFCU") holds undisputed claims totaling no less than $4,144,328.72 secured by a lien on "all Debtor's assets including mechanics lien styled Scungio Borst & Associates, LLC v. KPG-MCG Curtis Tenant LLC, et al. Philadelphia Court of Common Pleas No. 18-10M0013 and lawsuit styled Scungio Borst & Associates, LLC v. KPG-MCG Curtis Tenant, LLC, et al., Philadelphia Court of Common Pleas No. 190200666" (the "FRFCU Claims"). See ECF No. 50. To the extent the FRFCU Claims are allowed, there may be little to no benefit that would accrue to the Debtor's estate from the engagement of B&L, even in the extremely unlikely event the Litigation were successful. This is even more concerning in light of B&L's

request that the estate fund B&L's ongoing costs without the need for B&L to first seek Court approval (as addressed in greater detail below).[4]

25. Furthermore, and upon information and belief, the FRFCU Claims are also secured by mortgage liens on the principal residences of the principals of the Debtor, among other collateral assets. See ECF No. 50. It would therefore presumably be to the benefit of the Debtor's principals—and not the Debtor's estate—for B&L to continue to pursue the Litigation for the purpose of paying down the FRFCU Claims.

26. Because the Debtor's disclosures raise unanswered questions about how the proposed representation would be in the best interest, or even to the benefit, of the Debtor's estate, the Application should be denied.

### B&L will be a witness in the Litigation.

27. Prosecution of the Litigation by B&L must also be precluded because B&L may be called as a fact witness during the Mechanic's Lien Action and the Civil Actions.

28. Retention of special counsel under Section 327(e) of the Bankruptcy Code for the purposes of prosecuting litigation is not proper where B&L may be a fact witness in the Litigation. See e.g. Buckley v. TransAmerica Inv. Corp. (In re S. Kitchens), 216 B.R. 819, 834 (Bankr. D. Minn. 1998) (citing Rule 3.7 disqualifying firm where counsel was a necessary witness, notwithstanding applicant's assertions that (i) facts of litigation were not simple and counsel had mastery of them, (ii) the estate lacked means to fund litigation through successor counsel, and (iii) no other firm would take on the risk of engagement); Pennsylvania Rules of Professional Conduct, Rule 3.7.

---

[4] Further, and in the event the proceeds to be derived from the Litigation are insufficient to pay the FRFCU Claims in full, the Application does not disclose whether FRFCU has agreed to a carve out that would allow B&L to be paid from FRFCU's share of the proceeds, or whether the Debtor's estate would be expected to bear the burden of those fees and expenses.

8

29. In the course of its prior representation of the Debtor, on or around June 10, 2019, B&L wrote and published an opinion letter (the "June 10, 2019 Opinion Letter") to another client, MD Capital, and its president Robert D. Dischert, regarding the facts of the Litigation. A copy of the June 10, 2019 Opinion Letter is incorporated herein by reference and attached hereto as Exhibit "A".

30. By the publication of the June 10, 2019 Opinion Letter, B&L and the Debtor waived any claims to privilege regarding the communication of factual information asserted in the June 10, 2019 Opinion Letter.

31. Certain factual statements made by B&L in the June 10, 2019 Opinion Letter are (a) fatal to the Debtor's claim in the Mechanic's Lien Action, and (b) substantially damaging admissions to the Debtor's claims in the Civil Actions. It is clearly anticipated, then, that B&L will be called by KPG-MCG as a fact witness in the Litigation to the detriment of the Debtor's claims.

32. For example, in the Mechanic's Lien Action, B&L will be called as a necessary witness to testify to the statement in the June 10, 2019 Opinion Letter that, at the time the Lien was filed on October 31, 2018, the Debtor had wrongfully retained $598,527.90 in funds previously paid by KPG-MCG that were not paid out by the Debtor to subcontractors. Such factual testimony will be fatal to the Debtor's Lien claim under 49 P.S. § 1301(a) of the Pennsylvania Mechanic's Lien Act, as it demonstrates that, at the time of the filing of the Lien, no amounts were "due" under the Contract, thus supplying the factual basis for preclusion of the Debtor's statutory right to file the Lien.

33. In the Civil Actions, B&L will be called as a necessary witness to provide the factual basis to prove that, as of the date the SBA Complaint was filed, due to the wrongfully

retained $598,527.90 kept by the Debtor, the Debtor was in breach of the Contract and the Debtor was in violation of the Pennsylvania Subcontractor and Subcontractor Payment Act. B&L will also testify that the Debtor admitted to KPG-MCG's valid back charges of $266,977.19 against the Debtor. Through testimony, B&L will also supply the factual information with regard to the Debtor's admission as to the actual purported value of approximately $2.3 million in subcontractor claims proffered by the Debtor on the Project. B&L's testimony will also be used to impeach the Debtor's claims that the agreed-upon contract amount was approximately $3 million higher than the Debtor's sworn certification.

34. In addition to the fact that B&L will be required to provide factual testimony adverse to the Debtor on its claim, B&L may potentially have liability to third parties with respect to misrepresentations contained in the June 10, 2019 Opinion Letter. There is therefore a substantial chance of a potential conflict between the interests of the Debtor and the interests of B&L itself.

35. Accordingly, the Objection should be sustained, and the Application should be denied.

**B&L's Request for Payment of Costs and Expenses from the Estate Without First Filing an Application is in Contravention of the Requirements of 11 U.S.C. § 330(a)(1)(B).**

36. The Bankruptcy Code expressly provides that, "[a]fter notice to the parties in interest and the United States Trustee and a hearing…the court may award to…a professional person employed under section 327 or 1102…reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B).

37. B&L is seeking a waiver of the statutory requirement that obligates professionals to file an application with the Court for an award of expenses before they can be paid from the Debtor's estate. See Application, ¶ 8 [sic].

38. The Debtor's Schedules reveal the existence of an entity in financial crisis. See ECF No. 50. The Debtor reports the existence of claims totaling no less than $8,216,566.74, but cash reserves of only $115,082.19. See id. The Debtor owns no real property and very few items of personal property of any considerable value, and the Debtor's own counsel reports a remaining retainer as of the Petition Date of only $40,401.68. See id.

39. Beyond the mandates of 11 U.S.C. § 330(a)(1)(B), there is good reason to demand transparency related to B&L's Litigation costs and expenses. As detailed above, the Debtor's principals have a proven history of certifying the receipt and use of funds for one purpose (i.e., payment application and funds to be paid to trade contractors) and using those funds for other purposes. On the Project that is the subject of the Litigation alone, it took over two (2) years of litigation and numerous discovery orders for Debtor to admit that it had misspent at least $400,000 (but potentially closer to $598,000) of Project money.

40. Further, the Application reveals that the Costs and Expenses B&L seeks to pay from the estate going forward without Court approval may include "filing fees, expert fees, postage, court reporters, transcripts, and photocopying." See Application, ¶¶ 25, 28. Construction litigation is technical and expert driven. Prior to the Petition Date, the Debtor served two expert reports in connection with the Litigation. One report was authored by Margulies Hoeizili Architecture, PLLC ("MHA") which, according to the Debtor's own Schedules, holds an unsecured pre-petition claim totaling $33,065.09, which has been questionably identified by the Debtor as "trade debt" and "contingent." See ECF No. 50, §3.92. The Debtor has not filed an application to employ MHA, whose services will presumably be necessary in prosecuting and defending the Litigation. The Debtor's other expert report was authored by HKA Consulting, which has not been identified as a creditor holding a claim—but, again, it is anticipated that HKA Consulting's services would

also be needed on an ongoing basis. Approval of the Application may shield critically important details regarding the retention of these experts and/or compensation or fees paid to these experts from public consumption.

41. Given the uncertainty of any recovery in the Litigation, the Debtor should not be permitted to treat its application to employ B&L like a credit card; the Court and the Debtor's creditors are entitled to transparency on the investments the Debtor is making in pursing this Litigation. Presumably, there will be very little left for the holders of general unsecured claims in this case following the liquidation of the Debtor's *de minimis* assets. Those assets, then, should be zealously guarded for the benefit of the Debtor's creditors and only disbursed for the benefit of B&L following strict adherence to the provisions of the Bankruptcy Code including, but not limited to, the requirements of 11 U.S.C. § 330(a)(1)(B). This is particularly so, in light of the Debtor's claims that, "[p]rior to the Petition Date, [B&L] expended more than $1,000,000 in attorney time in connection to the Litigation." Application, ¶ 25. It is unlikely that such considerable attorneys' fees were incurred without substantial associated costs, the burden of which the Debtor conveniently omitted from the Application—other than disclosing outstanding "trade debt" due and owing to one of its experts on its Schedules.

42. Accordingly, the Application as presented should be denied.

## RESERVATION OF RIGHTS

43. To the extent the Application is approved, KPG-MCG expressly reserves the right to object to any further application that may be filed by B&L for payment of fees or reimbursement of expenses.

## **CONCLUSION**

WHEREFORE, KPG-MCG Curtis Tenant, LLC respectfully requests that this Court deny approval of the Application, and grant such other and further relief to KPG-MCG as may be appropriate under the circumstances.

        Respectfully submitted:

        KLEHR | HARRISON | HARVEY| BRANZBURG LLP

By:   */s/Corinne Samler Brennan*
      Corinne Samler Brennan, Esquire
      1835 Market Street, Suite 1400
      Philadelphia, PA  19103
      Telephone: (215) 569-3393

      *Counsel to KPG-MCG Curtis Tenant, LLC*

Dated:  April 12, 2022