IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| SCUNGIO BORST & ASSOCIATES, LLC | : | BANKRUPTCY NO. 22-10609(AMC) |
| | : | |
| Debtor | : | |
| | : | |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER (I) DETERMINING THAT CERTAIN CONSTRUCTION LIENS ARE VOID *AB INITIO*; (II) GRANTING COMPENSATORY AND PUNITIVE DAMAGES AGAINST CERTAIN CONSTRUCTION LIEN CLAIMANTS FOR VIOLATIONS OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(k) AND (III) GRANTING RELATED RELIEF**

Scungio Borst & Associates, LLC (the "Debtor"), by and through its counsel, Karalis PC, respectfully moves this Honorable Court for the entry of an Order (i) determining that certain construction liens are void *ab initio*; (ii) granting compensatory and punitive damages against certain construction lien claimants for violations of the automatic stay pursuant to 11 U.S.C. § 362(k) and (iii) granting related relief (the "Motion"), and in support thereof, respectfully avers as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (K) and (O).

2. The statutory basis for the relief requested herein is 11 U.S.C. §§ 105(a) and 362.

## BACKGROUND

**A.    Procedural Background.**

3. On March 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of

Pennsylvania.

4. Since the Petition Date, the Debtor has remained in possession of its assets and is liquidating its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. On April 11, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "UCC") pursuant to Section 1102(a)(1) of the Bankruptcy Code.

6. The Debtor commenced its Chapter 11 case to orderly liquidate its assets in accordance with the provisions of the Bankruptcy Code.

**B.    The Project.**

7. Scope FLP Pennington SM, LLC ("Pennington") is the owner of certain commercial real property known as (i) Lot 5, Block 201, on the official tax map of Borough of Pennington, County of Mercer, in the State of New Jersey, and Lot 15, Block 63.01, on the official tax map of Township of Hopewell, County of Mercer, in the State of New Jersey; and (ii) Lot 14.02, Block 63.01, on the official tax map of Township of Hopewell, County of Mercer, in the State of New Jersey (collectively, the "Property").

8. Pennington sought, *inter alia*, to renovate and convert an existing multi-floor office building into a medical center at the Property (the "Project").

9. The Debtor was the construction manager for Pennington in connection with the Project.

10. On or about March 12, 2021, the Debtor and Pennington entered into an AIA form A133-2019 "Standard Form of Agreement Between Owner and Construction Manager as Constructor" together with the AIA A201-2017 "General Conditions of the Contract for

Construction" (collectively, and including any and all change orders, amendments, adjustments, exhibits, annexes, addenda, supplements, schedules, and Contract Documents (as defined in the foregoing "Standard Form of Agreement Between Owner and Construction Manager as Constructor"), the "Contract") pursuant to which the Debtor was to perform certain construction management work for the Project, including, but not limited to, certain renovation and conversion of an existing multi-floor office building into a medical center.

11. The Debtor retained certain subcontractors (collectively, the "Subcontractors") to assist it with the Project.

12. Prior to the Petition Date, the Debtor and Pennington were operating under the terms of the Contract with certain modifications made in the ordinary course.

13. Prior to the Petition Date, the Debtor substantially completed work under the Contract.

## C. Disputes in Connection to the Project.

14. Disputes arose between the Debtor and Pennington relating to, *inter alia*, the Debtor's failure to pay certain of its Subcontractors on the Project (the "Unpaid Subcontractors").

15. In connection with the Project, Pennington made certain payments to the Debtor under the Contract. The Debtor alleged it was owed a total remaining sum of $430,269.63 (the "Contract Balance") under the Contract.

## D. The Claims of the Unpaid Subcontractors.

16. The claims of the Unpaid Subcontractors against the Debtor are alleged, without admission, to be $1,252,569.91.

3

E. **The Unpaid Subcontractors that Recorded Construction Liens against the Project.**

17. After the Petition Date, certain Unpaid Subcontractors attempted to record construction lien claims, allegedly under the New Jersey Construction Lien Law (the "Asserted Liens"), against the Property with the Mercer County, New Jersey Clerk (the "Unpaid Subcontractors with Asserted Liens").

18. The Unpaid Subcontractors with Asserted Liens are summarized as follows:

| | UNPAID SUBCONTRACTOR WITH LIENS | CONSTRUCTION LIEN AMOUNT | DATE OF RECORDATION OF LIEN | INSTRUMENT NUMBER | EXHIBIT NUMBER |
|---|---|---|---|---|---|
| 1 | 1st Black Hawk, LLC | $183,324.45 | March 17, 2022 | 2022014247 | 1 |
| 2 | Elite Painting Services, LLC | $97,700.00 | March 21, 2022 | 2022014650 | 2 |
| 3 | K&D Ungarini Iron Works, LLC (This construction lien is filed in the name of this subcontractor's president, Daniel Fedejko.) | $137,030.00 | March 28, 2022 | 2022016136 | 3 |
| 4 | M&D Door & Hardware | $43,279.95 | April 5, 2022 | 2022017506 | 4 |
| 5 | Network Flooring & Maintenance, LLC | $25,929.00 | April 22, 2022 | 2022020913 | 5 |
| 6 | SSC Distributors, Inc. | $117,765.90 | April 5, 2022 | 2022017591 | 6 |

**TOTAL:** $605,029.30 (the "Subcontractor Claims")

F. **The Settlement with Pennington.**

19. On March 2, 2022, this Court entered an Order approving a Settlement Agreement and Mutual Release (the "Agreement") between the Debtor and Pennington.

20. The terms and conditions of the Agreement provided, *inter alia*, as follows:

> A. **Payment of the Contract Balance.** Upon the entry of the Final Order approving the Agreement, Pennington shall pay the Contract Balance to the Debtor to hold in a segregated Debtor-in-Possession Escrow Account (the "Segregated Funds") pending a further Order of the Bankruptcy Court as described in more detail below; provided, however, that the Debtor shall first provide to Pennington the instructions and information necessary for Pennington to deposit the Contract Balance in the Debtor-in-Possession Escrow Account. Upon Pennington's payment of the Contract Balance, the Debtor shall execute a "Payment Affidavit," in a form reasonably acceptable to Pennington, evidencing the Debtor's receipt of the Contract

4

Balance and confirming that Pennington has fully satisfied its payment obligations related to the Contract.

B. **Property Free and Clear of the Liens.** On the Effective Date, title to the Property owned by Pennington known as (i) Lot 5, Block 201, on the official tax map of Borough of Pennington, County of Mercer, in the State of New Jersey, and Lot 15, Block 63.01, on the official tax map of Township of Hopewell, County of Mercer, in the State of New Jersey; and (ii) Lot 14.02, Block 63.01, on the official tax map of Township of Hopewell, County of Mercer, in the State of New Jersey shall be held by Pennington free and clear of the Liens and claims or other encumbrances related to the Liens, Unpaid Subcontractors, and/or Subcontractor Claims.

C. **Liens of the Unpaid Subcontractors with Liens.** The asserted Liens of the Unpaid Subcontractors with Liens, if any, shall attach only to the Segregated Funds, to the extent and with the priorities provided under applicable non-bankruptcy law, as such laws may be modified by the Bankruptcy Code.

D. **Motion for Stay Violation.** With respect to any Liens attaching to the Segregated Funds, on or within thirty (30) days after the Effective Date, the Debtor shall file a motion for entry of an Order determining that (i) the Unpaid Subcontractors with Liens have violated the automatic stay under 11 U.S.C. § 362(a) and (ii) the Liens are void *ab initio* (the "Stay Violation Motion"), or seek such other or additional relief as is necessary to void the Liens. In the event that the Stay Violation Motion is granted by a final and non-appealable Order, or any other relief sought is granted, the Liens that attached to the Segregated Funds shall be void and the Debtor may use the Segregated Funds to fund its Plan of Liquidation. In the event that the Stay Violation Motion or the other relief sought is denied by a final and non-appealable Order, the Segregated Funds shall be distributed to the Subcontractors in accordance with the valid Liens on such Segregated Funds with the priorities provided under applicable non-bankruptcy law, as such laws may be modified by the Bankruptcy Code. For avoidance of doubt, neither this paragraph nor the outcome of the Stay Violation Motion shall alter the Property's status as free and clear of any Liens; rather, any Liens shall attach, if at all, only to the Segregated Funds.

21. The Debtor is filing the instant Motion in accordance with the terms of the Agreement.

## RELIEF REQUESTED AND THE BASIS THEREFOR

22. The Debtor respectfully requests the entry of an Order (i) determining that the Asserted Liens are void *ab initio*; (ii) granting compensatory and punitive damages against the

5

Unpaid Subcontractors with Asserted Liens for violations of the automatic stay pursuant to 11 U.S.C. § 362(k) and (iii) granting related relief.

## I.   The Automatic Stay.

23.   Pursuant to Section 362(a) of the Bankruptcy Code, the commencement of a bankruptcy case results in an automatic stay that enjoins all persons and entities from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate. *See*, 11 U.S.C. § 362(a)(3).

24.   This injunction provides the Debtor with a necessary "breathing spell" from its creditors that facilitates the Debtor's ability to achieve a successful restructuring. *See, e.g., Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).

25.   Courts broadly construe the automatic stay in recognition of its fundamental importance to the success of a debtor's restructuring efforts. *See, Maritime Electric Co.*, 959 F.2d at 1203-04. *See also, In re Nortel Networks, Inc.*, 669 F.3d 128, 1137 (3d Cir. 2011).

## II.   The Improper Post-Petition Recordation of the Liens.

26.   The law in the Third Circuit is clear that the automatic stay applies to bar a contractor, subcontractor, materialman or similar party from filing or prosecuting their construction lien claim under New Jersey law for pre-petition services rendered and/or goods supplied on a project where the general contractor has commenced a bankruptcy case. *See, In re Linear Elec. Co., Inc.*. 852 F.3d 313, 321-23 (3d Cir. 2017) (holding that creditors' attempts to move against the third party on their asserted construction lien claims was an attempt to collect against the debtor's accounts receivable, which was property of the debtor's estate, and thus violated the automatic stay). *See also, In re Hollister Constr. Servs.*, LLC, 617 B.R. 45, 52 (Bankr. N.J. 2020). As such, the filings of such liens are void *ab initio* for violation of the automatic stay.

6

27. The Third Circuit's decision in *Linear Electric*, interpreting New Jersey's Construction Lien Law, is dispositive of the issue set forth in this Motion. As discussed in *Linear* and other cases applying the New Jersey Construction Lien Law ("NJCLL"), when a subcontractor files a construction lien, the amount of that lien is limited to the lesser of the "amount unpaid by the owner to its prime contractor as of the time [the] lien is filed" or the "balance owed by the contractor to the liening subcontractor." *See, Sil-Kemp Concrete, Inc. v. Conte & Ricci Const. Co.*, No. A-4324-03T3, 2005 WL 3742261, at *10 (N.J. Super. Ct. App. Div. Feb. 8, 2006) (*quoting* 41 ROBERT S. PECKAR, NEW JERSEY PRACTICE, CONSTRUCTION LAW, § 12.58 (1998)).

28. Stated another way, the amount of a subcontractor lienholder's claim—and the fund from which that claim may be paid—is limited to "the amount the [general contractor] owes to the [subcontractor] lienholder under their contract and to the ***accounts receivable*** the owners of the third-party properties owe to the [general contractor] under their contract." *See, Cooper Elec. Supply Co. v. Linear Elec. Co.*, No. 15-06429, 2016 WL 781770, at *2 (D.N.J. Feb. 29, 2016), *aff'd sub nom. In re Linear Elec. Co., Inc.*, 852 F.3d 313 (3d Cir. 2017) ***(emphasis added)***.

29. Upon the filing of a lien claim, the NJCLL authorizes the property owner "to withhold and deduct the amount claimed from the unpaid part of the contract price that is or thereafter may be due and payable to the contractor or subcontractor, or both." *See*, N.J. STAT. ANN. § 2A:44A-12. Thus, the filing of a construction lien by a subcontractor is an act to collect a portion of the account receivable owed by a third-party property owner to a general contractor. *See, Linear Elec. Co.*, 2016 WL 781770, at *2. *See also, In re Linear Elec. Co., Inc.*, 852 F.3d at 320-22 (filing of a construction lien by a subcontractor is an act to create or perfect a lien against a general contractor's accounts receivable).

7

30. When a general contractor files for bankruptcy, its accounts receivable becomes property of the bankruptcy estate. *See, Id.* Accordingly, where, as here, the general contractor has filed for bankruptcy, a construction lien filed post-petition constitutes an act against property of the estate and is violative of the automatic stay. *See, In re Linear Elec. Co., Inc.*, 852 F.3d at 322. *See also, In re Hollister Constr. Servs.*, LLC, 617 B.R. at 52.

31. As a result, the Asserted Liens recorded by the Unpaid Subcontractors with Asserted Liens are void *ab initio* because they were filed after the Petition Date without any authorization from the Bankruptcy Court. *See, In re Myers*, 491 F. 3d. 120, 127 (3d Cir. 2007) (holding "that actions taken in violation of the stay are void"). *See also, In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994).

32. Bankruptcy courts are authorized to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See*, 11 U.S.C. § 105(a).

33. Accordingly, this Court may issue injunctions or take other necessary steps in aid of its jurisdiction. *See, e.g., MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988); *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986).

34. These judiciary actions are appropriate where, as here, they are essential to the Debtor's reorganization efforts and do not burden creditors. *See, e.g., In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (holding that, as courts of equity, bankruptcy courts are empowered to invoke equitable principles to achieve fairness and justice in the reorganization process).

35. Thus, this Court can use Section 105(a) of the Bankruptcy Code in support of the relief sought by the Debtor under Section 362 of the Bankruptcy Code.

III. **Compensatory and Punitive Damages for a Stay Violation.**

36. As set forth herein, all of the Asserted Liens were filed after the Petition Date.

37. In addition, it is clear that the Unpaid Subcontractors with Asserted Liens were aware of the Debtor's bankruptcy filing prior to the filing of the Asserted Liens. On the Petition Date, all of the Unpaid Subcontractors with Asserted Liens were served with the Notice of Motion, Response Deadline and Hearing Date on the Motion of Debtor for Entry of an Order Authorizing the Rejection of Executory Contracts Pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006. *See*, D.I. 7-1.

38. As such, the Unpaid Contractors with Asserted Liens should be sanctioned for their willful violation of the automatic stay. *See*, *In re Howard*, 428 B.R. 335 (Bankr. W.D. Pa. 2010) (trustee may seek damages and sanctions for violations of the stay) (*citing In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3rd Cir. 1990).

39. The importance of the automatic stay in our system of bankruptcy is reflected in the provisions of Section 362(k)(1) of the Bankruptcy Code. *See, e.g., In re Wingard*, 382 B.R. 892, 899- 900 (Bankr. W.D. Pa. 2008); *In re Howard*, 422 B.R. at 602-605.

40. Section 362(k)(1) of the Bankruptcy Code is remarkably simple and states in pertinent part as follows:

> [A]n individual injured by any willful violation of a stay provided by this section [i.e., Section 362(a)] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

*See*, 11 U.S.C. § 362(k)(1).

41. The definition of the term "individual" for purposes of 11 U.S.C. § 362 applies to debtor entities. *See, Atlantic Business and Community Corporation,* 901 F.2d 325 at 329.

42. With respect to the concept of "willfulness," the Third Circuit Court of Appeals has

9

held:

> It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. *In re University Medical Center,* 973 F.2d 1065, 1087-88 (3d Cir.1992). Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional. *Id.*

*See, In re Lansdale Family Restaurants, Inc.*, 977 F.2d 826, 829 (3d. Cir. 1992). *See also, In re University Medical Center,* 973 F.2d 1065,1087-88 (3d Cir. 1992).

43. Courts in the Third Circuit have consistently recognized that "willfulness" under § 362(k) does not require a finding of a creditor's specific intent to violate the stay. *See, In re Nixon,* 419 B.R. 281, 288 (Bankr. E.D. Pa. 2009); *In re Krystal Cadillac-Oldsmobile GMC Truck, Inc.,* 142 F.3d 631, 637 (3d Cir.1998).

44. The Debtor and the UCC have had to expend significant resources as a result of the improper Asserted Liens. As such, their respective counsel should be awarded legal fees.

45. In addition, as the stay violation was clearly willful, punitive damages should be assessed against the Unpaid Contractors with Asserted Liens.

## RESERVATION OF RIGHTS

46. In the event that the instant Motion is not granted, the Debtor reserves the right to commence litigation against the Unpaid Subcontractors with Asserted Liens under Chapter 5 of the Bankruptcy Code and/or for related relief.

## NOTICE

47. The Debtor's counsel has served this Motion and Notice of Motion, Response Deadline and Hearing Date upon: (a) the Office of the United States Trustee, (b) counsel to the UCC, (c) all of the Unpaid Subcontractors with Asserted Liens and their counsel, if known, and (d) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. In light of the nature

of the relief requested, the Debtor respectfully submits that no further notice is necessary.

**WHEREFORE**, the Debtor respectfully requests that this Honorable Court enter an Order (i) granting the relief requested herein and (ii) granting such other and further relief it deems just and proper.

                    **Respectfully submitted,**

                    **KARALIS PC**

                    By: /s/ Robert W. Seitzer
                          ARIS J. KARALIS
                          ROBERT W. SEITZER
                          1900 Spruce Street
                          Philadelphia, PA  19103
                          (215) 546-4500
                          akaralis@karalislaw.com
                          rseitzer@karalislaw.com

                          *Attorneys for the Debtor*

Dated: March 23, 2023