**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | Chapter 11 |
| | : | |
| SCUNGIO BORST & ASSOCIATES, LLC, | : | |
| | : | |
| | : | Bankruptcy No. 22-10609-AMC |
| DEBTOR | : | |
| | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

## I. INTRODUCTION

In the instant Chapter 11 bankruptcy case, the debtor, Scungio Borst & Associates, LLC ("Debtor"), and its Official Committee of Unsecured Creditors ("Official Committee") seek an award of damages under 11 U.S.C. § 362(k) jointly and severally against several subcontractors who had completed work on a project pre-petition where the Debtor served as general contractor. Specifically, Debtor alleges that these subcontractors committed willful violations of the automatic stay when they recorded certain construction liens post-petition pursuant to N.J. S.A. §2A:44A-3(a) ("New Jersey Construction Lien Law").

As described more fully below, the Court concludes that the subcontractors willfully violated the automatic stay when they filed liens against estate property – a receivable owed to the Debtor – with knowledge of the Debtor's bankruptcy. Furthermore, such willful violation injured both the Debtor and the Official Committee because they were forced to protect their interests in the Debtor's estate by incurring attorney fees to address the stay violations. As a result, compensatory damages will be awarded in the amount of $14,488.86 in favor of the Debtor and $12,112.00 in favor of the Official Committee pursuant to § 362(k), jointly and severally against the offending subcontractors.

1

## II.     FACTUAL/PROCEDURAL BACKGROUND

On March 12, 2021, Scope FLP Pennington SM, LLC ("Pennington") entered into a construction contract with the Debtor whereby Debtor agreed to be responsible for performing construction management work for Pennington's project to renovate and convert an existing multi-floor office building into a medical center ("Project") at its commercial real property in New Jersey, specifically Lot 5, Block 201, on the official tax map of the Borough of Pennington, County of Mercer; Lot 15, Block 63.01, on the official tax map of the Township of Hopewell, County of Mercer; and Lot 14.02, Block 63.01, on the official tax map of the Township of Hopewell, County of Mercer (referred to collectively as the "Property"). Case No. 22-10609 ECF No. ("ECF") 247 (hereinafter referred to as "Stay Violation Mot.") ¶¶ 7-10. The Debtor engaged subcontractors to assist in carrying out the Project. *Id.* at ¶ 11.

Initially, Pennington made certain payments to the Debtor in connection with the Project. *Id.* at ¶ 15. However, disputes arose between Pennington and the Debtor over Debtor's failure to pay certain subcontractors. *Id.* at ¶ 14. Pennington ultimately stopped making payments to the Debtor, leaving an alleged balance of $430,269.63 owed to Debtor on account of the Project ("Contract Balance"). *Id.* at ¶ 15.

On March 11, 2022, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Case No. 22-10609 ECF 1. The same day, Debtor filed a motion to reject executory contracts ("Motion to Reject") seeking, *inter alia*, to reject its contract with Pennington for the Project, and served the notice of the Motion to Reject on, *inter alia*, several subcontractors retained by Debtor for the Pennington Project, including 1st Black Hawk, LLC ("Black Hawk"); Elite Painting Services, LLC ("Elite Painting"); K&D Ungarini Iron Works, LLC ("K&D Iron

2

Works"); M&D Door and Hardware ("M&D"); Network Flooring & Maintenance, LLC ("Network Flooring"); and SSC Distributors, Inc. ("SSC Distributors"). *Id.* at ECF 6, 7.

Subsequently, on March 17, 2022, Black Hawk recorded a construction lien against the Pennington Property pursuant to the New Jersey Construction Lien Law in the amount of $183,324.45 ("Black Hawk Lien").[1] Stay Violation Mot. ¶ 18, Ex. 1. Following suit, on March 21, 2022, Elite Painting recorded a construction lien in the amount of $97,700.00 against the Pennington Property pursuant to the New Jersey Construction Lien Law ("Elite Painting Lien"). *Id.* at ¶ 18, Ex. 2. On March 28, 2022, K&D Iron Works recorded a construction lien in the amount of $137,030.00 against the Pennington Property pursuant to the New Jersey Construction Lien Law ("K&D Lien"). *Id.* at ¶ 18, Ex. 3.

On March 31, 2022, Pennington filed an opposition to the Motion to Reject. Case No. 22-10609 ECF 39.

On April 5, 2022, M&D recorded a construction lien against the Pennington Property in the amount of $43,279.95 ("M&D Lien") and SSC Distributors recorded a construction lien in the amount of $117,765.90 ("SSC Lien") against the Pennington Property pursuant to the New Jersey Construction Lien Law. Stay Violation Mot. ¶ 18, Ex. 4, 6.

On April 11, 2022, the United States Trustee filed a notice of appointment for the Official Committee for the Debtor's bankruptcy estate. Case No. 22-10609 ECF 55.

On April 22, 2022, Network Flooring recorded a construction lien (collectively with Black Hawk, Elite Paining, K&D Iron Works, M&D, and SSC, "Subcontractor Lienholders") in the amount of $25,929.00 against the Pennington Property pursuant to the New Jersey

---

[1] The construction lien claim prepared on behalf of Black Hawk was signed on March 10, 2022 before the Debtor's bankruptcy petition was filed, but was recorded post-petition as described *supra*. Case No. 22-10609 ECF 271 (hereinafter "Black Hawk Ltd. Stay Violation Opp.") ¶ 27; ECF 272.

3

Construction Lien Law ("Network Flooring Lien," collectively with Black Hawk Lien, Elite Painting Lien, K&D Lien, M&D Lien, and SSC Lien, "Subcontractor Liens"). Stay Violation Mot. ¶ 18, Ex. 5.

Over the next several months, as the Debtor attempted to resolve Pennington's objection to the Motion to Reject, it became clear that Pennington would not pay the Debtor the Contract Balance unless the Subcontractor Liens were removed. *See* Case No. 22-10609 ECF 283 Seitzer Suppl. Decl. ¶¶ 9-11.

On January 30, 2023, the Debtor filed a motion under Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") seeking approval of a settlement agreement with Pennington ("Settlement Agreement") to resolve Pennington's objection to the Motion to Reject and disputes concerning payment of the Contract Balance ("9019 Motion"). Case No. 22-10609 ECF 228 (hereinafter "9019 Mot.") ¶ 24. As part of the Settlement Agreement, Pennington agreed to pay Debtor the Contract Balance by deposit into a segregated Debtor-in-Possession escrow account. *Id.* at ¶ 26. Per the terms of the Settlement Agreement, the Subcontractor Liens would attach only to the Contract Balance paid into the segregated Debtor-in-Possession escrow account ("Segregated Funds"), and upon the Court granting the 9019 Motion and Pennington paying the Contract Balance in full, the Property would be free and clear of any liens, claims, or encumbrances related to the Subcontractor Lienholders. *Id.* Subsequently, Debtor would file a motion for entry of an order determining that the Subcontractor Lienholders violated the automatic stay by recording the Subcontractor Liens, rendering the Subcontractor Liens void *ab initio*. *Id.*

The same day, all the Subcontractor Lienholders were served with a copy of the 9019 Motion. Case No. 22-10609 ECF 228.

On February 13, 2023, Network Flooring filed an objection to the 9019 Motion, arguing that the Court lacked subject matter jurisdiction to strip liens from non-debtor property, *i.e.*, the Pennington Property. Case No. 22-10609 ECF 237 (hereinafter "Network Flooring 9019 Obj.") ¶¶ 8,10. On March 2, 2023, after a hearing on the 9019 Motion, the Court entered an order granting the 9019 Motion. *Id.* at ECF 242, 243.

On March 23, 2023, the Debtor filed the motion for entry of an order determining that the Subcontractor Liens are void *ab initio* and granting compensatory and punitive damages against the Subcontractor Lienholders jointly and severally for willfully violating the automatic stay by recording the Subcontractor Liens ("Stay Violation Motion"). *Id.* at ECF 247. On April 5, 2023, Network Flooring filed a response to the Stay Violation Motion consenting to the avoidance of the Network Flooring Lien while objecting to the award of compensatory or punitive damages. *Id.* at ECF 252.

On April 19, 2023, the Court held a hearing on the Stay Violation Motion attended by Debtor's counsel, counsel for the Official Committee, and counsel for Network Flooring. *Id.* at ECF 254. No party disputed that the filing of the Subcontractor Liens violated the automatic stay or raised any objection to the avoidance of the Subcontractor Liens. In light of the Third Circuit Court of Appeals' ("Third Circuit") binding decision in, *In re Linear Electric Co., Inc.*, 852 F.3d 313 (3d Cir. 2017), discussed *infra*, the Court determined that the filing of the Subcontractor Liens violated the automatic stay and approved the avoidance of the Subcontractor Liens against the Segregated Funds as void *ab initio*, and directed counsel for the Debtor and counsel for the

5

Official Committee to submit declarations detailing the attorneys' fees and costs incurred in connection with the Subcontractor Lienholders' stay violations by April 26, 2023.[2] *See id.*

On April 26, 2023, counsel for the Debtor filed his declaration detailing that the Debtor incurred legal fees in the amount of $14,553.00 and costs in the amount of $211.86 due to the Subcontractor Lienholders' stay violations ("Seitzer Declaration"). *Id.* at ECF 260 (hereinafter "Seitzer Decl.") ¶ 8, Ex. 1. On April 27, 2023, counsel for the Official Committee filed his declaration detailing that the Official Committee incurred legal fees in the amount of $13,252.50 due to the Subcontractor Lienholders' stay violations ("George Declaration," collectively with Seitzer Declaration, "Declarations").[3] *Id.* at ECF 261 (hereinafter "George Decl.") ¶ 6, Ex. A. On May 3, 2023, Network Flooring filed a timely objection to the Declarations, arguing, *inter alia*, that given that the Subcontractor Liens were recorded against the Pennington Property, Network Flooring's action was not sufficiently willful to warrant an award of compensatory damages, and that no statutory authority permits the Official Committee to be awarded compensatory damages. *Id.* at ECF 264 (hereinafter "Network Flooring Decl. Obj.") ¶¶ 4, 18, 19, 25.

On May 12, 2023, Black Hawk filed an objection to the Declarations,[4] claiming that it had no knowledge of the bankruptcy when it recorded the Black Hawk Lien and disputing that any fees referenced in the Declarations were incurred due to its conduct. *Id.* at ECF 268 (hereinafter "Black Hawk Decl. Obj.") ¶¶ 4, 17, 22, 27, 29. The same day, Black Hawk filed a belated response to the Stay Violation Motion consenting to the Black Hawk Lien being avoided

---

[2] At the hearing, counsel for the Debtor and Official Committee withdrew the request for compensatory damages against SSC and the request for punitive damages against all Subcontractor Lienholders. Case No. 22-10609 ECF 283 Seitzer Suppl. Decl. ¶ 4 n. 2.

[3] The George Declaration was filed one day after the deadline imposed by the Court for filing declarations. *See* Case No. 22-10609 ECF 254, 261. In the absence of prejudice to the Subcontractor Lienholders caused by the late filing, the Court will nevertheless consider the declaration.

[4] While this objection was filed after the deadline imposed by the Court for filing objections to the damage Declarations, in the absence of prejudice to the Debtor or the Official Committee, the Court will nevertheless consider the objection. *See* Case No. 22-10609 ECF 254, 268.

but objecting to the Court awarding any compensatory damages. *Id.* at ECF 271. On May 16, 2023, Elite Paining filed an objection to the Stay Violation Motion and Declarations[5] largely on the same bases as stated in the objections filed by Network Flooring and Black Hawk. *See id.* at ECF 277.

On May 17, 2023, a hearing was held on the Declarations, where the Court requested supplemental briefing on certain issues raised. *Id.* at ECF 279. On May 31, 2023, the Official Committee filed its supplemental letter brief explaining that the Official Committee was "instrumental in the strategy and settlement with Pennington" and that its efforts maximized recovery for the bankruptcy estate and resulted in the avoidance of the Subcontractor Liens. *Id.* at ECF 282 Official Comm. Br. 2. The Official Committee also identified legal authority which would permit the Court to include the Official Committee's legal expenses in an award of compensatory damages. *Id.* at 3-7. The same day, counsel for the Debtor filed a supplemental declaration ("Seitzer Supplemental Declaration") representing, *inter alia*, that "[i]f the [Subcontractor Liens] were not wrongfully filed after the Petition Date, the Contract Balance would have been paid over to the Debtor's estate without the need of incurring any fees or costs as a result of the stay violations." *Id.* at ECF 283 (hereinafter Seitzer Suppl. Decl.") ¶ 17.

On June 14, 2023, Network Flooring, Black Hawk, and Elite Painting filed supplemental responses. *Id.* at ECF 284, 286, 287.

### III. DISCUSSION

The Court finds that: (i) the Subcontractor Lienholders' recording of the Subcontractor Liens violated the automatic stay; (ii) the stay violation was willful because the Subcontractor

---

[5] While this objection was also filed after the deadline imposed by the Court for filing objections to the damage Declarations, in the absence of prejudice to the Debtor or the Official Committee, the Court will nevertheless consider the objection. *See* Case No. 22-10609 ECF 254, 277.

7

Lienholders recorded the Subcontractor Liens after receiving notice of the bankruptcy; and (iii) such violation caused the Debtor and the Official Committee injury in the form of significant attorney fees and costs incurred by Debtor's counsel and the Official Committee's counsel to remedy the stay violations. Therefore, the Debtor and Official Committee are entitled to recover compensatory damages under § 362(k) in the amount of $14,488.86 for the Debtor and $12,112.00 for the Official Committee.

### A. Applicable Legal Principles

The automatic stay is one of the fundamental debtor protections supplied by the Bankruptcy Code. *Malloy v. J&V Developers, Inc. (In re Malloy)*, 572 BR. 551, 555 (Bankr. E.D. Pa. 2017). Importantly, the automatic stay also protects creditors, since "[w]ithout it, certain creditors would be able to pursue their own remedies against the debtor's property." *Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.)*, 901 F.2d 325, 327 (3d Cir. 1990) (internal citation omitted).

Under § 362(a)(4), a bankruptcy petition operates as a stay against "any act to create, perfect, or enforce any lien against property of the estate." Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." In order to establish a claim pursuant to §362(k)(1), the moving party must show by a preponderance of the evidence that (1) the creditor violated the automatic stay; (2) the violation of the stay was willful; and (3) the willful violation caused some injury. *Dean v. Carr (In re Dean)*, Bankr. No. 1:11-bk-05680MDF, Adv. Nos. 1:11-ap-00481MDF, 1:11-ap-00505MDF, 2012 WL 4634291, at *5 (Bankr. M.D. Pa. Oct. 1, 2012); *In re Miller*, 447 BR. 425, 433, n. 10 (Bankr. E.D. Pa. 2011).

8

A creditor "willfully" violates the automatic stay when the creditor does so with knowledge of the bankruptcy. *In re Malloy*, 572 B.R. at 555 (citing *In re Lansaw,* 853 F.3d 657, 664 n.4 (3d Cir. 2017)). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional…" *Vu v. Lin (In re Vu)*, 591 B.R. 596, 603 (Bankr. E.D. Pa. 2018) (quoting *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992)). A good faith mistake of law or dispute as to the creditor's right to take the action does not negate the willfulness of the violation. *In re Nixon*, 419 B.R. 281, 288 (Bankr. E.D. Pa. 2009).

**B. Debtor may recover compensatory damages under § 362(k)(1).**

Debtor has satisfied all the elements necessary to recover compensatory damages pursuant to § 362(k)(1).[6] First, the parties do not dispute that recording the Subcontractor Liens pursuant to the New Jersey Construction Lien Law against the Property violated § 362(a)(4) based upon the Third Circuit Court of Appeals' ("Third Circuit") binding determination in, *In re Linear Electric Co., Inc.*, 852 F.3d 313 (3d Cir. 2017), that a subcontractor filing a construction lien in the manner in which the Subcontractor Lienholders did against the Pennington Property pursuant to the New Jersey Construction Lien Law in effect creates and/or perfects a lien upon a

---

[6] As mentioned *supra,* § 362(k)(1) mandates that an "individual injured by any willful violation of a stay" be permitted to recover actual damages. The Third Circuit has adopted a broad interpretation of the term "individual" for purposes of qualifying to recover compensatory damages under § 362(k)(1). As explained by the Third Circuit, "[a]lthough Section 362(h) [since re-codified at § 362(k)(1)] refers to an individual, the section has uniformly been held to be applicable to a corporate debtor[,]" agreeing with the reasoning of the Fourth Circuit Court of Appeals in, *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir. 1986), that it "seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay…" *Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (In re Atl. Bus. & Cmty. Corp.)*, 901 F.2d 325, 329 (3d Cir. 1990). The Court is well aware that it is no longer true that courts have unanimously held that a corporate debtor is an "individual" for purposes of § 362(k) and, in fact, that the Third Circuit's position that a corporate debtor constitutes an "individual" under § 362(k)(1) is the minority position. *See Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.)*, 346 F. 3d 1, 7 (1st Cir. 2003); *Sosne v. Reinert & Duree, P.C. (In re Just Brakes Corporate Systems, Inc.)*, 108 F. 3d 881, 884-85 (8th Cir. 1996); *Jove Engineering, Inc. v. IRS*, 92 F. 3d 1539,1549-53 (11th Cir. 1996); *Johnston Environmental Corp. v. Knight (In re Goodman)*, 991 F. 2d 613, 618-20 (9th Cir. 1993); *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F. 2d 183, 184-87 (2d Cir. 1990). Nevertheless, it remains binding in this circuit that the term "individual" includes corporate debtors.

9

debtor-contractor's property – its accounts receivable – thereby violating § 362(a)(4). *Id.* at 320-21. As such, in this case, the Subcontractor Liens were, in effect, filed against property of the estate – the receivable due to the Debtor from Pennington – in violation of the automatic stay. *See id*. at 321.

Furthermore, the stay violations were willful for purposes of § 362(k)(1) because the Subcontractor Lienholders recorded the Subcontractor Liens against property of the estate with knowledge of the bankruptcy. In fact, these liens were recorded within mere days to weeks after the Subcontractor Lienholders were served with notice of the Motion to Reject. Based upon the timing of the filing of the Subcontractor Liens, the Court finds that, not only did the Subcontractor Lienholders know that the Debtor had filed for bankruptcy at the time that the Subcontractor Liens were filed, the receipt of the notice of Motion to Reject appears to have actually triggered the filing of the Subcontractor Liens. As mentioned *supra*, a good faith mistake of law does not negate the willfulness of the violation. *In re Nixon*, 419 B.R. at 288. Third Circuit law has been clear and unambiguous since 2017 that the actions taken by the Subcontractor Lienholders in this case violated the automatic stay. The onus was on them upon receiving notice of the bankruptcy to ensure that any actions they took to collect the amount owed to them by Debtor did not run afoul of the automatic stay.

Finally, recording the Subcontractor Liens injured the Debtor, with the Debtor and the Official Committee incurring thousands of dollars in legal fees and the Debtor incurring hundreds of dollars in costs to address the stay violations and have the liens removed from the Pennington Property and subsequently, the Segregated Funds. *See California Coast Univ. v. Aleckna (In re Aleckna)*, 13 F.4th 337, 346 (3d Cir. 2021) ("Nor does CCU provide a compelling explanation as to why the attorneys' fees do not constitute a financial injury on their own.").

### C. Attorneys' Fees And Costs Incurred Directly by Debtor

Section 362(k)(1) allows a debtor to recover actual damages stemming from a willful violation of the automatic stay. Reasonable and necessary attorneys' fees and costs are recoverable under § 362(k) as actual damages. *In re Vu,* 591 B.R. at 606; *In re Manley Toys Ltd.,* No. 16-15374, 2018 WL 3213710, at *3 (Bankr. D. N.J. June 21, 2018). The debtor bears the burden of proof on the issue of actual damages. *Iskric v. Commonwealth Fin. Sys., Inc. (In re Iskric),* 496 B.R. 355, 364 (Bankr. M.D. Pa. 2013).

For the most part, the Court finds the amount requested, and time spent on this matter, by Debtor's counsel generally reasonable given the nature of the violations. The recording of the Subcontractor Liens in violation of the automatic stay appears to have been a major obstacle to the Debtor receiving the Contract Balance, requiring Debtor to engage counsel to strategize for the removal of these liens from Pennington's Property in order to secure the Contract Balance. While the Subcontractor Lienholders accuse the Debtor of not making sufficient efforts to secure removal of their liens consensually, the Debtor had no legal obligation to do so. Moreover, the Subcontractor Lienholders were each served with the 9019 Motion which made clear that a subsequent motion would be forthcoming seeking to have their liens removed as void in violation of the automatic stay, and not one single Subcontractor Lienholder, aside from SSC, voluntarily withdrew their liens at that point or reached out to Debtor's counsel to attempt a resolution that did not involve further motion practice. As such, Debtor's counsel's efforts to seek court intervention to have the Subcontractor Liens removed were reasonable and necessary with a few exceptions.[7]

---

[7] On December 1, 2022, counsel for the Debtor, Attorney Seitzer, billed .3 hours for a total of $123.00 for "[t]elephone conference with George & Vagnoni re: Pennington & 2004 Exam." Seitzer Decl. Ex. 1. The Court takes judicial notice of its docket reflecting that the Official Committee's motion seeking to conduct an examination pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004") was completely unrelated to the

11

Additionally, Debtor's counsel has justified the hourly rates charged in connection with this matter as within the appropriate range for attorneys and legal professionals with the relevant experience practicing in the region. *See* Seitzer Decl. Ex. 2. No party has objected to the rates charged as unreasonable and the Court also independently finds that they are reasonable.[8] Accordingly, the Court will award Debtor $14,277.00 in fees and $211.86 in costs.

### D. The compensatory damages award may include fees incurred by the Official Committee as a result of the stay violations.

The Court is presented with an issue of first impression regarding whether the attorneys' fees and costs incurred by the Official Committee as a result of the Subcontractor Lienholders' stay violations may be included in a compensatory damages award under 11 U.S.C. § 362(k)(1).

As mentioned, § 362(k)(1) mandates that an "individual injured by any willful violation of a stay" be permitted to recover actual damages. The Third Circuit has adopted a broad interpretation of the term "individual" for purposes of § 362(k)(1), determining that it includes corporate debtors. *Cuffee,* 901 F.2d at 329. It "seems unlikely that Congress meant to give a

---

Subcontractor Lienholders' stay violations. *See* Case No. 22-10609 ECF 138. As such, the Court will disallow $61.50 on account of time spent discussing the Rule 2004 examination.
    On December 23, 2022, counsel for the Debtor, Attorney Karalis, billed .4 hours for a total of $220.00 for a "[t]elephone conference with Ed George, Mike Vagnoni & RWS re: Plan/Pennington Project" without explaining how discussions about the Debtor's plan of reorganization were caused by the stay violations. Seitzer Decl. Ex. 1. Because Debtor, the party with the burden, has not demonstrated that costs incurred developing the Chapter 11 plan were caused by the stay violations of the Subcontractor Lienholders, the Court will disallow $110.00 on account of time spent discussing the plan.
    The same day, Attorney Seitzer billed .4 hours for a total of $164.00 for "[t]elephone conference with AJK, George & Vagnoni re: Plan & Pennington Settlement." Seitzer Decl. Ex. 1. Because Debtor, the party with the burden, has not demonstrated that costs incurred developing the Chapter 11 plan were caused by the stay violations of the Subcontractor Lienholders, the Court will disallow $82.00 on account of time spent discussing the plan.
    On March 1, 2023, Attorney Seitzer billed .1 hour for a total of $45.00 for "[t]elephone conference with George re: Pennington Settlement and Plan." Seitzer Decl. Ex. 1. The Court will disallow $22.50 on account of time spent discussing the plan.

[8] Attorney Karalis, admitted to practice law in 1988, has an effective billing rate of $565.71/hour. Seitzer Decl. ¶ 10. Attorney Seitzer, admitted to practice law in 2001, has an effective billing rate of $435.38/hour. *Id.* Paralegal Jill Hysley's billing rate amounts to $150.00/hour. *Id.* at ¶ 11.

12

remedy only to individual debtors against those who willfully violate the automatic stay." *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir. 1986).

Furthermore, courts construing "individual" broadly for purposes of § 362(k) have tended to find that trustees may recover as "individuals" on behalf of a debtor's bankruptcy estate. *See, e.g., Crawford v. Morris (In re Zimmer)*, 631 B.R. 383, 385-86 (Bankr. W.D. Pa. 2021); *Bohm v. Howard (In re Howard)*, 428 B.R. 335, 338-39 (Bankr. W.D. Pa. 2010) (finding bankruptcy trustee serving as representative of the entire bankruptcy estate has standing to pursue claims for willful violation of the automatic stay, reasoning in part that the automatic stay is intended to protect property of the estate and collective interests of creditors); *Anderson v. Dick Smith Nissan, Inc. (In re Joyner)*, 326 B.R. 334, 344 (Bankr. D. S.C. 2004) (concluding bankruptcy trustee may recover damages as an "individual" under § 362(h) based largely upon the Fourth Circuit Court of Appeals' broad definition of "individual" for purposes of the statute); *McCarthy v. Imported Cars of Md., Inc. (In re Johnson)*, 230 B.R. 466, 471 (Bankr. D.D.C. 1999); *Walker v. Midland Mortg. Co. (In re Medlin)*, 201 B.R. 188, 194 (Bankr. E.D. Tenn. 1996) (finding a Chapter 7 trustee can recover actual damages sustained by the bankruptcy estate resulting from willful violations of the automatic stay and that the trustee's attorney fees constitute one form of those damages); *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 439 (N.D. Ill. 1995) (holding that § 362(h) permits a Chapter 7 trustee to recover actual damages sustained by an individual bankruptcy estate from a willful violation of the automatic stay, reasoning that applying a narrow definition of "individual" would produce a result demonstrably at odds with Congress' presumed intent in drafting § 362(h) and that the attorney fees incurred by the trustee in prosecuting an action brought under § 362(h) are the type of actual damages to the estate for which recovery is permitted).

Finally, the Court observes that courts have repeatedly found that creditors have standing to seek damages under § 362(k)(1) as they are clearly intended beneficiaries of § 362(a) of the Bankruptcy Code as without it, certain creditors would be able to pursue their own remedies against the debtor's property first to the detriment of other creditors, threatening the Bankruptcy Code's policy of ensuring all creditors are treated fairly and equitably. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540-43 (5th Cir. 2009); *N. Cent. Pa. Reg'l Planning & Dev't Comm'n. v. Eckert (In re Watson)*, 505 B.R. 634, 636 (Bankr. M.D. Pa. 2014) ("Moreover, the plain language of the statute does not appear to limit these causes of action to debtors but extends the right to sue to creditor plaintiffs."); *Paradise Towing, Inc. v. The CIT Group/Sales Fin. Inc.*, 368 B.R. 569, 571-72 (W.D. Tex. 2005) ("It does not seem logical that Congress would intend to protect creditors under the automatic stay provisions, yet deny them relief under section 362(h). Moreover, assuming Congress did intend for creditors to have a right of action under section 362(h), it would not seem logical to afford such right only to creditors that are natural persons, and not corporations."); *Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 314 (Bankr. D. Md. 2004). As such, the automatic stay is intended to protect the interests of creditors in property of the estate, as well as debtors, and those persons whom Congress has designated as beneficiaries of the stay would have standing to assert its violation. *Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 317-18 (Bankr. D. Md. 2004).

Ultimately, based upon the foregoing, particularly the Third Circuit's adoption of a broad definition of "individual" for purposes of § 362(k) and the dual purposes of the automatic stay to protect the interests of both debtors *and* creditors in property of the estate, the Court is persuaded that the Official Committee may recover actual damages as an individual entity injured by the Subcontractor Lienholders' automatic stay violations. "[I]t makes little sense to distinguish

14

between individual creditors, permitting them to recover, while prohibiting creditors as a class from recovering damages through their representative…" *Morris v. St. Joseph Medical Ctr. (In re Fisher),* Nos. 93–12224, 95–5055, 96–1165–JTM, 1996 WL 695401, at *5 (D. Kan. Nov. 27, 1996).

Specifically, the Official Committee was injured by the Subcontractor Lienholders' stay violation because it was forced to incur attorneys' fees in assisting the Debtor with removing the Subcontractor Liens from the Pennington Property to make the Contract Balance available for distribution to unsecured creditors. The attorneys' fees incurred by the Official Committee in negotiating the removal of the Subcontractor Liens constitute actual damages from the violation compensable under § 362(k). *See e.g., In re Lehigh Valley Prof'l Sports Clubs, Inc.*, Bankr. No. 00-11296DWS, 2001 Bankr. LEXIS 1245, at *35 (Bankr. E.D. Pa. Sept. 7, 2001). Permitting the Official Committee to recover the fees incurred stemming from the stay violation is entirely consistent with promoting the purpose of the automatic stay of protecting the interests of creditors as well as debtors in estate property. These additional fees would diminish the recovery available from the estate for the members of the Official Committee (as well as other unsecured creditors) since they would amount to an additional administrative expense to be paid ahead of the Official Committee's constituency. Pursuant to § 330, counsel to a committee of unsecured creditors approved by the court as a professional pursuant to § 1103 is entitled to compensation from the debtor's bankruptcy estate. *See e.g., In re Cal Dive Int'l, Inc.*, Case No. 15–10458 (CSS), 2015 WL 9487852, at *3-4 (Bankr. D. Del. Dec. 28, 2015). As mentioned *supra*, on April 11, 2022, the United States Trustee filed a notice of appointment of the Official Committee pursuant to § 1102. Case No. 22-10609 ECF 55. Under § 1103, a committee appointed under §1102 "may select and authorize the employment by such committee of one or more attorneys,

15

accountants, or other agents, to represent or perform services for such committee." In this case, on April 29, 2022, the Official Committee filed an application seeking to employ Obermayer Rebmann Maxwell & Hippel LLP, as general counsel to the Official Committee ("Application"). Case No. 22-10609 ECF 80. On May 11, 2022, the Court entered an order granting the Application. *Id.* at ECF 99. Thus, as counsel to the Official Committee was approved by the Court as a professional pursuant to § 1103, counsel would hold an administrative expense claim to be paid from the Debtor's estate under § 330, which provides that the Court may award a professional person employed under § 1103 reasonable compensation for actual, necessary services rendered by the attorney (and paraprofessionals employed by the attorney) and reimbursement for actual, necessary expenses. Accordingly, the cost of attorney fees incurred by the Official Committee on account of remedying the Subcontractor Lienholders' stay violations injured the bankruptcy estate by increasing the amount of administrative expenses the Debtor must pay from the estate under § 330 prior to paying other creditors. *See* 11 U.S.C. § 507(a)(2); 11 U.S.C. § 503(b)(2); 11 U.S.C. § 1129(a)(9)(A).

### E. Attorneys' Fees Incurred by the Official Committee

As mentioned *supra,* reasonable and necessary attorneys' fees and costs are recoverable under § 362(k) as actual damages. *In re Vu,* 591 B.R. at 606; *In re Manley Toys Ltd.,* 2018 WL 3213710, at *3. The party seeking damages bears the burden of proof on the issue of actual damages. *In re Iskric,* 496 B.R. at 364.

For the most part, the Court finds the amount requested, and time spent on this matter, by counsel for the Official Committee generally reasonable given the nature of the violations. The recording of the Subcontractor Liens in violation of the automatic stay appears to have been a major obstacle to the Debtor receiving the Contract Balance, which would of course, leave less

16

available for the unsecured creditors to recover, requiring the involvement of the Official Committee to remedy the stay violation so as to increase the distribution available to unsecured creditors from the estate by having the liens removed and securing the Contract Balance. As such, the Official Committee counsel's involvement with the Pennington Settlement Agreement was reasonable and necessary with a few exceptions.[9]

---

[9] On November 5, 2022, counsel to the Official Committee, Attorney Vagnoni, billed .2 hours for a total of $85.00 for "[e]mails to and from counsel to Debtor re: exclusivity and Pennington." George Decl. Ex. A. Because neither the Official Committee nor the Debtor has demonstrated that the costs incurred related to exclusivity were caused by the stay violations, the Court will disallow $42.50 on account of time spent discussing exclusivity.

On November 7, 2022, Attorney Vagnoni billed .2 hours for $85.00 total to "[r]eview the list of Pennington contractors not filing liens and respond to counsel to Debtor." George Decl. Ex. A. Because the Official Committee has not demonstrated how reviewing a list of Pennington contractors who did *not* file liens was caused by the Subcontractor Liensholders' stay violations, the Court will disallow compensation for this entry.

On November 14, 2022, counsel for the Official Committee, Attorney George, billed .3 hours for $127.50 to "[p]hone R. Seitzer re: pending matters; Officer Compensation; 2004 order and Pennington hearing." George Decl. Ex. A. As mentioned *supra*, the Court takes judicial notice of its docket reflecting that the Official Committee's motion seeking to conduct an examination pursuant to Rule 2004 was completely unrelated to the Subcontractor Lienholders' stay violation. *See* ECF 138. Additionally, the Official Committee has not demonstrated how issues related to officer compensation were caused by the stay violations of the Subcontractor Lienholders. As such, the Court will disallow $85.00 to account for that.

On November 15, 2022, Attorney George billed .5 hours for $212.50 total for "[e]mails R. Seitzer re: resolving outstanding issues on compensation and Pennington." George Decl. Ex. A. Because the Official Committee has not demonstrated how issues related to officer compensation were caused by the stay violations of the Subcontractor Lienholders, the Court will disallow $106.50 to account for that.

On November 16, 2022, Attorney George billed .5 hours for $212.50 to "[p]repare for hearings on 2004; officer compensation and Pennington rejection." George Decl. Ex. A. Because the Rule 2004 motion and issues relating to officer compensation do not appear to have been caused by the Subcontractor Lienholder stay violations, the Court will disallow $127.50 to account for that.

On December 13, 2022, Attorney George billed .4 hours for a total of $170.00 to "[e]mail R. Seitzer re: meeting to discuss plan and Pennington; dates for 2004 exam; review C. Brennan email re: 2004 dates." George Decl. Ex. A. Again, because discussions about the reorganization plan and the Rule 2004 exam are not sufficiently connected to the Subcontractor Lienholders' stay violations, the Court will disallow $127.50 to account for that.

On December 20, 2022, Attorney George billed .4 hours for a total of $170.00 for "[c]onference M. Vagnoni re: Pennington agreement; drafting; plan issues." George Decl. Ex. A. Again, because the Official Committee has not shown that plan issues were caused by the stay violations, the Court will disallow $42.50 to account for that.

On December 23, 2022, Attorney George billed .5 hours for a total of $212.50 for "[c]onference Debtor's counsel re: plan of reorganization and Pennington." George Decl. Ex. A. The Court will disallow $106.50 to account for time spent discussing the plan of reorganization.

On December 23, 2022, Attorney Vagnoni billed .2 hours for a total of $85.00 for "[e]mails to and from R. Seitzer and D. De Souza re: Pennington and 2004 examination." George Decl. Ex. A. The Court will disallow $42.50 to account for time spent emailing about the Rule 2004 examination.

On January 17, 2023, Attorney George billed .2 hours for $85.00 for "[e]mail to R. Seitzer re: scheduling 2004; Pennington settlement and plan revisions." George Decl. Ex. A. The Court will disallow $42.50 to account for time spent scheduling the Rule 2004 examination and addressing plan revisions.

On February 21, 2023, Paralegal Schmidt billed .2 hours for $40.00 total to "[a]nalyze motion for pro hac vice admission of Dian de Souze on behalf of Scope FLP Pennington." George Decl. Ex. A. The Official Committee

17

The Official Committee's counsel has justified the hourly rates charged in connection with this matter as within the appropriate range for attorneys and legal professionals with the relevant experience practicing in the region.[10] No party has objected to the rates charged as unreasonable and the Court also independently finds that they are reasonable. As such, an award will be entered in favor of the Official Committee permitting recovery of $12,112.00 on account of legal fees incurred by the Official Committee.

IV.     CONCLUSION

Based on the foregoing, the Court awards the Debtor $14,277.00 in fees and $211.86 in costs and the Official Committee $12,112.00 pursuant to § 362(k)(1). The award will be entered jointly and severally against the Subcontractor Lienholders. An order consistent with the foregoing shall be entered.

Date: August 4, 2023

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

has not demonstrated how this was a necessary expense to address the stay violations of the Subcontractor Lienholders and as such, compensation for this entry will be disallowed. *See* Case No. 22-10609 ECF 239.

    On February 24, 2023, Paralegal Schmidt billed .2 hours for a total of $40.00 to "[a]nalyze order granting pro hac vice admission of Dian de Souze for Scope FLP Pennington." George Decl. Ex. A. The Official Committee has not demonstrated how this was a necessary expense to address the stay violations of the Subcontractor Lienholders and as such, compensation for this entry will be disallowed. *See* Case No. 22-10609 ECF 240.

    On March 2, 2023, Paralegal Schmidt billed .3 hours for a total of $60.00 to "[a]nalyze order granting 9019 motion to approve settlement with Scope FLP Pennington." George Decl. Ex. A. It appears that the short two-and-a-half page order entered was exactly the same as the order proposed, as such this entry strikes the Court as reflecting excessive time spent analyzing the order. *See* Case No. 22-10609 ECF 228, 243. Therefore, the Court will reduce this entry to a more reasonable $20.00.

    On March 6, 2023, counsel for the Official Committee, Attorney Saldutti, billed another .5 hours for a total of $212.50 to "[a]nalyze order granting pennington 9019." George Decl. Ex. A. It strikes the Court as entirely unnecessary and excessive for two professionals to "analyze" a short order that was entered verbatim to what the Debtor proposed. Accordingly, the Court will disallow this entry in its entirety.

[10] Attorney George, admitted to practice law in 1986, billed a rate of $425.00/hour. George Decl. ¶ 9. Attorney Vagnoni, admitted to practice law in 1996, billed a rate of $425.00/hour. *Id*. Attorney Saldutti, admitted to practice law in 2018, billed a rate of $425.00/hour. *Id*. Paralegal Schmidt billed at a rate of $200/hour. *Id*. at ¶ 10.

18