IN THE UNITED STATE BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | BANKRUPTCY NO. 22-10609-AMC |
| SCUNGIO BORST & ASSOCIATES LLC | : | |
| | : | |
| Debtor | : | CHAPTER 11 |
| | : | |
| SCUNGIO BORST & ASSOCIATES LLC | : | |
| | : | Related to Doc. 308, 309, 310 |
| Movant/Plan Proponent | : | |
| | : | |
| v. | : | Hearing Date and Time: October 25, 2023 at 12:30 pm |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| DEPARTMENT OF REVENUE | : | |
| | : | |
| Creditor/Respondent | : | |

OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT WITH RESPECT TO JOINT
PLAN OF LIQUIDATION PROPOSED BY SCUNGIO BORST & ASSOCIATES LLC,
DEBTOR-IN-POSSESSION, AND THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE ESTATE OF DEBTOR AND THE JOINT PLAN OF LIQUIDATION
PROPOSED BY SCUNGIO BORST & ASSOCIATES LLC, DEBTOR-IN-POSSESSION,
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF THE ESTATE OF DEBTOR

AND NOW comes the Commonwealth of Pennsylvania, Department of Revenue,

("Department") by and through its Attorney, Christos A. Katsaounis, Senior Counsel, and

pursuant to Federal Rules of Bankruptcy Procedure 3017(a), 3018, and 3020(b) and 11 U.S.C §§

1128(b) and 1109(b) objects to the Disclosure Statement ("Disclosure Statement") and Plan of

Reorganization ("Plan" or "proposed Plan") as follows:

**Adequacy of Information- The Disclosure Statement does not contain adequate
information for the Department to make an intelligent and informed judgment as to
whether to accept or reject the Plan.  11 U.S.C. § 1125.**

1. Section 1125(b) of the Bankruptcy Code, 11 U.S.C. § 1125(b), provides that a plan

may not be submitted to creditors and interest holders unless they receive an accompanying

disclosure statement that provides "adequate information" for them to decide whether to accept

or reject the proposed plan. In re Phoenix Petroleum Co., 278 B.R. 385, 392 (E.D.Pa. 2001); and

In re Ferritti, 128 B.R. 16, 18 (Bankr.D.N.H. 1991). The Court, in Oneida Motor Freight, Inc. v.

United Jersey Bank, 848 F.2d 414, 417 (3rd Cir. 1988), cert. denied, 488 U.S. 967, 109 S. Ct.

495, 102 L. Ed. 2d 532 (1988) said:

> The importance of full disclosure is underlaid by the reliance placed upon the
> disclosure statement by the creditors and the court. Given this reliance, we cannot
> overemphasize the debtor's obligation to provide sufficient data to satisfy the
> Code standard of 'adequate information.'

In In re Phoenix Petroleum Co., 278 B.R. at 392, the Court went on to say that "[t]he general

purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired'

classes of creditors and interest holders to make an informed judgment about the proposed plan

and determine whether to vote in favor of or against that plan." See also Krystal Cadillac-

Oldsmobile GMC Truck, Inc. v. GMC, 337 F.3d 314, 321-322 (3d Cir. 2003) (A party seeking

protection under Chapter 11 has "an affirmative duty to provide creditors with a disclosure

statement containing adequate information to enable a creditor to reach an informed judgment

about the plan.").

2. The principle of disclosure is of a prime importance to the reorganization as well as

the liquidation process. In re V. Savino Oil & Heating Co., 99 B.R. 518, 526 (Bankr.E.D.N.Y.

1989). The Court and the debtor's creditors rely heavily on the disclosure statement in

determining whether to approve the proposed plan. Ryan Operations G.P. v. Santiam-Midwest

Lumber Co., 81 F.3d 355, 362 (3rd Cir. 1996). Because of this reliance, a disclosure statement

must contain complete, accurate, and factual information, not opinions, partial truths,

misrepresentations, or silence to satisfy the Bankruptcy Code standard of "adequate

information". See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d at 417.

3.  "Adequate information" is defined as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan but adequate information need not include such information about any other possible or proposed plan…." 11 U.S.C. § 1125(a).

In determining whether the information disclosed in a disclosure statement is adequate, the sufficiency of the information is analyzed under a flexible standard on a case-by-case basis. In re Texas Entrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988).

**Department's Proofs of Claim.**

4.a.  On April 22, 2022, the Department filed its amended pre-petition Proof of Claim (Claim No. 20-2) against the Debtor for the amount of $231.19.  **Unsecured Nonpriority Claim** - $231.19 for Capital Stock-Franchise Tax for the 2013 tax year.  (Exhibit 1)  This amount for the Capital Stock-Franchise Tax was estimated as the Debtor has not file this tax return.[1]

It should be noted that the Department filed its initial Proof of Claim (Claim No. 20-1) on April 14, 2022 listing the 2013 Capital Stock-Franchise Tax liability as a Secured Claim.  The Department later determined that the Debtor did not have any assets in Pennsylvania at the time of the filing of its bankruptcy case which would cover the Department's tax lien.  It should be noted that in Pennsylvania all corporation tax liens are first priority tax liens over all prior recorded mortgages, claims, liens, judgment, etc.; are tax liens from the date of assessment or settlement of the tax; do not have to filed in any county; and are effective statewide.  See 72 P.S. § 1401; In re Petroleum Products Company, 287 F.Supp. 458, 460-461 (E.D.Pa. 1968), aff'd per

---

[1]  The Department is allowed, if it believes it is necessary, by statute to estimate the corporation tax liability for the unfiled tax return.  See 72 P.S. § 7407.1(c) and (d).

curiam, 413 F.2d 299 (3rd Cir. 1969), citing <u>Commonwealth v. Central Realty Co.</u>, 228 Pa. 172, 177-178, 12 A.2d. 312, 315 (1940); <u>Commonwealth v. Hoffman-Henon Co.</u>, 382 Pa. 213, 217, 114 A.2d 92, 94 (1955); and <u>Traction Materials Co. v. Pittsburgh, McKeesport & Westmoreland Ry. Co.</u>, 261 Pa. 153, 159, 104 A. 552, 553 (1918).

If the Department's determination that the Debtor had no assets in Pennsylvania at the time of the filing of the bankruptcy case for the Department's tax lien to encumber was incorrect, it is requested that the Debtor inform the Department of such. Only the Debtor would have this information. The Disclosure Statement did not provide if the Debtor owned any assets in Pennsylvania.

As will be shown, the Department's pre-petition proof of claim is not complete as the Debtor has a number of unfiled Pennsylvania tax returns.

b. To date, the Department has not filed an Administrative Claim.

The Debtor currently has an Employer Withholding Tax liability for the 03Q22 tax period in the amount of $73.39 for which the Department is still awaiting payment for. (Exhibit 2) As will be shown, the Debtor is not current with its post-petition liabilities as it has a number of unfiled Pennsylvania tax returns.

Article 6.2.8 of the Plan provides that claims less than $100.00 will not be paid unless a written request is made to the SBA Plan Trust Administrator. The Department should be exempt from this provision as any tax obligation owed by the Debtor is statutory which the Debtor failed to or refused to comply with. Note also that the Employer Withholding Tax liabilities involve income withheld from the Debtor's employees and Sales Tax liabilities involve taxes collected for the Department that was not the Debtor's property and for which this Article should not apply.

**Delinquent Pennsylvania Tax Returns and Disregard of Pennsylvania Tax Obligations.**

    5. The Department is not able to file and finalize correct and complete pre-petition and post-petition proofs of claim as the Debtor has a number of delinquent Pennsylvania tax returns. The Department's records show that the Debtor has not filed the following tax returns:

> Corporation Tax Returns –
>     Corporate Loans Tax – 2013 tax year.
>     Capital Stock-Franchise Tax – 2013 and 2015 tax years.
>     Corporate Net Income Tax – 2013 and 2015 tax years.
>
> Pennsylvania S Corporation/Partnership Information Returns (Form PA-20S/PA-65) – 2008, 2015 to 2018, 2021, and 2022 tax years.
>
> Sales Tax Returns - 01Q07 to 04Q20 tax periods. The Department records show that the Sales Tax account was opened 3/13/03 and closed 10/19/20. If the Debtor did not have any sales and/or use tax liabilities (i.e., taxable sales or purchases) for these delinquent tax periods, it is recommended that the Debtor change its closing date from 10/19/20 to the date the Debtor ceased having sales and/or use tax liabilities.
>
> Employer Withholding Tax – 04Q22 and 01Q23 tax periods (quarterly Form W-3s). Because these Employer Withholding Tax returns are post-petition, the Debtor is required to stay current with the filing and payment of these tax liabilities. The Debtor should close its PA Employer Withholding Tax effective on the date it ceased being required to withhold income tax from its employees (i.e., when it probably ceased having employees) and request the Department to close its Employer Withholding Tax account effective that date. All Employer Withholding Tax returns (quarterly Form W-3s and annual reconciliation Form W-2) are required to be filed through that closing date.

Upon the filing and resolution of these delinquent Pennsylvania tax returns, the Department will be able to file complete and correct Proofs of Claim.

    a. On March 25, 2022, the Department informed Debtor's counsel of most of the above delinquent Pennsylvania tax returns. The Department has sent to Debtor's counsel e-mails dated April 28, 2022, July 6, 2022, December 8, 2022, January 13, 2023, April 24, 2023, and May 8, 2023 regarding the above delinquent Pennsylvania tax returns. (Exhibit 3)

It should be noted that the Debtor's counsel informed the Department by e-mail dated May 17, 2023 he forwarded all the prior e-mails to the Debtor; the prior accounting firm did not want to work with the Debtor' and the Debtor would employ professionals to have the delinquent tax returns prepared and filed. (Exhibit 4) Also, reference Article 5.5.1 of the Disclosure Statement, where the retention of professionals is detailed and explained.

If all the delinquent Pennsylvania tax returns are filed, the Department could have additional tax liabilities that could classified as unsecured priority claims and/or unsecured nonpriority claims or there could be no additional tax liabilities.

b. The Disclosure Statement is devoid of information regarding the Debtor's aforementioned delinquent PA tax filings, its PA tax filing obligations, and any statement on the Debtor becoming current with these PA tax obligations. In fact, the existence of the Debtor's various unknown tax liabilities evidences the lack of adequate information as required under Section 1125 of the Bankruptcy Code. Without the filing of these delinquent tax returns, it is impossible for any proposed Plan to be confirmed nor is it possible for any asset sale to take place because of the resultant tax consequences of the sales.

The Disclosure Statement and Plan of Liquidation should not be approved until all the delinquent tax returns are filed and resolved.

**Disclosure Statement Requirements Not Met.**

6. The Disclosure Statement should not be approved as it does not contain adequate information as required under Section 1125 of the Bankruptcy Code.

The Disclosure Statement and Plan do not adequately provide for the payment of the Department's Proofs of Claim. The Plan should not be confirmed because of the aforementioned

delinquent tax returns. The tax returns need to be filed for the Department to determine whether there are any outstanding tax liabilities for these delinquent tax years.

The Disclosure Statement does not provide adequate information regarding the Debtor's business operations. There are also a number of items should require additional explanation. Because of the aforementioned unaddressed matter in the Disclosure Statement, the Disclosure Statement should not be approved as it does not contain adequate information as required under Section 1125.

### The Disclosure Statement Should Not Be Approved Because the Plan It Describes Is Unconfirmable.

7. Despite the fact that the Disclosure Statement provides inadequate information and thus cannot be approved, the proposed Plan itself contains numerous issues that will prevent confirmation and which make an amendment of the Disclosure Statement fruitless.

As will be shown, the Plan does not comply "with the applicable provisions of this title" and "has [not] been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(1) and (3).

8. In addition, courts have held that where a proposed plan is not confirmable on its face, it will not approve a disclosure statement with respect to the plan because to do so would be an exercise in futility. See In re 266 Washington Associates, 141 B.R. 275, 288 (Bankr.S.D.N.Y. 1992). While generally issues regarding confirmation are not considered at the hearing on the disclosure statement, "courts generally have agreed that it may, on occasion, be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible." In re Phoenix Petroleum Co., 278 B.R. at 394. See e.g. In re Monroe Well Service, Inc., 80 B.R. 324, 332-333 (Bankr.E.D.Pa. 1987); In re Cardinal Congregate I, 121 B.R. 760, 764 (Bankr.S.D.Ohio 1990)

(Holding that the court should exercise its discretion to refuse to consider the adequacy of disclosures where a plan that is "so fatally flawed" that confirmation is "impossible".); In re Pecht, 75 B.R. 137, 139 (Bankr.E.D.Va. 1986) (Holding that the exercise of discretion appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed.); In re Unichem Corp., 72 B.R. 95, 98 (Bankr.N.D.Ill. 1987), aff'd, 80 B.R. 448 (N.D.Ill. 1987) (Where the plan's inadequacies are patent, such inadequacies may and should be addressed at disclosure statement hearing.); and In re Curtis Center Ltd. Partnership, 195 B.R. 631, 638 (Bankr.E.D.Pa. 1996) ("A disclosure statement should be disapproved where the plan it describes is patently unconfirmable.") In re Market Square Inn, Inc., 163 B.R. 64, 68 (Bankr.W.D.Pa. 1994), the Court said that "[w]here it is clear that a plan of reorganization is not capable of confirmation, it is appropriate to refuse approval of the disclosure statement."

**Administrative Claim Not Adequately Provided For.**

9.  For all post-petition/administrative tax claims that are provided for in 11 U.S.C. § 503(b)(1)(B) and (C), the governmental units having such claims, including the Department, are statutorily exempt from filing any application for payment of its administrative claims.  See Section 503(b)(1)(D), which provides:

> (D)  notwithstanding the requirements of subsection (a), a governmental unit shall not be required to file a request for the payment of an expense described in subparagraph 11 U.S.C. § 503(b)(1)(B) and (C), as a condition of its being an allowed administrative expense.

See In re Northern New England Telephone Operations, LLC, 2014 WL 537057 *4 (Bankr.S.D.N.Y. 2014), where the Court said:

> As a general rule, administrative expense claimants must file a proof of claim as a prerequisite to allowance of administrative expense claims.  See 11 U.S.C. § 503(a).  Section 502(b)(1)(D) of the Code excepts governmental units from this

> filing requirement for certain types of expenses, including those described in §
> 502(b)(1)(B) of the Code.  Section 502(b)(1)(B) of the Code provides
> administrative priority for all taxes except for those specified under § 507(a)(8) of
> the Code that are "incurred by the estate."  <u>See</u> 11 U.S.C. § 503(b)(1)(B).

This is because, while the bankruptcy case is still pending, 28 U.S.C. § 960(b) requires
debtors to pay their taxes on or before when they are due under nonbankruptcy law.  <u>BH
S & B Holdings LLC</u>, 435 B.R. 153, 161 (Bankr.S.D.N.Y. 2010).  It appears that an
administrative claims bar date for taxes, penalties, and fines described in 11 U.S.C. §
503(b)(1)(B) and (C) would be in contravention of Section 503(b)(1)(D).  <u>But cf. BH S &
B Holdings LLC</u>, 435 B.R. at 164-165  ("The 503(b)(1)(D) exception does not apply
where the court has entered an administrative bar date order applicable to governmental
units.").  However, the way the Bankruptcy Code provides it is reasonable to conclude
that notwithstanding any provision of a plan, any motion, notice, or court order in a
specific case, the government is not required to file any proof of claim or application for
allowance for any claims covered by section 503(b)(1)(B), (C), or (D).  This essentially
means the Debtor must stay current with its post-petition tax filings and payments.  The
Debtor has not done this.  Nor has the Disclosure Statement explained this.

10.  The Disclosure Statement does not provide any information regarding the Debtor's
post-petition Employer Withholding Tax liabilities in Pennsylvania.  Also, the Plan does not
adequately provide for the payment of the Department's post-petition claim.

The Bankruptcy Code requires the payment of interest on pre-petition and post-petition
tax claims.  11 U.S.C. § 511(a).  The Bankruptcy Code provides that the interest rate is
determined under state law, which is currently 7% in Pennsylvania for the 2023 calendar year.

See 11 U.S.C. § 511(b) ("In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.").[2]

The Plan should provide for the payment of post-petition claims in cash by the Effective Date, consistent with Section 1129(a)(9)(A), which means that the post-petition claims will continue to accrue interest and penalties until paid. The Plan does not provide for this. That is, administrative expense claims of the Department that are allowed allowed pursuant to the Plan or the Bankruptcy Code shall be paid in full in cash on the Effective Date or as soon as practicable after the Effective Date and shall continue accrue interest (7%) and penalties in accordance with the Bankruptcy Code and non-bankruptcy law until paid in full.

**Unsecured Priority Claim Not Adequately Provided For.**

12. The Disclosure Statement (Article 2) and proposed Plan (Article 5.2, N. 1) provides that the Allowed Priority Non-Tax Claims will be paid second, while the Allowed Priority Tax Claims will be paid third. The two Allowed Priority Claims should be treated equally.

13. The proposed Plan (Article 4.3) provides that the SBA Plan Trust Administrator has two options to pay Unsecured Priority Tax Claims. None of the options as written provide for the payment of an amount that is "equal to the present value" of the Unsecured Priority Tax Claims. Either option should require the payment of interest (of 7%) up until the time the Department's Unsecured Priority Tax Claim is paid in full.

14. 11 U.S.C. § 1129(a)(9)(C) essentially provides that the Department's Unsecured Priority Claim must be paid in cash of the total value, with interest, Section 1129(a)(9)(C)(i), and

---

[2] See 52 Pa.B. 7981 (Saturday, December 24, 2022) ("Under sections 806 and 806.1 of The Fiscal Code (72 P.S. §§ 806 and 806.1), the Secretary of Revenue announces that, for the calendar year beginning January 1, 2023, all underpayments of tax which became due and payable to the Commonwealth shall bear interest at the rate of 7% per annum. …. These rates will remain constant until December 31, 2023. These rates will be codified under 61 Pa. Code § 4.2(a) (relating to rate of interest).")

within five years from the date the petition was filed, not the effective date, Section 1129(a)(9)(C)(ii).  See also In re Lawrence R. Jankins, 184 B.R, 488, 492-493 (Bankr.E.D.Va. 1995); In re Hathaway Coffeehouse, Inc., 24 B.R. 534, 535 (Bankr.S.D.Ohio 1982); and In re Burgess Wholesale Mfg. Opticians, Inc., 721 F.2d 1146, 1147 (7th Cir. 1983).  Payments must be made on a recurrent basis in order to satisfy the relevant statutory requirements.  In re Jerath Hospitality, LLC, 484 B.R. 245, 247 (Bankr.S.D.Ga. 2012).

The total value of the Department's tax claim requires the imposition of some "interest rate … on [the] deferred payments 'so that what is received over a period of time will be equal to the present value of the [tax] claim.'"  In re Burgess Wholesale Mfg. Opticians, Inc., 721 F.2d at 1147, citing In re Hathaway Coffee House, Inc., 24 B.R. 534, 535 (Bankr.S.D.Ohio 1982).

15.  The Plan does not provide under either the two options for the payment of 7% interest as required under 11 U.S.C. § 511(a), where it provides that "the rate of interest shall be the rate determined under applicable nonbankruptcy law."  The Department objects to the extent that it fails to provide for the payment of an adequate rate of interest on its Unsecured Priority Tax Claim.  As averred above, the current interest rate in Pennsylvania for the 2023 calendar year is 7%.  That is, the Plan should include 7% as the applicable interest for the payment of the Unsecured Priority Tax Claims as required under 11 U.S.C. §§ 511 and 1129(a)(9)(C).

Without the providing for the payment of the Department's Unsecured Priority Claim, it is impossible for any proposed Plan to be confirmed.

16.  In summary, the Department's Unsecured Priority Tax Claims allowed pursuant to the Plan or the Bankruptcy Code should be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code with interest (7%).  To the extent such allowed Unsecured Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy

Code) are not paid in full in cash on the Effective Date, then such Unsecured Priority Tax Claims under either option shall accrue interest (7%) commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code and nonbankruptcy law until paid in full.

**Default Provision Must Be Added.**

17.    The Plan does not provide for default remedies and, therefore, is not acceptable. Section 1123(a)(5)(G) specifies that a plan shall provide adequate means for a plan's implementation such as provisions for curing any default.  The Plan provides that creditors are "limited to remedies as provided under the Bankruptcy Code and applicable law."  These limited default remedies forces creditors into an untenable situation should the Debtor default on its Plan obligations.  Without a proper default plan provision, tax claimants are forced to pursue collection of plan defaults in the bankruptcy court.  The purpose of post-confirmation jurisdiction is essentially and necessarily limited to protecting the order confirming the plan and preventing interference with the execution of the plan, not enforcing defaults of plan payments.  Warren v. Catania Corp., 178 B.R. 279, 282 (Bankr.M.D.Fla. 1995) [citing Grimes v. Graue (In re Haws),158 B.R. 965, 970 (Bankr.S.D.Tex. 1993)]; and In re American Body Armor and Equipment, Inc., 172 B.R. 659, 662 (Bankr.M.D.Fla. 1994).  Jurisdiction is limited to those matters, which will in fact affect the administration of the plan.  See In re Bankeast Corp., 142 B.R. 1214 (Bankr.D.N.H. 1992).  Defaulting on plan payments involves the execution and implementation of the plan, not the administration of the plan.  The Bankruptcy Court should not be burdened with such unrelated bankruptcy issues and opening the bankruptcy case after it has been closed.  It is not believed that the Bankruptcy Court will want to entertain matters concerning the nonfiling of tax returns, the nonpayment of taxes, the enforcement of the Debtor's tax obligations, the payment of the claims, etc.

A post-confirmation default should be treated as any other contractual default under state law.  Instead of increasing the burden on creditors, the Plan should grant creditors clear and concise default remedies in forums with concurrent jurisdiction.  See 28 U.S.C. § 1334(b).  Without adequate remedies, the Plan deprives the Department of the ability to pursue plan defaults in non-bankruptcy forums.

Accordingly, the Plan should contain the following default provision in case the Debtor fails to comply with any provision in the Plan regarding his tax obligations:

> In the event of default by the SMA Plan Trust Administrator of any of the provisions of the SMA Plan Trust Administrator concerning its tax obligations, after twenty days written notice of the default to the Debtor and failure of the SMA Plan Trust Administrator to cure, the entire amount owed to the tax agency shall be immediately due and owing, and the tax agency may proceed with any remedies otherwise available to it under state law, including but not limited to usual state tax collection procedures, or under federal law, including but not limited to conversion or dismissal under 11 U.S.C. § 1112(b).

The Plan should not be confirmed without this provision.

**<u>Department's Setoff and Recoupment Rights Are Not Provided for under the Plan.</u>**

18.  The Plan does not adequately provide for and preserve the Department's setoff and recoupment rights.  Article 6.2.7 of the Plan provides only setoff rights for the Debtor and the SBA Plan Trust Administrator.  That is, the provision only allows them to setoff a claim, etc.  This is not how Section 553 of the Bankruptcy Code reads, which preserves a creditor's setoff rights.

19.  Under Pennsylvania tax law, the Department and its officials are required by law to collect all taxes due and owing by all taxpayers.  From this authority, certain statutory provisions, and its common law right of setoff, the Department invariably pursues setoffs where available to avoid the absurdity of refunding credits to a taxpayer when the taxpayer still has other tax liabilities.

Under Pennsylvania law, a setoff is a counterclaim. Pa.R.Civ.P. 1017 and 1031. Under Fed.R.Civ.P. 7 and 8, a setoff is an affirmative defense or counterclaim. Further, the right of setoff is preserved under Section 553(a) of the Bankruptcy Code, 11 U.S.C. § 553(a). There is no applicable law to deprive the Department or any party of its counterclaims, cross-claims, or affirmative defenses while preserving the claim against the party.

20.  Because creditors' setoff rights are fully preserved by Section 553(a), the Department objects to any plan, which does not provide for its setoff and recoupment rights. A plan's anti-setoff provision or a lack of setoff provision is improper. In re Alta & Cast, 2004 WL 484881 *6 (Bankr.Del. 2004) ("There is no basis in the Code to eliminate [] setoff rights. In fact, section 553 expressly preserves whatever setoff rights [a creditor] may have under state law."). Setoff rights survive discharge and confirmation. See IRS v. Luongo (In re Luongo), 255 B.R. 424, 427-428 (Bankr.N.D.Tex. 2000), aff'd, 259 F.3d 323, 333 (5th Cir. 2001); Carolco Televisions, Inc. v. National Broadcasting Co. (In re Delaurentis Entertainment Group, Inc.), 963 F.2d 1269, 1274-1277 (9th Cir. 1992), cert. denied, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992); and Davidovich v. Welton (In re Davidovich), 901 F.2d 1533, 1537 (10th Cir. 1990).

21.  The Department objects to the Plan to the extent it fails to preserve its setoff and recoupment rights for the Department. Confirmation of a plan does not extinguish setoff claims when they are timely asserted. United States v. Continental Airlines (In re Continental Airlines), 134 F.3d 536, 542 (3rd Cir. 1998), cert. denied, 525 U.S. 929, 119 S.Ct. 336, 142 L.Ed.2d 277 (1998). Like other creditors, the Department has a common law right to setoff mutual debts. "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." United States v. Munsey Trust Co. of Washington, D.C., 332 U.S. 234, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022

(1947) (citing <u>Gratiot v. United States</u>, 40 U.S. (15 Pet) 336, 370, 10 L.Ed. 759 (1841)); <u>see also</u> <u>Amoco Prod. Co. v. Fry</u>, 118 F.3d 812, 817 (D.C.Cir. 1997). This right – "which is inherent in the federal government [as well as a state government] – is broad and 'exists independent of any statutory grant of authority to the executive branch.'" <u>Marre v. United States</u>, 117 F.3d 297, 302 (5th Cir. 1997) (quoting <u>United States v. Tafoya</u>, 803 F.2d 140, 141 (5th Cir. 1986)). Hence, a government creditor can setoff mutual prepetition debts and claims as well as post-petition debts and claims. <u>Zions First National Bank, N.A. v. Christiansen Bros. (In re Davidson Lumber Sales, Inc.)</u>, 66 F.3d 1560, 1569 (10th Cir. 1995); and <u>Mohawk Industries, Inc. v. United States (In re Mohawk Industries, Inc.)</u>, 82 B.R. 174, 178-179 (Bankr.D.Mass. 1987). The Plan makes no provision for these rights. Such treatment is impermissible, because Section 553 preserves the right of setoff in bankruptcy as its exists outside bankruptcy, <u>Citizens Bank of Maryland v. Strumpf</u>, 516 U.S. 16, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995), neither expanding nor constricting it, <u>United States v. Maxwell</u>, 157 F.3d 1099, 1102 (7th Cir. 1998). "[T]he government of the United States [as well as a state government] suffers no special handicap under § 553 of the Bankruptcy Code," <u>Id.</u> at 1103, that alters this principle. Moreover, because "[s]etoff occupie[s] a favored position in our history of jurisprudence," <u>Bohack Corp. v. Borden, Inc.</u>, 599 F.2d 1160, 1164 (2d Cir. 1979), courts do not interfere with its exercise absent "the most compelling circumstances." <u>Niagra Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.)</u>, 41 B.R. 941, 944 (N.D.N.Y. 1984); <u>see also</u> <u>New Jersey National Bank v. Gutterman (In re Applied Logic Corp.)</u>, 576 F.2d 952, 957-958 (2d Cir. 1978) ("The rule allowing setoff … is not one that courts are free to ignore when they think application would be unjust.") Compelling circumstances generally entail criminal conduct or fraud by the creditor. <u>In re Whimsy, Inc.</u>, 221 B.R. 69, 74 (Banker. S.D.N.Y. 1998). No such compelling

circumstances are present here, and accordingly, the Plan must provide for and preserve the Department's setoff rights. Failure to do so violates Section 1129(a)(1). ("The court shall confirm a plan only if … the plan complies with the applicable provisions of this title.")

Accordingly, the Plan should have language allowing the Department and all creditors their setoff rights as provided in the Bankruptcy Code.

22. In addition, the Department and all creditors should be allowed their common law right of recoupment. Reference In re Anes, 195 F.3d 177, 182 (3rd Cir. 1999) and the cases cited therein.

> The law of recoupment is best understood in contrast to the related doctrine of setoff. See University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1079 (3d Cir. 1992). "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.' " Citizens Bank v. Strumpf, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (citation omitted). With exceptions not relevant here, Congress has specified that bankruptcy law does not affect a creditor's right of setoff, provided that both the creditor's claim against the debtor and the debtor's claim against the creditor arose before the debtor went into bankruptcy. See 11 U.S.C. § 553(a); University Med. Ctr., 973 F.2d at 1079.
>
> The common-law doctrine of recoupment 'is not codified in the Bankruptcy Code, but has been established through decisional law.' Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.), 60 F.3d 1031, 1035 (3d Cir. 1995). Like a setoff, recoupment permits a creditor that owes a debt to the debtor to reduce the amount of its debt by the amount of a debt owed by the debtor to the creditor. See University Med. Ctr., 973 F.2d at 1079–80; Bustamante v. Johnson (In re McConnell), 934 F.2d 662, 667 (5th Cir. 1991). But the right of recoupment, unlike the right to setoff, exists only where the two debts arise out of the same transaction. See University Med. Ctr., 973 F.2d at 1079; Flagstaff Realty, 60 F.3d at 1035; Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir. 1996). A creditor with a right of recoupment generally can recoup the full amount owed, to the exclusion of other creditors. See Flagstaff Realty, 60 F.3d at 1035 ("A claim subject to recoupment avoids the usual bankruptcy channels and thus, in essence, is given priority over other creditors' claims."); United States Abatement Corp. v. Mobil Exploration and Producing U.S., Inc. (In re United States Abatement Corp.), 79 F.3d 393, 398 & n. 13 (5th Cir. 1996). The right of recoupment is not subject to the § 553 requirement that both debts arise

> prior to the debtor's entry into bankruptcy.  See <u>Lee v. Schweiker</u>, 739 F.2d 870,
> 875 (3d Cir. 1984).

<u>Id.</u> at 182.  These 2 remedies, although slightly different, are used together depending on the facts.

Accordingly, the Plan should also have language allowing the Department and all creditors their recoupment rights as provided by case law.

**Estimation of Claims**

23.  Article 9.4 of the Plan provides for the Debtor (prior to the effective date) and the SBA Plan Trust Administrator (on or after effective date) to estimate any disputed claim at any time pursuant to Section 502(c).  The Department objects to this broad authority.

The Department requests that the Debtor and the SBA Plan Trust Administrator be prohibited from modifying the scope of Sections 502 and 505 of the Bankruptcy Code with respect to the Department's claims.

**Retention of Jurisdiction**

24.  Article 10 of the Plan provides that the Court shall have exclusive jurisdiction for matters related to the Chapter 11 Case and Plan.  There are matters that the Court statutorily would not have exclusive jurisdiction.

25.  Such permanent, exclusive jurisdictional provisions conflict with 28 U.S.C. § 1334(b), which vests only concurrent jurisdiction in federal district courts (and, by orders of reference, bankruptcy courts) over civil proceedings arising in or related to cases under Title 11. 11 U.S.C. § 1334 (b) (This section is titled "Bankruptcy cases and proceedings".) provides:

> (b)  Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, <u>the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11</u>.  (Underscoring added)

While "the bankruptcy court [may retain]- jurisdiction to interpret and enforce its own prior orders," <u>Travelers Indemnity Co. v. Bailey</u>, 557 U.S. 137, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009), it may not divest other courts of their concurrent jurisdiction to interpret bankruptcy court orders or enforce post-confirmation matters.  <u>See</u> <u>In re Skyline Woods Country Club</u>, 636 F.3d 467, 46 (8th Cir. 2011) ("Federal district courts, and their bankruptcy courts by delegation, have exclusive jurisdiction 'of all cases under title 11,' 28 U.S.C. § 1334(a), but that provision is limited to the Debtor's Chapter 11 petition and 'the proceedings that follow the filing of a bankruptcy petition.'" (citation omitted).

26.  That is, retention of jurisdiction provisions are fine, assuming there is concurrent jurisdiction.  No court and party litigants are allowed to create their own jurisdiction.  That is, subject matter jurisdiction "cannot be conferred by consent" of the parties.  <u>Coffin v. Malvern Fed. Sav. Bank</u>, 90 F.3d 851, 854 (3d Cir. 1996).  Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization." <u>Resorts International, Inc. v. Price Waterhouse & Co., LLP</u>, 372 F.3d 154, 161 (3d Cir. 2004). <u>See also</u> <u>In re Bankeast Corp.</u>, 132 B.R. 665, 667 (Bankr.D.N.H. 1991), where the Court, citing <u>In re Roger J. Au & Son, Inc.</u>, 123 B.R. 31 (Bankr.N.D.Ohio 1990), said.

> While the court may properly retain jurisdiction over postconfirmation matters under 11 U.S.C. § 1142(b) pursuant to a plan provision, it may not expand its jurisdiction merely by asserting it in a reorganization plan.  <u>In re Tri-L Corp.</u>, 65 B.R. 774 (Bankr.D.Utah 1986); <u>In re Terracor</u>, 86 B.R. 671 (D.Utah 1988) (language of plan not controlling to retain jurisdiction beyond scope of Code).

27.  Most courts, when presented with the issue, have limited, rather than purported to expand post-consummation jurisdiction over plan enforcement.  In particular, should the SBA Plan Trust Administrator default under the Plan, creditors should be free to pursue default remedies in non-bankruptcy forums and under non-bankruptcy law, without returning to this

Court.  Claybrook Drilling Co. v. Divanco, 336 F.2d 697, 701 (10th Cir. 1964) (The bankruptcy court "may not keep the corporation in 'perpetual tutelage' by ... assuming jurisdiction over controversies between the reorganized corporation and third parties."); Warren v Calamia Corp., 178 B.R. 279, 282 (M.D.Fla. 1995) ("A bankruptcy court does not remain forever involved in the postconfirmation affairs of its reorganized debtors."); In re Flatbush Ave.—Nevins St. Corp., 133 F.2d 760, 762 (2d Cir. 1943) ("Congress did not intend that the Bankruptcy Court should, after an approval of a plan, ... have power to remain a wet-nurse to the reorganized company.  A bankruptcy court cannot obtain that power merely by inserting a provision reserving jurisdiction"); and In re Apex Oil Co., Inc., 406 F.3d 538, 542 (8th Cir. 2005) (state courts have concurrent jurisdiction with bankruptcy courts to interpret discharge orders).  As the Fifth Circuit put it, "bankruptcy court jurisdiction does not last forever."  Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.), 266 F.3d 388, 389 (5th Cir. 2001).  The ex-debtor "'may not come running to the bankruptcy court every time something unpleasant happens" (citation omitted) ....  No longer is expansive bankruptcy court jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize."  Id. at 390.  Nor should creditors be compelled to go to bankruptcy court to enforce post-confirmation and other matters.

28.  This provision should be revised to limit the bankruptcy court's exclusive jurisdiction to the Debtor's Chapter 11 Case and Plan that follow the filing of a bankruptcy petition and to give the state courts concurrent jurisdiction consistent with 11 U.S.C. § 1334(b) where allowed.

**Jurisdiction on Disputed Tax Issues.**

29.  Article 10.1.7 of the Plan provides that the Court shall have exclusive jurisdiction to

hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Case;

Article 10.1.12 of the Plan provides that the Court shall have exclusive jurisdiction to

hear and determine the Allowance and/or Disallowance of any claims, including Administrative Expense Claims, against or Interests in the Debtor or its Estate, including any objection to any such Claims or Interests, and the compromise and settlement of any Claim, including Administrative Expense Claims, against or Interest in the Debtor or its Estate;

These provisions implicate Section 505 of the Bankruptcy Code.

These are matters that the Court statutorily does not have exclusive jurisdiction. When the provisions of Section 505 of the Bankruptcy Code are implicated, the Department believes for purposes of expediency the Bankruptcy Court should defer to those provisions where necessary to resolve of all Pennsylvania tax disputes through the state statutory administrative and court appellate process. See 72 P.S. §§ 7241, 9702(a), 9704(a), and 9704(i); and Pa.R.A.P. 1571(b)(1) (42 Pa.C.S. § 5105(a)(2)).

30. When and if the Debtor files its delinquent Pennsylvania tax returns, the Department's review and determinations on those tax returns could be challenged (i.e., appealed under the state appeal procedures) by the Debtor and/or SBA Plan Trust Administrator.

31. The Bankruptcy Code vests the bankruptcy court with the authority to adjudicate the amount or legality of any tax, fine, or penalty relating to a tax. 11 U.S.C. § 505(a)(1); and In re Custom Distribution Services Inc., 224 F.3d 235, 239-240 (3rd Cir. 2000), where the Court said, "We have consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims." 11 U.S.C. § 505(a)(1) provides:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax,

or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

32. "[11 U.S.C. § 505(a)(1)] is a permissive empowerment—as established by the operative word 'may.' It is not a mandatory [i.e., exclusive] directive. The assumption of the power is discretionary with the Bankruptcy Court." Northbrook Partners LLP v. County of Hennepin (In re Northbrook Partners LLP), 245 B.R. 104, 117 (Bankr.D.Minn. 2000) and cases cited therein. See also In re Galvano, 116 B.R. 367, 372 (Bankr.E.D.N.Y. 1990) ("This language indicates that the Bankruptcy Court's authority to determine a debtor's tax liability is discretionary. [T]he Court may decline to review a debtor's tax liability and refer the debtor's motion for determination to the Tax Court."). As such, the court may refrain from resolving the tax matters under certain circumstances. In re American Motor Club, Inc., 139 B.R. 578, 581 (Bankr.E.D.N.Y. 1992).

33. The courts have considered a number of other factors in order to determine whether or not to abstain under 11 U.S.C. § 505(a). These factors include the complexity of the tax issues involved, the need to administer the bankruptcy case in an orderly and efficient manner (exigency of the matter), the burden on the bankruptcy court's docket, the amount of time required for a trial and decision, the debtor's asset and debt structure, and the actual or potential prejudice to the debtor or taxing authority. Northbrook Partners LLP v. County of Hennepin (In re Northbrook Partners LLP), 245 B.R. at 118; In re Galvano, 116 B.R. at 372; and Internal Revenue Service v. Luongo (In re Luongo), 259 F.3d 323, 330 (5th Cir. 2001).

34. There are two policies governing Section 505. The first allows "prompt resolution of a tax claim, which if left to another forum, could result in delaying the administration of the bankruptcy case." In re Altegrity, Inc., 544 B.R. 772, 778 (Bankr.D.Del. 2016). The second

policy protects creditors from dissipating assets of the estate, which occurs as a result of a tax judgment that the Debtor did not contest.  Id.

35.  Bankruptcy courts have chosen to abstain from deciding certain tax matters, based on the complex nature of the matter.  In re Vanguard Natural Resources, LLC, 603 B.R. 310, 321 (Bankr.S.D.Tex. 2019); and In re Ryckman Creek Resources, LLC, 570 B.R. 483, 487 (Bankr.D.Del. 2017)

36.  The Plan and any related documents should provide that nothing in the Plan modifies the scope of section 502 or 505 of the Bankruptcy Code with respect to the Department's claims. In addition, nothing in the Plan and any related documents shall be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to state tax liability and state tax treatment except as provided under Section 505 of the Bankruptcy Code.

**Exculpation Provision Is Improper.**

37.  Article 11.13 of the Plan provides for the exculpation of the "Exculpated Parties" as defined in the Plan (Article 1.9) (Debtor; the directors, officers, and managers of the Debtor that served during the Chapter 11 Case; the Committee; all Professionals retained by the Debtor in the Chapter 11 Case; all Professionals retained by the Committee in the Chapter 11 case; all of whom acted in their capacity as such).  It is the Department's position that the blanket releases of the Debtor and a number of nondebtor parties goes too far.  All the parties should be held accountable for their conduct or transgressions.

38.  Under federal and state law, the Department is authorized to pursue the collection of a debtor's tax liabilities against nondebtors during and after bankruptcy without limitation. Consequently, the Debtor is prohibited from restricting, either directly or indirectly, this authorization.

39. Pennsylvania law provides third party liability in certain circumstances, for example, for "responsible persons" or other potential parties in regard to the tax liabilities of a taxpayer. See 72 P.S. §§ 7225 (Sales Tax) and 7320 (Employer Withholding Tax). Brown v. Commonwealth, 670 A.2d 1222, 1224-1225 (Pa. Cmwlth. 1996); and In re DuCharmes & Co., 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for their failure to pay trust fund taxes).

Further, because the Debtor is a Limited Liability Company, it a pass through entity for federal and state purposes, which essentially mean the member(s) report and are taxed for the entity's income that is passed through to them.

40. Section 524(e) of the Bankruptcy Code addresses the scope of a bankruptcy discharge and, in relevant part, specifically provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or property, of any other entity, for such debt." In re Applewood Chair Co., 203 F.3d 914, 918 (5th Cir. 2000); and Feld v Zale Corp. (In re Zale Corp.), 62 F.3d 746, 760 (5th Cir. 1995).

41. The weight of case authority is consistent with the view that provisions that affect a discharge of nondebtor liability run afoul of the limitations on discharge set forth in Bankruptcy Code Section 524(e). That is, numerous cases have rejected or denied enforcement of a purported release of nondebtor parties through a plan of reorganization as being overly broad or in direct contravention of Section 524(e). See e.g., In re Continental Airlines, 203 F.3d at 217 (release and injunctive provisions fell squarely within Section 524(e) prohibition because they amounted to nothing more than a "lockstep discharge of non-debtor liability"); In re Lowenschuss, 67 F.3d 1394, 1401 (9th Cir. 1995), cert. denied, 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed. 189 (1996) ("Section 524(e) does not ... provide for the release of third parties from

liability."); In re Zale Corp., supra. (Section 524(e) prohibits the discharge of debts of nondebtors); First Fidelity v. McAteer, 985 F.2d 114, 118 (3rd Cir. 1993) ("Section 524(e) specifically limits the effect of a discharge ....  This Section assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties.")  Green v. Welsh, 956 F.2d 30, 33 (2d Cir 1992) ("The language of [Section 524(e)] reveals that no one else reaps a similar benefit."); In re Western Real Estate Fund, Inc., 922 F.2d 592, 602 (10th Cir. 1980), modified sub nom., 932 F.2d 898 (10th Cir. 1991) (permanent injunction purporting to release nondebtors from liability improperly insulates nondebtors in violation of Bankruptcy Code Section 524(e)); and In re American Hardwoods, Inc., 885 F.2d 621, 626 (9th Cir. 1989) (In affirming the denial of a permanent injunction against a claim against third party nondebtor, the Court noted:  "Section 524(e), therefore, limits the court's equitable power under Section 105 to order the discharge of liabilities of non-debtors.").

42.  Nondebtor releases are appropriate only under extraordinary circumstances.  See In re Continental Airlines, 203 F.3d at 211-217 (denying third party releases and related injunctions where there was no legal or evidentiary basis to authorize them); and In re Metro Media Fiber Network, Inc., 416 F.3d 136, 141-142 (2d Cir. 2005) (holding that nondebtor releases are proper only in rare cases and may be "tolerated if the affected creditor consents").  None of these extraordinary circumstances are present here nor has the Debtor presented any evidence supporting why the release provisions should be allowed.

43.  In In re National Heritage Foundation, Inc. 478 B.R. 216 (Bankr.E.D.Va. 2012), aff'd, National Heritage Foundation, Inc. v. Highbourne Foundation, 760 F.3d 344 (4th Cir. 2014), the court addressed exculpation clauses and recognized that exculpation provisions are permissible only if they are "properly limited and not over broad".  Id. at 234.  In order to avoid

over-breadth, an exculpation clause must be (1) narrowly tailored to meet the needs of the bankruptcy estate; (2) limited to parties who have performed necessary and valuable duties in connection with the case; (3) limited to acts and omissions taken in connection with the bankruptcy case; and (4) must not purport to release any pre-petition claims.  Id.  Cf.  In re Dow Corning,  280 F.3d 648, 658 (6th Cir. 2002), where the court held that seven factors must be present to enjoin a nonconsenting creditor's claim against a nondebtor.[3]

44.  This Plan Section does not meet all these criteria.  See In re Thru, 2018 WL 5113124 at *22-23 (N.D.Tex. 2018), where the court struck down an exculpatory provision that released the debtor's officers, directors, advisors, and its professionals from any liability to any creditor. The exculpatory provision that was stricken was similar to the Plan Section.  The exculpatory provision that was struck down provided in part "The Exculpated Persons [the Debtor nor any of its present officers, directors, employees, agents, advisors, or affiliates, nor any of its Professionals] shall have no liability to the Debtor, any Creditor, Interest holder, any other party in interest in the Chapter 11 Case or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan …."  Id. at *22.

See also Bank of New York Trust Company v. Official Unsecured Creditors' Committee (In re The Pacific Lumber Company), 584 F. 3d 229, 240 (5th Cir. 2009).  In that case, the exculpatory provision released the debtor and its personnel from liability, other than for willfulness and gross negligence, "related to proposing, implementing, and administering the

---

[3]  Those factors include: (1) there is an identity of interests between the debtor and the third party; (2) the nondebtor has contributed substantial assets to the reorganization; (3) the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who have indemnity or contribution suits against the debtor; (4) the impacted class has voted overwhelmingly to accept the plan; (5) the plan provides a mechanism to pay for all, or substantially all, of the claims of the class affected by the release; (6) the plan provides an opportunity for those claimants who choose not to settle to recover in full; and (7) the bankruptcy court made a record of specific factual findings that support its conclusions.  Id. at 658.

plan." Id. at 251.  The Court determined that the broad exculpation provision contained in the plan was designed "to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy" which the fresh start provision in Section 524(e) was not intended to do.  Id. at 252-253.

45.  Section 105 of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  The Court, in Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.) 4 F.3d 1329, 1334 (5th Cir. 1993), explained the purpose and range of its powers under Section 105.

> Section 105(a) authorizes a bankruptcy court to fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code.  For instance, the section permits bankruptcy courts to issue injunctions.  But, the powers granted by that statute must be exercised in a manner that is consistent with the Bankruptcy Code.  See United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986); In re Texas Consumer Finance Corp., 480 F.2d 1261, 1265 (5th Cir. 1973).  The "statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."  United States v. Sutton, 786 F.2d at 1308.

The Department does not believe there is any authority in the Bankruptcy Code or case law allowing the Plan to provide for the releases described in Plan.  Because the Plan Section is not based on anything under applicable law, the Court is not able to exercise its Section 105 powers as such exercise would be inconsistent with the Bankruptcy Code.

46.  The cited cases in the averments herein hold that an exculpation provision, such as the one at issue here, render a plan unconfirmable because the bankruptcy court "lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code."  In re Lowenschuss, 67 F.3d at 1401-1402.

The Debtor should not be permitted to use the Chapter 11 Plan as a mechanism to obtain a discharge or release of nondebtor third parties who may be independently liable to creditors or interest holders or the Debtor for nondebt matters. Allowing such releases and other related provisions would result in nondebtors benefiting from the Debtor's bankruptcy by obtaining their own releases. The Debtor is not allowed and should not be insulated in any way for any inappropriate conduct regarding the formulation and administration of the Plan.

47. As averred previously, the Department is fearful that these provisions could be interpreted to improperly restrict the Department from assessing or collecting taxes from any nondebtor person or entity that may be liable directly or indirectly for the payment of the Debtor's taxes. Furthermore, specific federal law prohibits such provisions in the context of state tax claims. That is, these restrictions on assessment and collection violate the Tax Injunction Act, 28 U.S.C. § 1341:

> The District Courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Any attempt, either directly or indirectly, to prevent the Department from pursuing a nondebtor is in violation of the Tax Injunction Act. McCrory Corp. v. Texas Comptroller of Public Accounts, 212 B.R. 229, 231 (S.D.N.Y. 1997).

48. "The Tax Injunction Act is similar to the Anti–Injunction Act, 26 U.S.C. § 7421. The latter Act is part of the Internal Revenue Code, and prohibits suits against the Internal Revenue Service brought to restrain the Service from making assessments or collections." Id. at 232. The Anti-Injunction Act, 26 U.S.C. § 7421(a), provides, in relevant part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

See American Bicycle Association v. United States (In re: American Bicycle Association), 895

F.2d 1277 (9th Cir. 1990); United States v. Prescription Home Health Care, Inc., 316 F.3d 542

(5th Cir. 2002); United States v. Plainwell (In re Plainwell, Inc.), 2004-2 USTC Paragraph 50,

393 (D. Del. 2004) (denying release of officers and directors from potential tax claims); In re:

LaSalle Rolling Mills, Inc., 832 F.2d 390 (7th Cir. 1987); In re: Heritage Village Church and

Missionary Fellowship, Inc., 851 F.2d 104 (4th Cir. 1988); A to Z Welding & Mfg. Co. v. I.R.S.,

803 F.2d 932 (8th Cir. 1986); and In re Becker's Motor Transp., 632 F.2d 242, 246 (3rd Cir.

1980) (Anti-Injunction Act applies in bankruptcy cases).

49.  Further, the Bankruptcy Code does not confer any jurisdiction to enjoin taxing

authorities from pursuing third parties.  United States v. Prescription Home Health Care, Inc. (In

re Prescription Home Health Care, Inc.), 316 F.3d 542 547 (5th Cir. 2002).

50.  The Department does not consent to the nondebtor exculpation provision as set forth

in the Plan.  Further, a discharge should be granted to the Debtor for only debts owed to creditors

upon the completion of all the payments as allowed by the Bankruptcy Code, not for any conduct

in the formulation and administration of its Plan.  Thus, these provisions render the Plan

unconfirmable as to the Department.

**Confirmation Requirements Not Met.**

51.  A court can only confirm a plan if, inter alia, it complies with the applicable

provisions of the Bankruptcy Code.  See 11 U.S.C. 1129(a)(1) ("The plan complies with the

applicable provisions of this title."); see also United Aid Funds, Inc. v. Espinosa, 559 U.S. 260,

130 S.Ct. 1367, 1381-1382, 176 L.Ed.2d. 158 (2009); In re ACandS, Inc., 311 B.R. 36, 42-43

(Bankr.D.Del. 2004); and In re Economy Cast Stone Co., 16 B.R. 647, 650 (Bankr.E.D.Va.

1981).

52.  The Bankruptcy Code and the case law make it clear that courts must assess whether a plan meets the statutory requirements for confirmation independently, i.e., even if no creditor objects to the plan.  See 11 U.S.C. 1129(a) ("The court shall confirm a plan only if all of the following requirements are met."); see also United Aid Funds, Inc. v. Espinosa, 130 S.Ct. at 1381-1382; In re ACandS, Inc., 311 B.R. at 42-43; and In re Economy Cast Stone Co., 16 B.R. at 650.

53.  The proposed Plan cannot be confirmed as it has not been proposed in good faith as required under 11 U.S.C. § 1129(a)(3).  A plan fails to meet the good faith requirement where (1) it is inconsistent with Bankruptcy Code's objectives, (2) it is not proposed with honest intentions and an achievable basis for reorganization, or (3) lacks fundamental fairness in dealing with creditors.  In re Lernout & Hauspie Speech Products N.V., 308 B.R. 672, 675 (D.Del. 2004).

54.  It is clear that the Plan does not meet the aforementioned good faith requirements.  Such lack of good faith can warrant not only the disapproval of the Disclosure Statement and the denial of the confirmation of the Plan but also the dismissal of the case.  Further, the proposed Plan cannot be confirmed as it does not comply with the applicable provisions of the Bankruptcy Code as required under 11 U.S.C. § 1129(a)(1).

Accordingly, confirmation of the Plan should be denied.

**Disclosure Statement Requirements Not Met.**

55.  The Disclosure Statement cannot be approved as it has not provided adequate information and the Plan is not confirmable.

Accordingly, approval of the Disclosure Statement should be denied.

**Conclusion – Recommended Confirmation Order Applicable to the Department**

56.  In addition to providing a proposed Order denying the approval of the Debtor's Disclosure Statement and Plan of Liquidation, the Department also provides an alternative order, which includes the language resolving each of the Department's objections to the Disclosure Statement and proposed Plan that is to be included in the Confirmation Order.

WHEREFORE, the Department respectfully requests that the approval of the Disclosure Statement and the Plan of Liquidation be denied.

Respectfully submitted,

Date: September 27, 2023

*/s/ Christos A. Katsaounis*
Christos A. Katsaounis
Senior Counsel
PA Department of Revenue
Office of Chief Counsel
P.O. Box 281061
Harrisburg, PA 17128-1061
ckatsaouni@state.pa.us
Attorney ID No. 20196 (PA)
Telephone: (717) 346-4643
Facsimile: (717) 772-1459