**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **CHAPTER 11** |
| | : | |
| **SCUNGIO BORST & ASSOCIATES, LLC,** | : | **BANKRUPTCY NO. 22-10609(AMC)** |
| | : | |
| Debtor. | : | |
| | : | |

---

**MODIFIED JOINT PLAN OF LIQUIDATION (WITH TECHNICAL
MODIFICATIONS) PROPOSED BY SCUNGIO BORST & ASSOCIATES, LLC,
DEBTOR-IN-POSSESSION, AND THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE ESTATE OF DEBTOR**

---

**ARIS J. KARALIS, ESQUIRE
ROBERT W. SEITZER, ESQUIRE
ROBERT M. GREENBAUM, ESQUIRE
KARALIS PC
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Debtor**


**EDMOND M. GEORGE, ESQUIRE
MICHAEL D. VAGNONI, ESQUIRE
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia PA 19102
(215) 665-3140
Attorneys for the Official Committee of
Unsecured Creditors**

**Dated: October 19, 2023**

# TABLE OF CONTENTS

**PAGE NO.**

INTRODUCTION ...................................................................................................................1

ARTICLE I            Definitions, Rules of Interpretation, and Computation of Time........................1

    A.     Scope of Definitions ...............................................................................1
    B.     Definitions...............................................................................................1
    C.     Rules of Interpretation ..........................................................................10
    D.     Computation of Time ............................................................................11
    E.     References to Monetary Figures ...........................................................11
    F.     Exhibits .................................................................................................11
    G.     Controlling Document ...........................................................................11

ARTICLE II           Classification of Claims and Interests..............................................................12

    2.1    Summary of Claims ..............................................................................12
    2.2    Classification of Claims .......................................................................12
    2.3    Administrative Expense Claims and Priority Tax Claims ....................12

ARTICLE III          Treatment of Classes of Claims ......................................................................13

    3.1    Class 1.  Priority Non-Tax Claims......................................................13
    3.2    Class 2.  General Unsecured Claims....................................................13
    3.3    Class 3.  Interest Holders .....................................................................13
    3.4    Elimination of Vacant Classes .............................................................13
    3.5    Cramdown .............................................................................................13

ARTICLE IV           Treatment of Unclassified Claims ...................................................................14

    4.1    Administrative Expense Claims............................................................14
    4.2    Professional Fee Claims........................................................................14
    4.3    Treatment of Priority Tax Claims.........................................................15
    4.4    No Liability for Certain Tax Claims.....................................................15

ARTICLE V            Provisions for Execution of the Plan ..............................................................16

    5.1    Transfer of Estate Assets to SBA Plan Trust Free and Clear of Liens,
            Claims and Encumbrances....................................................................16
    5.2    SBA Plan Trust Generally ....................................................................16
    5.3    Funds.....................................................................................................19
    5.4    Documents ............................................................................................19
    5.5    Disbursements and Investment of Funds .............................................20
    5.6    Final Decree .........................................................................................20
    5.7    Winding Up Affairs ..............................................................................20
    5.8    Corporation Action ...............................................................................20

5.9      Survival of the Committee ..................................................................................20
5.10     Management ..........................................................................................................20

ARTICLE VI        Provisions Governing Distributions and General Provisions ..........................20

6.1      Distributions ........................................................................................................20
6.2      Method of Distribution ........................................................................................21

ARTICLE VII       Executory Contracts ..............................................................................................23

7.1      Rejection of Executory Contracts and Unexpired Leases....................................23
7.2      Rejection Damages Bar Date ................................................................................23

ARTICLE VIII      Retention of Causes of Action ...............................................................................23

8.1      Retention and Enforcement and Waiver of Claims ..............................................23
8.2      Powers ...................................................................................................................23
8.3      KPG-MCG Litigation ..........................................................................................24

ARTICLE IX        Procedures   for   Resolving   Continent,   Unliquidated,   and
                  Disputed Claims ....................................................................................................24

9.1      Applicability .........................................................................................................24
9.2      Allowance of Claims.............................................................................................24
9.3      Claims Administration Responsibilities ...............................................................24
9.4      Estimation of Claims.............................................................................................24
9.5      No Distributions Pending Allowance ...................................................................25
9.6      Distributions After Allowance ..............................................................................25
9.7      Disputed Claims Reserve ......................................................................................25
9.8      Adjustment to Claims Register Without Objection ..............................................26
9.9      Time to File Objections to Claims ........................................................................26
9.10     Treatment of Untimely Claims .............................................................................26

ARTICLE X         Retention of Jurisdiction ........................................................................................26

ARTICLE XI        Miscellaneous ........................................................................................................28

11.1     Choice of Law........................................................................................................28
11.2     Amendment or Modification of the Plan ...............................................................28
11.3     Request for Expedited Determination of Taxes....................................................29
11.4     Non-Severability ...................................................................................................29
11.5     Notices ...................................................................................................................29
11.6     Notices to Other Persons.......................................................................................30
11.7     Entire Agreement ..................................................................................................30
11.8     Filing of Reports and Payment of Quarterly Fees ................................................30
11.9     No Discharge of Debtor ........................................................................................31
11.10    Binding Effect .......................................................................................................31
11.11    Automatic Stay.......................................................................................................31

11.12   Destruction of Records ........................................................................................31
11.13   Exculpation .........................................................................................................31

## INTRODUCTION

Scungio Borst & Associates, LLC, the Debtor and Debtor-in-Possession (as such terms are hereinafter defined), and the Official Committee of Unsecured Creditors of the Estate of the Debtor (the "Committee", along with the Debtor, collectively, the "Plan Proponents"), hereby propose this Joint Liquidating Plan (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. Reference is made to the Joint Disclosure Statement (the "Disclosure Statement") accompanying the Plan for a discussion of the Debtor's history, business, and Assets, a summary and analysis of the Plan, and certain related matters

The Plan Proponents propose the following Plan for the Debtor's Assets following the cessation of operations that occurred prior to the Petition Date, and resolution of the outstanding claims against and interests in the Debtor's bankruptcy estate.

ALL CREDITORS OF THE DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN 11 U.S.C. § 1127 AND FED. R. BANKR. P. 3019, THE PLAN PROPONENTS RESERVE THE RIGHT TO JOINTLY ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

## ARTICLE I
## Definitions, Rules of Interpretation, and Computation of Time

A.    **Scope of Definitions.**  For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I.B of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules.

B.    **Definitions**.

1.1    **"418 Federal"** means 418 Federal Partners GSGZ, LLC.

1.2    **"418 Federal Receivable"** means the Debtor's Asset in the form of a receivable due from 418 Federal in the principal amount of $619,874.14. The 418 Federal Receivable relates to the 418 Federal Redevelopment Agreement in connection with the 418 Federal Redevelopment Project. In its Bankruptcy Schedules, the Debtor identified loan advances made by the Debtor on behalf of 418 Federal in the amount of $619,874.14. The Debtor has taken the position that the loan advances were made by the Debtor by making payments directly to 418 Federal vendors and subcontractors with respect to the 418 Federal Redevelopment Project. The Committee takes the position that the advances were made to or for the benefit of the Debtor's insiders. The Debtor has represented that the funds would be repaid from the proceeds of the sale or refinance of the 418 Federal Redevelopment Project. The Committee asserts that the estate is entitled to more than a return of the advances. *The Committee is in the process of reviewing the amount of these loans/advances to confirm the accuracy of the amounts set forth herein, and reserves for the Debtor's estate all rights and claims relating to this receivable.*

1.3    **"418 Federal Redevelopment Agreement"** means the agreement originally between the Millennial Partners, LLC and the City of Camden for the redevelopment of the "Library" property located at 418 Federal Street, Camden, New Jersey and certain contiguous properties.  On or about April 1, 2021, the 418 Federal Redevelopment Agreement was assigned to 418 Federal pursuant to a certain Assumption and Assignment of Redevelopment Agreement between Millennial Partners, LLC and 418 Federal.

1.4    **"418 Federal Redevelopment Project"** means the project to develop certain properties located at 418 Federal Street, Camden, New Jersey (identified as Block 170, Lot 40 on the tax map of the City of Camden), as well as a contiguous 45' x 74' parcel with frontage on Federal Street (identified as Block 170, Lot 61 on the tax map of the City of Camden).

1.5    **"Accrued"** means an expense incurred, but not yet billed for, nor paid.

1.6    **"Accrued Professional Fees"** means, as of any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued fees and reimbursable expenses for services rendered in the Chapter 11 Case up to and including such date, whether or not such Professional has then filed an application for the allowance and payment of such fees and expenses: (a) to the extent that any such fees and expenses have not been previously paid by the Debtor; and (b) after each Professional has applied to such accrued fees and expenses the balance of any retainer that has been provided by the Debtor to such Professional, if applicable.  No amount of a Professional's fees or expenses denied by a Final Order of the Bankruptcy Court shall constitute Accrued Professional Fees.  For the avoidance of doubt, any Allowed Professional Fee Claim of B&L, retained as Debtor's contingent fee counsel, will be paid from any recovery from the KPG-MCG Litigation only and not paid from any other Assets of the Bankruptcy Estate or the SBA Plan Trust.  Any Allowed Professional Fee Claim of B&L is not included in the definition of Accrued Professional Fees, Professional Fee Reserve Amount or the Professional Fee Reserve.

1.7    **"Administrative Expense Claim"** means any right to payment from the Debtor that constitutes a cost or expense of administration incurred during the Chapter 11 Case of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) of the Bankruptcy Code including, Professional Fee Claims and Quarterly Fees.

1.8    **"Affiliate"** means any "affiliate" as that term is defined in § 101(2) of the Bankruptcy Code.

1.9    **"Allowance Date"** means the date a Claim or Interest becomes an Allowed Claim or Allowed Interest, respectively.

1.10    **"Allowed"** The use of the term "Allowed" with reference to a Claim or Interest (e.g., "Allowed General Unsecured Claim") shall mean one which (a) is listed in the Bankruptcy Schedules or list of equity security holders (including any amendments thereto) filed in the Chapter 11 Case as of the Confirmation Date and (i) not listed therein as disputed, contingent or unliquidated or (ii) not objected to by the Debtor or any other party in interest; (b) is set forth in a proof of claim or Interest properly filed in the Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statutes as the last day for filing such proof), and as to which no objection is filed; or (c) is determined to be allowed in a Final Order.

2

1.11    **"Allowed Claim"** means (a) a Claim that has been allowed by a Final Order; (b) a Claim which is specified herein to be an Allowed Claim; or (c) a Claim timely filed with the Office of the Clerk of the Court or Scheduled by the Debtor in its Schedules (including any amendments thereto) as neither unliquidated, disputed or contingent and as to which Claim (i) no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or Orders of the Court, or (ii) as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to a Scheduled Claim has been interposed, which objection or application has been resolved by a Final Order to the extent such objection or application is determined in favor of the holder of such Claim. Unless otherwise specified herein, "Allowed Claim" shall not include interest on the principal amount of such Claim accruing from or after the Petition Date, unless otherwise allowed by Final Order.

1.12    **"Allowed Interest"** shall mean an Interest (a) in respect to which a proof of interest has been filed with the Court within the applicable period of limitation fixed by Bankruptcy Rule 3003 or (b) Scheduled in the list of equity security holders prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3003 or an Order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

1.13    **"Assets"** means all of the Debtor's property, real and personal, tangible and intangible, including, without limitation, Cash, accounts receivable, including, but not limited to, the 418 Federal Receivable, goods, equipment, inventory, chattel paper, documents, instruments, money, insurance proceeds, tax refunds, tax credits, including but not limited to the Employee Retention Credits, Causes of Action, proceeds thereof, claims and rights of any kind, wherever situated, together with the proceeds thereof.

1.14    **"Avoidance Actions"** means any and all actual or potential avoidance, recovery, subordination or other Claims, Causes of Action or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

1.15    **"Bankruptcy Code"** means Title 11 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case as of the Petition Date.

1.16    **"Bankruptcy Court" or "Court"** means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

1.17    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceeding therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceeding therein, as the case may be.

1.18    **_Bar Date_** means the deadline set by the Bankruptcy Court for filing proofs of claim or interests in the Chapter 11 Case.   For pre-Petition Claims (other than those of governmental units) and Interests, the Bar Date fixed by Order of the Court was **May 27, 2022**. For pre-Petition Claims of governmental units, and in accordance with § 502(b)(9) of the Bankruptcy Code, the Bar Date fixed by Order of the Court was **September 8, 2022**.

1.19    **_B&L_** means Bochetto & Lentz, P.C., the law firm retained on a contingent fee basis by the Debtor as its special litigation counsel to prosecute the KPG-MCG Litigation.

1.20    **_Borst_** means Philip L. Borst, a fifty percent (50%) member of the Debtor.

1.21    **_Business Day_** means any day other than a Saturday, Sunday, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks in Philadelphia, Pennsylvania are required or authorized to close.

1.22    **_Cash_** means legal tender of the United States of America and equivalents thereof.

1.23    **_Causes of Action_** means any claims, interests, damages, remedies, causes of action, demands, rights, actions (including suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, capable of being asserted, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, whether arising before, on, or after the Petition Date. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (d) any Cause of action related to the 418 Receivable; (e) the KPG-MCG Litigation; and (f) any claim under any local, state, federal or foreign law, including any fraudulent transfer or similar claim.

1.24    **_Chapter 11 Case_** means the bankruptcy case presently captioned: _In re Scungio Borst & Associates, LLC_, under Case No. 22-10609(AMC).

1.25    **_Claim_** means a claim, whether or not asserted, as defined in § 101(5) of the Bankruptcy Code against the Debtor and is intended to include, without limitation, any claim, suit, demand, note, liability, setoff, recoupment or charge, and any claim for reimbursement, contribution, indemnity or exoneration.

1.26    **_Claims Objection Deadline_** means the deadline for filing an objection to any Administrative Expense Claim (other than a Professional Fee Claim), Priority Tax Claim, Priority Non-Tax Claim, or General Unsecured Claim which deadline shall be: (a) 120 days after the Effective Date with respect to all such Claims, subject to any extensions approved by an order of the Bankruptcy Court for cause; provided, however, that neither the Debtor, nor the SBA Plan Administrator, shall be bound by the Claims Objection Deadline with respect to any Claim filed after the Bar Date.

1.27    **"Class"** means a category of holders of Claims or Interests, as set forth in Article II of this Plan, pursuant to 11 U.S.C. § 1122.

1.28    **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee pursuant to § 1102(a)(1) of the Bankruptcy Code comprised of Portuguese Structural Steel, Inc., MARX Sheet Metal & Mechanical, Inc., Philadelphia Carpentry Systems, Inc., Jersey Construction, Inc., and 2M Electric.

1.29    **"Confirmation Date"** means the date of entry of the Confirmation Order on the docket of the Chapter 11 Case.

1.30    **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court at which the Plan Proponents seek entry of the Confirmation Order.

1.31    **"Confirmation Order"** means the Order of the Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

1.32    **"Creditor"** means the holder of a Claim against the Debtor.

1.33    **"DAS"** means DAS Architect, Inc.

1.34    **"Debtor"** means Scungio Borst & Associates, LLC.

1.35    **"Debtor-in-Possession"** means the Debtor in its capacity as a debtor-in-possession in the Chapter 11 Case and with the status and rights conferred pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

1.36    **"Disallowed"** means as to any Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, General Unsecured Claim or any portion thereof:  (a) has been disallowed, denied, dismissed, expunged, or overruled pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) has been listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established, but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law; or (c) has not been scheduled and as to which a Bar Date has been established, but no Proof of Claim has been timely filed, such that the Creditor holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distribution. "Disallowance" and "Disallowing" have correlative meanings.

1.37    **"Disbursing Agent"** means (a) the Debtor which shall make the Distributions from (i) the Professional Fee Reserve for the Allowed Professional Fee Claims (other than B&L) and (ii) any recovery from KPG-MCG Litigation for the Allowed Professional Fee Claim of B&L, and (b) the SBA Plan Trust Administrator which shall make the Distributions from the Distribution Account to holders of Allowed Claims under the Plan in accordance with the provisions of the Plan. For the avoidance of doubt, Allowed Professional Fee Claims (other than B&L) that exceed the Professional Fee Reserve shall be paid by SBA Plan Trust Administrator from the Distribution Account in accordance with the provisions of the Plan.

1.38    **"Disclosure Statement"** means the Joint Disclosure Statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code.

1.39    **"Disputed"** means, as to any Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, General Unsecured Claim, or any portion thereof:  (a) that is neither Allowed nor Disallowed, (b) that is listed on the Schedules a "disputed," "contingent," or "unliquidated" or (c) for which a Proof of Claim has been filed or a written request for payment has been made to the extent that any party in interest has interposed a timely objection to such Claim, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

1.40    **"Disputed Claim Reserve"** means, in the event there exists any Disputed Claim on or after the Effective Date, Cash to be set aside by the SBA Plant Trust Administrator pursuant to Section 9.4 of the Plan in an amount sufficient to pay the Distributions to all Disputed Claims at the time such Distributions are made in accordance with the provisions of the Plan, if such Disputed Claim become Allowed Claims.

1.41    **"Distribution"** means any payment by the Debtor or SBA Plant Trust Administrator to holders of Allowed Claims.

1.42    **"Distribution Account"** means the bank accounts to be opened and/or maintained by the SBA Plan Trust Administrator in which all the proceeds from the liquidation of the Debtor's Assets are deposited.

1.43    **"Distribution Date(s)"** means the date, selected by the SBA Plan Trust Administrator occurring as soon as practicable after the Effective Date, upon which Distributions to holders of Allowed Claims entitled to receive Distributions under the Plan shall be made.

1.44    **"Effective Date"** means the first Business Day after the date the Confirmation Order becomes a Final Order.  However, at the option of the Plan Proponents, a Confirmation Order subject to a pending appeal or certiorari proceeding may be considered a Final Order, provided no order has been entered by any court of competent jurisdiction staying the effect of the Confirmation Order.  Within two (2) Business Days of the Effective Date, the Debtor shall file a notice of occurrence of the Effective Date, identifying the Effective Date and that it has occurred.

1.45    **"Encumbrance"** means, with respect to any property (whether real or personal, tangible or intangible), any valid and enforceable mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

1.46    **"Entity"** shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.47    **"Equity Security Holders"** means SCLLC and Borst which equally own the Interests of the Debtor.

1.48    **"Estate"** means the estate created for the Debtor in the Chapter 11 Case under sections 301 and 541of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.49    **"Exculpated Parties"** means, collectively, the following Persons: (a) the Debtor, (b) the directors, officers, and managers of the Debtor that served during the Chapter 11 Case, (c) the Committee, (d) all Professionals retained by the Debtor in the Chapter 11 Case, (e) all Professionals retained by the Committee in the Chapter 11 Case, and in each such instance of (a) through (e) acting in their capacity as such.

1.50    **"Exhibit Filing Date"** means the date on which Exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be at least five days prior to the voting deadline for this Plan or such later date as may be approved by the Bankruptcy Court.

1.51    **"Final Order"** means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied with prejudice or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

1.52    **"FRFCU"** means Financial Resources Federal Credit Union.

1.53    **"FRFCU Loan Documents"** means (i) the term note the Debtor entered into with FRFCU on March 17, 2020, providing a U.S. Small Business Administration guaranteed term loan, SBA Loan No. 42662970-06 in the principal amount of $4,430,000.00 and (ii) the line note the Debtor entered into with FRFCU on March 17, 2020, providing a U.S. Small Business Administration guaranteed revolving credit facility, SBA Loan No. 42666970-08 of $350,000.00.

1.54    **"FRFCU Loan Obligations"** means the obligations owed by the Debtor to FRFCU under the FRFCU Loan Documents.

1.55    **"General Unsecured Claim"** means any Claim against the Debtor that is not a Professional Fee Claim, an Administrative Expense Claim, a Priority Tax Claim, or a Priority Non-Tax Claim.

1.56    **"Governmental Unit"** means a "governmental unit" as that term is defined in § 101(27) of the Bankruptcy Code.

1.57    **"Impaired"** means "impaired" within the meaning of § 1124 of the Bankruptcy Code.

1.58    **"Impaired Class"** means any Class of Claims which is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.59    **"Insider"** means any "insider" as that term is defined in paragraphs (B), (C), (E) or (F) of §101(31) of the Bankruptcy Code.

1.60    **"Interest"** means any "equity security" as defined in section 101(16) of the Bankruptcy Code.

1.61    **"KPG-MCG"** means KPG-MCG Curtis Tenant, LLC.

1.62    **"KPG-MCG Litigation"** means the following litigation pending in the Court of Common Pleas of Philadelphia County: (i) *Scungio Borst & Associates, LLC v. KPG-MCG Curtis Tenant, LLC, et al.*, October Term 2018, Case No. M0013; (ii) *Scungio Borst & Associates, LLC v. KPG-MCG Curtis Tenant LLC*, February Term 2019, Case No. 00666; (iii) *KPG-MCG Curtis Tenant, LLC v. Scungio Borst & Associates, LLC, et al.*, November Term 2018, Case No. 01154; and (iv) *Component Assembly Systems Inc. v. KPG-MCG Curtis Tenant LLC et al.*, August Term 2019, Case No. 02079.

1.63    **"Lien"** means any "lien" as defined in § 101(37) of the Bankruptcy Code.

1.64    **"Person"** means a person within the meaning of § 101(41) of the Bankruptcy Code.

1.65    **"Petition"** means the Petition for Relief filed by the Debtor with the Court pursuant to Chapter 11 of the Bankruptcy Code commencing this proceeding.

1.66    **"Petition Date"** means **March 11, 2022**, the date upon which the Debtor filed its Petition.

1.67    **"Plan"** means this Modified Joint Plan of Liquidation (with technical modifications), including the Exhibits thereto, as the same may be amended, supplemented or otherwise modified from time to time pursuant to section 1127 of the Bankruptcy Code.

1.68    **"Plan Documents"** means, collectively, the Plan, the Disclosure Statement, the Disclosure Statement Order, and all of the exhibits and schedules attached to any of the foregoing.

1.69    **"Plan Proponents"** means collectively the Debtor and the Committee.

1.70    **"Priority Non-Tax Claim"** means any Claim against the Debtor that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.71    **"Priority Tax Claim"** means any Claim of a Governmental Unit against the Debtor that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.72    **"Pro Rata"** means, at any time, with respect to any Claim, the proportion that the amount of such Claim in a particular Class or group of Classes bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or group of Classes, unless in each case the Plan provides otherwise.

1.73    "**Professional**" means any Person retained by the Debtor or the Committee pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

1.74    "**Professional Fee Claim**" means any Claim of a Professional or other Person for Allowance by the Bankruptcy Court and payment by the Debtor of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Case for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

1.75    "**Professional Fee Reserve**" means the aggregate account funded from the Cash in the DIP Accounts by the Debtor as of the Effective Date in an amount equal to the Professional Fee Reserve Amount as of such date, solely for the purpose of paying all Allowed Professional Fee Claims through the Effective Date that remain unpaid as of the Effective Date, and to the extent that the Professional Fee Reserve is not adequate to pay all the Allowed Professional Fees as of the Effective Date, the unpaid balance and any Professional Fees incurred after the Effective Date pursuant to the provisions of this Plan shall be paid by the SBA Plan Trust Administrator from the Disbursement Account. For the avoidance of doubt, any Allowed Professional Fee Claim of B&L, retained as Debtor's contingent fee counsel, will be paid from any recovery from the KPG-MCG Litigation only, and will not be paid from any other Assets of the Debtor or the SBA Plan Trust. Any Allowed Professional Fee Claim of B&L is not included in the definition of Accrued Professional Fees, Professional Fee Reserve Amount or the Professional Fee Reserve.

1.76    "**Professional Fee Reserve Amount**" means the aggregate Accrued Professional Fees as of the Effective Date, as estimated by the Professionals in accordance with Article IV. §4.2.1 of the Plan. For the avoidance of doubt, any Allowed Professional Fee Claim of B&L, retained as Debtor's contingent fee counsel, will be paid from any recovery from the KPG-MCG Litigation. Any Allowed Professional Fee Claim of B&L is not included in the definition of Accrued Professional Fees, Professional Fee Reserve Amount or the Professional Fee Reserve.

1.77    **"Proof of Claim"** means any proof of claim filed with the Bankruptcy Court pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against the Debtor.

1.78    **"Quarterly Fees"** means all fees due and payable pursuant to section 1930(a)(6) of Title 28 of the United States Code.

1.79    **"Rejection Claim"** means any Claim that results from the rejection of any executory contract or unexpired lease by the Debtor by a Final Order.

1.80    **"SBA Plan Trust"** means the trust established pursuant to the Plan and the SBA Plan Trust Agreement to administer the SBA Plan Trust Assets for the benefit of the holders of Allowed Administrative Expense Claims, Priority Tax Claims, Class 1 Priority Non-Tax Claims

and Class 2 Allowed General Unsecured Claims against the Debtor.

1.81   **"SBA Plan Trust Administrator"** means the SBA Plan Trust Administrator disclosed in a notice filed on the docket of the Chapter 11 Case no less than seven (7) days prior to the commencement of the Confirmation Hearing and approved by the Bankruptcy Court in the Confirmation Order, or any successor administrator who may subsequently be appointed jointly by the Debtor and the Committee, pursuant to the terms of the SBA Plan Trust Agreement.

1.82   **"SBA Plan Trust Advisory Board"** means one or more beneficiaries of the SBA Plan Trust including, Aris J. Karalis, Esquire, Karalis PC ("Karalis"), and Edmond M. George, Esquire, Obermayer Rebmann Maxwell and Hippel ("George"), on behalf of the holders of administrative claims, and two additional members selected by the Committee on behalf of the holders of unsecured claims, each of which will be identified in the SBA Plan Trust Agreement, and which board shall have the authority as set forth in the SBA Plan Trust Agreement. Upon the Allowed Professional Fee Claims, Administrative Expense Claims, Priority Non-Tax Claims and Priority Claims being paid as provided by the provisions of the Plan, Karalis and George shall resign from the SBA Plan Trust Advisory Board.

1.83   **"SBA Plan Trust Agreement"** means the SBA Plan Trust Agreement attached to this Plan as Exhibit 1.65 and made a part hereof.

1.84   **"Scheduled"** means, with respect to any Claim or Interest, the status, priority, and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.85   **"Schedules"** means the Schedules of Assets and Liabilities and the Statement Of Financial Affairs filed in the Chapter 11 Case by the Debtor pursuant to Bankruptcy Rule 1007, as such Schedules have been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court prior to the Effective Date.

1.86   **"Scungio"** means Scott P. Scungio, the sole managing member of SCLLC.

1.87   **"SCLLC"** means Scungio & Company LLC, a fifty percent (50%) member of the Debtor.

1.88   **"Secured"** means, with respect to any Claim, the extent to which the Claim is: (a) secured by a Lien on property of the Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

1.89   **"Unimpaired"** means any Claim that is not Impaired.

C.   **Rules of Interpretation**.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine,

feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, Articles of Incorporation, Bylaws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in § 102 of the Bankruptcy Code will apply.

D.    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

E.    **References to Monetary Figures**. All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

F.    **Exhibits**.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Karalis PC, 1900 Spruce Street, Philadelphia, PA 19103 (Attention: Aris J. Karalis, Esquire), counsel to the Debtor, or counsel to the Committee, Edmond M. George Esquire, Obermayer Rebmann Maxwell & Hippel, LLP, or by downloading such Exhibits from the Court's website at http://ecf.paeb.uscourts.gov.  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

G.    **Controlling Document**.  In the event of any conflict between the terms and provisions in the Plan, on the one hand, and the terms and provisions in the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan shall govern and control; provided, however, that in the event of a conflict between Confirmation Order, on the one hand, and any of the other Plan Documents, on the other hand, the Confirmation Order shall govern, control and take precedence in all respects.

## ARTICLE II
## Classification of Claims and Interests

2.1 **Summary of Claims**. The categories of Claims and Interests listed below classify Claims (except for Administrative Expense Claims and Priority Tax Claims, which shall be treated in accordance with Article IV of this Plan) for all purposes, including voting, confirmation and distribution, pursuant to this Plan.

| Class | Description | Status | Voting Rights |
|-------|-------------|--------|---------------|
| 1 | Class 1 consists of Priority Non-Tax Claims | Not impaired | Deemed to accept; Not entitled to vote |
| 2 | Class 2 consists of General Unsecured Claims | Impaired | Entitled to vote |
| 3 | Class 3 consists of Interests | Impaired | Deemed to reject; Not entitled to vote |

2.2 **Classification of Claims**. The Claims and Interests against the Debtor shall be classified as specified above (except for Administrative Expense Claims and Priority Tax Claims, which shall be treated in accordance with Article IV of this Plan). Consistent with § 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.

2.2.1 Class 1 is unimpaired by the Plan and holders of these Claims are conclusively presumed to have accepted the Plan. Class 2 is impaired by the Plan and holders of Claims in this Class shall be entitled to vote to accept or reject the Plan. Class 3 is impaired by the Plan because holders of Interests in this Class will not retain or receive any property under the Plan on account of such Interests. Therefore, Class 3 is deemed not to have accepted the Plan.

2.2.2 The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding an Allowed Claim or an Allowed Interest may have in or against the Debtor or its property. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim or Allowed Interest in accordance with the terms of this Plan and the SBA Plan Trust Agreement. Except as specifically set forth in this Plan or the SBA Plan Trust Agreement, no Distributions will be made and no rights will be retained on account of any Claim and any Interest that is not an Allowed Claim or an Allowed Interest.

2.3 **Administrative Expense Claims and Priority Tax Claims**. As provided in § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims pursuant to the terms set forth in Article IV of this Plan.

# ARTICLE III
## Treatment of Classes of Claims

3.1    **Class 1.**        **Priority Non-Tax Claims**.  Class 1 is not impaired.  The treatment and consideration to be received by the holders of Allowed Priority Non-Tax Claims shall be in full settlement, satisfaction, release and discharge of all their respective Claims.  Unless the holder of an Allowed Class 1 Priority Claim and the Debtor agree to a different treatment, as soon as reasonably practicable after the later of (a) the Effective Date, to the extent such Claim is Allowed as of the Effective Date, or (b) the first Business Day after such Priority Tax Claim becomes Allowed, the Debtor shall pay each holder of an Allowed Class 1 Priority Non-Tax Claim in full, in Cash, without interest.

3.2    **Class 2.**        **General Unsecured Claims.**  Class 2 is impaired.  As set forth more fully in this Section 3.2 of the Plan, the treatment and consideration to be received by the holders of Allowed General Unsecured Secured Claims shall be in full settlement, satisfaction, release and discharge of all their respective claims and liens.

3.2.1    **Treatment.**  As soon as reasonably practicable after the Effective Date, (a) after full payment of Allowed Administrative Expense Claims including the Professional Fee Claims, (b) after full payment of Allowed Class 1 Priority Non-Tax Claims and Priority Tax Claims, and (c) after full payment of all the professional fees and expenses incurred by the SBA Plan Trust, including the fees and expenses of SBA Plan Administrator, the SBA Plan Trust Administrator in accordance with the Plan and the SBA Plan Trust Agreement shall Distribute the remaining SBA Plan Trust Assets on a Pro-Rata basis to holders of Allowed Class 2 Claims, as and when funds are available for such purpose.  After all the SBA Plan Trust Assets have been fully liquidated or abandoned, and the proceeds distributed in accordance with the Plan and SBA Plan Trust Agreement, the SBA Plan Trust shall be closed.

3.2.2    **General Provisions.**  No interest will be paid on account of Class 2 Claims. No portion of any Class 2 Claim shall be Allowed to the extent that it is for post-petition interest or other similar post-Petition charges. Any Allowed Class 2 Claim as to which insurance coverage exists shall not receive a distribution hereunder, but shall be paid exclusively as provided under the applicable policy or policies of insurance.

3.3    **Class 3.**        **Interest Holders.**  Class 3 is impaired.  Class 3 Interests in the Debtor shall be cancelled and extinguished as of the Effective Date, and holders of such Interests shall not be entitled to, and shall not, receive or retain any property or interest in property under the Plan on account of such Interests.

3.4    **Elimination of Vacant Classes.**  Any Class of Claims against or Interests in the Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.5    **Cramdown.**  If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtor may (a) seek Confirmation of the Plan under

section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims are, or any class of Claims is, impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV
## Treatment of Unclassified Claims

4.1    **Administrative Expense Claims**.    Administrative Expense Claims Generally. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date ordered by the Bankruptcy Court.  Failure to file a motion or request for payment timely and properly shall result in the Administrative Claim being forever barred.

4.2    **Professional Fee Claims.**

4.2.1    **Final Fee Applications.**    Except for B&L, final applications for all Professionals or other Persons requesting the final allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtor and the United States Trustee no later than the first Business Day that is thirty (30) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Debtor and the applicable Professional within fourteen (14) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtor and the Professional requesting allowance and payment of a Professional Fee Claim).  B&L shall file its final fee application requesting the final allowance and payment of its Professional Fee Claim within thirty (30) days after the date that the KPG-MCG Litigation has been determined or settled by a Final Order.

4.2.2    **Professional Fee Reserve.**    Except for the Accrued Professional Fees of B&L (retained on a contingent fee basis), on the Effective Date, the Debtor shall establish and fund the Professional Fee Reserve with Cash in an amount equal to the Professional Fee Reserve Amount, plus a reasonable cushion amount determined by the Debtor.  Funds held in the Professional Fee Reserve shall not be considered property of (i) the Debtor's Estate, or (ii) the SBA Plan Trust.  Professional Fees owing on account of Allowed Professional Fee Claims shall be paid in Cash from funds held in the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are allowed by a Final Order of the Bankruptcy Court; provided, however, that the Debtor's and the Debtor Estate's obligations with respect to the Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Reserve.  To the extent the funds in the Professional Fee Reserve are insufficient to satisfy the Allowed Professional Fee Claims in full, each holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any deficiency,

which will be satisfied as soon as reasonably practicable by the SBA Plan Trust Administrator from the SBA Plan Trust.  No Liens, Claims, interests, charges or other Encumbrances or liabilities of any kind shall encumber the Professional Fee Reserve in any way.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Reserve, if any, shall be transferred to the SBA Plan Trust.

   4.2.3 **Professional Fee Reserve Amoun**t.  Except for B&L, to be eligible for payment for Accrued Professional Fees incurred up to an including the Effective Date, Professionals shall estimate their Allowed Fees incurred up to and including the Effective Date, and deliver such estimate to the Debtor at least five (5) Business Days prior to the anticipated Effective Date.  If a Professional does not provide such estimate, the Debtor may reasonably estimate unbilled fees and expenses of such Professional.  The total amount so estimated shall constitute the Professional Fee Reserve Amount, provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional.

   4.2.4 **Post-Effective Date Fees and Expenses**.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 or 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. After the Effective Date, (i) Debtor's counsel, Karalis PC, Debtor's financial support consultant, Harlyn Consulting LLC, and Debtor's accounting firm Miller Searles LLC shall continue to be employed by the Debtor, and (ii) the Committee's counsel, Obermayer Rebmann Maxwell and Hippel, shall continue to be employed by the  Committee until the Committee is disbanded pursuant to § 5.9 of the Plan, and all fees and costs incurred by these Professionals shall be reviewed, approved and paid by the SBA Plan Trust Administrator from the Distribution Account, without any further notice to or action, order, or approval of the Bankruptcy Court.  Any dispute which may arise with regard to professional fees after the Effective Date shall be submitted to the Bankruptcy Court, which shall retain jurisdiction to settle these types of disputes.  B&L, the Debtor's special litigation counsel shall also continue to be employed after the Effective Date and its Accrued Professional Fees shall be paid from the recovery of the KPG-MCG Litigation, if any, subject to the filing of a final fee application as set forth in Article IV. §4.2.1 above, and approval by the Bankruptcy Court.  For the avoidance of doubt, any Allowed Professional Fee Claim of B&L, retained as Debtor's contingent fee counsel, will be paid from any recovery from the KPG-MCG Litigation only and not paid from any other Assets of the Bankruptcy Estate or the SBA Plan Trust.

   4.3 **Treatment of Priority Tax Claims.**  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim, at the sole option of the SBA Plan Trust Administrator: (1) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; or (2) regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.

   4.4 **No Liability for Certain Tax Claims.**  To the extent that any Claim asserted by

a governmental taxing authority seeks recovery of a fine on or penalty against the Debtor, that portion of such Claim, if Allowed, which represents such fine or penalty, shall be treated as a General Unsecured Claim.

**ARTICLE V**
**Provisions for Execution of The Plan**

5.1     **Transfer of Estate Assets to SBA Plan Trust Free and Clear of Liens, Claims and Encumbrances.** On the Effective Date, the SBA Plan Trust shall be formed pursuant to this Plan and the SBA Plan Trust Agreement. Except for the Professional Fee Reserve, all other Assets of the Debtor, including Causes of Action, Avoidance Actions and the 418 Federal Receivable, shall be assigned to and vest in the SBA Plan Trust free and clear of Liens, Claims and Encumbrances, subject to the provisions of the Plan. Except as set forth in Article VIII. §8.3 below with respect to the KPG-MCG Litigation, the SBA Plan Trust Administrator shall administer the Assets in possession of the Debtor's estate from and after the Effective Date and the SBA Plan Trust Administrator shall be deemed the judicial substitute for the Debtor as the party-in-interest in the Chapter 11 Case or any judicial proceeding or appeal to which the Debtor is a party, consistent with §1123(b)(3)(B) of the Bankruptcy Code. Distributions from the SBA Plan Trust assets shall be made as set forth in the Plan and the SBA Plan Trust Agreement.

5.2     **SBA Plan Trust Generally.** On or prior to the Effective Date, the SBA Plan Trust shall be established pursuant to the SBA Plan Trust Agreement for the purpose of providing a mechanism for the economical liquidation of the Debtor's Estate and distribution of the proceeds thereof to holders of Allowed Claims[1] in accordance with the terms of the Plan and the SBA Plan Trust Agreement. Subject to and to the extent set forth in the Plan, the Confirmation Order, the SBA Plan Trust Agreement, or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the SBA Plan Trust Administrator shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the SBA Plan Trust provisions of the Plan; (b) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle, and protect the SBA Plan Trust Assets as set forth herein; (c) sell, liquidate, transfer, distribute, abandon, or otherwise dispose of the SBA Plan Trust Assets or any part thereof upon such terms as the SBA Plan Trust Administrator determines to be necessary, appropriate, or desirable; (d) calculate and make Distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making Distributions prescribed in the Plan; (e) comply with the Plan and exercise the SBA Plan Trust Administrator's rights and fulfill its fiduciary or other obligations thereunder; (f) review, reconcile, or object to Claims and resolve such objections; (g) pursue any and all Causes of Action transferred to the SBA Plan Trust, including the Avoidance Actions; (h) retain and compensate professionals to

---

[1] With respect to the SBA Plan Trust, holders of Allowed Claims under the Plan are the holders of the following Allowed Claims who shall receive Distributions pursuant to the terms of the Plan as follows:  (a) first Allowed Administrative Expense Claims, including the Allowed Professional Fee Claims, (b) second Allowed Class 1 Priority Non-Tax Claims, (c) third, Allowed Priority Tax Claims, (d) fourth, the fees and expenses incurred by the SBA Plan Trust, including the SBA Plan Administrator, and (e) fifth, Allowed Class 2 General Unsecured Claims. [see distribution priority set forth in par. 2.5 of Trust Agreement and See D/S at Summary of Plan for priority of distribution par 2.]

16

represent the SBA Plan Trust Administrator, as necessary and appropriate to comply with the terms of this Plan and the SBA Plan Trust Agreement without further authority from the Bankruptcy Court; (i) establish and maintain a Disputed Claims Reserve; (j) file appropriate state and Federal Tax returns and other reports on behalf of the SBA Plan Trust and pay Taxes or other obligations owed by the SBA Plan Trust; (k) exercise such other powers as may be vested in the SBA Plan Trust Administrator under the SBA Plan Trust Agreement or the Plan, or as deemed by the SBA Plan Trust Administrator to be necessary and proper to implement the provisions of the Plan and the SBA Plan Trust Agreement; (l) object to the allowance of any Claim on the Schedules or filed Proof of Claim if the SBA Plan Trust Administrator determines in good faith that the Claim is invalid or has previously been paid or satisfied; (m) pay any and all Quarterly Fees as provided in this Plan; and (n) dissolve the SBA Plan Trust in accordance with the terms of the SBA Plan Trust Agreement upon completion of the liquidation process.  Notwithstanding anything to the contrary in this Section, the SBA Plan Trust's primary purpose is liquidating the Assets transferred to it by the Debtor and making Distributions from the SBA Plan Trust to holders of Allowed Claims under the Plan.  In the event of any ambiguity or conflict between the terms of the SBA Plan Trust Agreement or any related document required or provided thereunder (other than the Confirmation Order), on the one hand, and the terms of the Plan and the Confirmation Order, on the other hand, the terms of the Plan and the Confirmation Order shall control, notwithstanding that the SBA Plan Trust Agreement and related documents required or thereunder may be incorporated in or annexed to the Plan or the Confirmation Order.

      5.2.1    **Tax Treatment.**  The SBA Plan Trust is intended to be treated for U.S. federal income tax purposes in part as a liquidating trust described in Treasury Regulation § 301.7701-4(d) and in part as one or more Disputed Claims reserves treated either as discrete trusts taxed pursuant to Section 641 *et seq.* of the Internal Revenue Code or as disputed ownership funds described in Treasury Regulation § 1.468B-9.  For federal income tax purposes, the transfer of Assets by the Debtor to the SBA Plan Trust will be treated in part as the transfer of Assets by the Debtor to the holders of Allowed Claims, followed by the transfer of such Assets by such holders to the SBA Plan Trust in exchange for interests in the trust, and in part as the transfer of Assets by the Debtor to one or more Disputed Claims reserves.  The holders of Allowed Claims will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Assets in the SBA Plan Trust (subject to such Liabilities), depending on their rights to distributions under the Plan.  As grantors and deemed owners of such Assets, the holders of Allowed  Claims will be required  to include in income their respective shares of the income, deductions, gains, losses and credits attributable to such Assets.   The holders of Allowed Claims will be required to use the values assigned to such Assets by the SBA Plan Trust Administrator for all federal tax purposes, including the recognition of income, deduction, gain or loss with respect to their Allowed Claims and any gain or loss recognized on the subsequent disposition of an Asset in which the holder holds an interest.

      The SBA Plan Trust Agreement will contain certain provisions to comply with IRS guidance for trusts treated as liquidating trusts.  Among other things, the agreement will (a) require that the SBA Plan Trust terminate no later than five (5) years after the Effective Date, subject to extension with Bankruptcy Court approval within six (6) months of the beginning of the extended term, (b) limit the SBA Plan Trust Administrator's investment powers, (c) limit the business

operations carried on by the SBA Plan Trust to activities reasonably necessary to and consistent with the SBA Plan Trust's liquidating purpose, (d) prohibit the SBA Plan Trust from receiving or retaining Cash or Cash equivalents in excess of an amount reasonably necessary to meet Claims and contingent Liabilities or to maintain the value of the SBA Plan Trust Assets during liquidation and (e) distribute, at least annually to the holders of Allowed Claims, the SBA Plan Trust's net income in excess of an amount reasonably necessary to meet senior Claims and contingent Liabilities (including Disputed Claims) and to maintain the value of the SBA Plan Trust Assets. SBA Plan Trust Assets reserved for holders of Disputed Claims will be treated as one or more Disputed Claims reserves for tax purposes, which will be subject to an entity-level Tax on some or all of their net income or gain. No holder of a Claim will be treated as the grantor or deemed owner of an Asset reserved for Disputed Claims until such holder receives or is allocated an interest in such Asset.

The SBA Plan Trust Administrator will file all tax returns for the SBA Plan Trust on a basis consistent with the treatment of the SBA Plan Trust in part as a liquidating trust (and grantor trust pursuant to Treasury Regulation § 1.671-1(a)) and, in part as one or more Disputed Claims Reserve taxed as discrete trusts or disputed ownership funds. Income tax liabilities of a Disputed Claims Reserve shall be paid from the SBA Plan Trust Assets allocable to such Disputed Claims Reserve.

The Debtor shall cause Harlyn Consulting LLC to perform any additional financial support/bookkeeping services required so that Miller Searles LLC can prepare and file the Debtor's Final Tax Returns, and the fees and costs of Harlyn Consulting LLC and Miller Searles LLC for these additional services shall be paid by the SBA Plan Trust Administrator from the Distribution Account. At least ten (10) Business Days prior to the filing, the Debtor's Final Tax Returns shall be provided to SBA Plan Trust Administrator for review and approval.

      5.2.2  **Disposition of Assets by the SBA Plan Trust Administrator.**  Subject to the provisions of the SBA Plan Trust Agreement, the SBA Plan Trust Administrator may, without further order of the Bankruptcy Court, conduct any sales or liquidations of non-Cash SBA Plan Trust Assets from the SBA Plan Trust on any terms it deems reasonable.

      5.2.3  **Settlement of Causes of Actions and Disputed Claims.**  Subject to the provisions of the Plan and SBA Plan Trust Agreement, the SBA Plan Trust Administrator may settle, compromise, abandon, or withdraw any Cause of Action, including any Avoidance Action, or any objection to a Disputed Claim, on any grounds or terms it deems reasonable, without further order of the Bankruptcy Court. The SBA Plan Trust Administrator will not have the power to settle the KPG-MCG Litigation which right to settle this action shall remain with the Debtor's management after the Effective Date as set forth in Article VIII. §8.3 herein.

      5.2.4  **Preservation of Causes of Action.**  On the Effective Date, the Assets of the Debtor's Estate shall not vest in the Debtor, but shall be fully and completely transferred to the SBA Plan Trust on or after the Effective Date. All Causes of Action are specifically preserved and shall be transferred to the SBA Plan Trust, with full authority of the SBA Plan Trust Administrator to administer, pursuant to the SBA Plan Trust Agreement (except that the KPG-MCG Litigation shall be administered by the management of the Debtor). The SBA Plan Trust Administrator shall administer the Assets in possession of the Estate after the Effective Date for

the benefit of the Estate.  On the Effective Date, the Debtor will transfer to the SBA Plan Trust Administrator, and the SBA Plan Trust Administrator will have the standing to pursue, as the representative of the Estate under section 1123(b) of the Bankruptcy Code, all Causes of Action, and the SBA Plan Trust Administrator may enforce any Causes of Action, (other than the KPG-MCG Litigation which shall be administered by the management of the Debtor), that the Debtor or the Estate may hold against any Person or Entity to the extent not expressly released under the Plan or by any Final Order of the Bankruptcy Court.

    5.2.5 **Fees and Expenses of the SBA Plan Trust.**  Except as otherwise ordered by the Bankruptcy Court, the reasonable expenses of the SBA Plan Trust (including the reasonable and necessary fees and expenses of any professionals assisting the SBA Plan Trust Administrator in carrying out his or her duties under the Plan) will be funded by the SBA Plan Trust Assets in accordance with the SBA Plan Trust Agreement without further order from the Bankruptcy Court. Of the SBA Plan Trust Assets, up to $100,000.00, may be used to cover the expenses of the SBA Plan Trust Administrator's non-contingency retained professionals.  The SBA Plan Trust Administrator shall be compensated by the SBA Plan Trust for his services. The SBA Plan Administrator shall be allowed (a) compensation for his services, payable after the he renders such services, in the amount of 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000, but not in excess of $50,000, 5 percent on any amount in excess of $50,000, but not in excess of $1,000,000, and 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in connection with the SBA Plan Trust by the SBA Plan Administrator, and (b) upon receipt of appropriate documentation, reimbursement of all reasonable out-of-pocket expenses incurred by the SBA Plan Administrator in the course of carrying out his duties in accordance with reasonable policies and procedures as may be adopted from time to time.

    5.3 **Funds.**  Upon the occurrence of the Effective Date, except for the Professional Fee Reserve, all of the other Assets under the control or possession of the Debtor shall be transferred to the SBA Plan Trust, free and clear of all Claims, Interests or Encumbrances.  The Professional Fee Reserve shall be utilized by the Disbursing Agent to fund payment of the Allowed Professional Fee Claims incurred through the Effective Date of the Plan (except for any Allowed Professional Fees of B&L which shall be paid from the recovery of the KPG-MCG Litigation).  The net proceeds of any recovery (after payment of the Allowed Professional Fee Claims of B&L and any other Allowed expenses incurred with respect to the KPG-MCG Litigation) from the KPG-MCG Litigation, or a KPG-MCG Settlement (as hereinafter defined), or a DAS Settlement (as hereinafter defined), shall be paid by the Debtor to the SBA Plan Trust.  The funds to effect the payments under this Plan will be generated from (i) the Debtor's Cash, (ii) the proceeds from the liquidation of the Debtor's Assets and (iii) any other funds that may be received by the Debtor or its Estate after the Effective Date and subsequently turned over to the SBA Plan Trust.

    5.4 **Documents.**  Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.  Upon the occurrence of the Effective Date and subject to the provisions of the Plan, the Debtor or the SBA Plan Trust Administrator, as applicable, is authorized and directed to execute and deliver all documents and

to take and to cause to be taken all action necessary or appropriate to transfer all Debtor's Assets to the SBA Plan Trust and execute and implement the provisions of this Plan.

5.5    **Disbursements and Investment of Funds.**    The Debtor or the SBA Plan Trust Administrator, as applicable, shall make the Distributions under this Plan after the Effective Date. The Debtor or SBA Plan Trust Administrator, as applicable, shall invest the funds consistent with §345(a) of the Bankruptcy Code.

5.6    **Final Decree.**    After consummation of the Plan and as soon as practical after there are no pending matters for which the case must remain open, the SBA Plan Trust Administrator shall file a motion to close the Chapter 11 Case and request that a final decree be issued.

5.7    **Winding Up Affairs.**    Following the Effective Date, neither the Debtor, nor the SBA Plan Trust Administrator, shall engage in any business activities or take any actions, except those necessary to consummate the Plan, liquidate the Assets and wind up the affairs of the Debtor's Estate, and effectuate fully, the SBA Plan Trust.

5.8    **Corporate Action.**    Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of the Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and will be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Creditors, or members of the Debtor.

5.9    **Survival of the Committee.**    Following the Effective Date, the Committee shall remain in effect until the later date of the final payment of all sums to be paid to holders of Class 2 Claims and the entry of the final decree.

5.10    **Management.**    The management of the Debtor consists of Scott Scungio, President, and Philip L. Borst, member. On and after the Effective Date, except for the KPG-MCG Litigation which shall be administered by the management of the Debtor and the Professional Fee Reserve, all of the Debtor's other Assets including Causes of Action shall be managed by the SBA Plan Trust Administrator. Upon the conclusion of the KPG-MCG Litigation by settlement or Final Order, and the filing and determination by the Bankruptcy Court of the final fee applications for allowance and payment of the Professional Fee Claims, the Debtor's management shall resign. The SBA Plan Trust Administrator shall maintain a fiduciary bond for the Assets transferred to the SBA Plan Trust, and administered by the SBA Plan Trust Administrator.

## ARTICLE VI
## Provisions Governing Distributions and General Provisions

6.1    **Distributions**.    Distributions from (i) the Professional Fee Reserve for the Allowed Professional Fee Claims and (ii) any recovery from KPG-MCG Litigation for the Allowed Professional Fee Claim of B&L shall be made by the Disbursing Agent. The SBA Plan Trust Administrator shall make all other Distributions to holders of Allowed Claims under the Plan from the Distribution Account in accordance with the provisions of the Plan. For the avoidance of doubt, Allowed Professional Fee Claims that exceed the Professional Fee Reserve shall be paid by

SBA Plan Trust Administrator from the Distribution Account in accordance with the provisions of the Plan.

6.2     **Method of Distribution**.

6.2.1    **In General**.  Except for the Allowed Professional Fee Claims which shall be paid by Distributions made by the Disbursing Agent from the Professional Fee Reserve and the Allowed Professional Fee Claim of B&L which shall be paid by the Disbursing Agent from the proceeds of any recovery from KPG-MCG Litigation, the SBA Plan Trust Administrator shall make the other Distributions provided by the Plan from the Distribution Account in accordance with the priorities designated by the Plan.   For the avoidance of doubt, Allowed Professional Fee Claims that exceed the Professional Fee Reserve (other than B&L) shall be paid by SBA Plan Trust Administrator from the Distribution Account in accordance with the provisions of the Plan. Nothing in this Plan shall prohibit the SBA Plan Trust Administrator from making interim distributions under the Plan to Class 2 Creditors provided that all claims of higher priority, including but not limited to, all fees and expenses incurred by the SBA Plan Trust, including the SBA Plan Trust Administrator, have been paid in full or that there are sufficient reserves maintained, in the sole discretion of the SBA Plan Trust Administrator for claims with higher priority as set forth in § 2.5 of the Trust Agreement.

6.2.2    **Compliance with Tax Requirements**.  The SBA Plan Trust Administrator in making Distributions under the SBA Plan Trust shall comply with all tax withholding and reporting imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan or SBA Plan Trust shall be subject to such withholding and reporting requirements.  The SBA Plan Trust Administrator may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the SBA Plan Trust Administrator the necessary information to comply with any withholding requirements of any Governmental Unit.  Any property so withheld will then be paid by the SBA Plan Trust Administrator to the appropriate authority.  If the holder of an Allowed Claim fails to provide the SBA Plan Trust Administrator the information necessary to comply with any withholding requirements of any Governmental Unit within four months from the date of first notification by the SBA Plan Trust Administrator to the holder of the need for such information, then the holder's Distribution shall be treated as an undeliverable Distribution and shall be forfeited, and such Distribution, together with any interest earned thereon, and shall become an Asset to be reserved or distributed, as the case may be, in accordance with the provisions of the Plan and the SBA Plan Trust Agreement.

6.2.3    **Transmittal of Distributions**.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or provided in the Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the holder with provisions of the Plan to (i) the latest mailing address filed with the Court for the holder of an Allowed Claim entitled to a Distribution, (ii) the latest mailing address filed with the Court for a holder of a filed power of attorney designated by the holder of such Claim to receive Distributions, (iii) the latest mailing address filed with the Court for the holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (iv) if no such mailing address has been filed with the Court, the mailing address reflected on the Schedules or in the Debtor's books and records.

6.2.4 **Time Bar to Cash Payments.** Checks issued by the Debtor or the SBA Plan Trust Administrator with respect to Allowed Claims will be null and void if not cashed within ninety (90) days of the date of their issuance. Requests for reissuance of any check shall be made to the Debtor, or SBA Plan Trust Administrator, as applicable, by the holder of the Allowed Claim with respect to which the check originally was issued. Any claim with respect to such a voided check must be made on or before ninety (90) days after the date of issuance of the check. After the date, all claims with respect to void checks will be forfeited, discharged and forever barred, and the Cash, including interest earned, if any, shall be irrevocably revested in the SBA Plan Trust.

6.2.5 **Distributions of Unclaimed Property.** Any Distribution of property (Cash or otherwise) under the Plan which is unclaimed after ninety (90) days following any Distribution date shall revert back to the SBA Plan Trust, and such Distribution, together with any interest earned thereon, shall become an Asset to be distributed in accordance with the provisions of the Plan and the SBA Plan Trust. Upon such reversion, the holder of such Claim or their successors and assigns shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

6.2.6 **Means of Cash Payment**. Cash payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.2.7 **Setoffs.** The Debtor and the SBA Plan Trust Administrator, as applicable, may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtor or SBA Plan Trust Administrator may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

6.2.8 ***De Minimis*** **Distributions.** No interim cash payment of less than one hundred dollars ($100.00) will be made by the SBA Plan Trust Administrator to any Creditor unless a request is made in writing to the SBA Plan Trust Administrator to make such a payment; provided, however, such Creditor will receive, at the time of the final Distribution, a Distribution equal to the cumulative Pro-Rata Distribution paid to all other holders of Allowed Claims in its Class.

6.2.9 **Fractional Dollars.** Notwithstanding any other provision of the Plan, the SBA Plan Trust Administrator shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

6.2.10 **Saturday, Sunday or Legal Holiday.** If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

## ARTICLE VII
## Executory Contracts

7.1 **Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases (other than any performance bonds, and insurance contracts) that exist between the Debtor and any Entity shall be deemed automatically rejected by the Debtor on the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, or (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections on the Effective Date, pursuant to §§ 365 and 1123 of the Bankruptcy Code. Nothing contained herein is intended to limit or alter the effect of § 365(g)(1) of the Bankruptcy Code.

7.2 **Rejection Damages Bar Date**. If the rejection by the Debtor (pursuant to the Plan or otherwise) of any executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or the Debtor's Estate, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order, or (b) other notice or order that the executory contract and unexpired lease has been rejected; provided, however, that the foregoing requirement to file a Proof of Claim shall not be applicable to any such Claim that was previously allowed by Final Order of the Bankruptcy Court. The SBA Plan Trust Administrator has the right to object to the Allowance any such claim.

## ARTICLE VIII
## Retention of Causes of Action

8.1 **Retention and Enforcement and Waiver of Claims.** Pursuant to § 1123(b) of the Bankruptcy Code, the Debtor's Estate shall retain and shall have all requisite standing under the law to commence, continue or enforce any and all claims, which rights shall be indefeasibly transferred and assigned to the SBA Plan Trust. For the avoidance of doubt, pursuant to § 1123(b) of the Bankruptcy Code, the Debtor or the SBA Plan Trust Administrator, as applicable, shall retain and shall have all requisite standing under the law to commence, continue or enforce all claims of the Debtor and its Estate against (i) KPG-MCG, its respective officers, directors, agents and employees their successors and assigns, and (ii) DAS, its respective officers, directors, agents and employees, and their successors and assigns, and (iii) pursue any and all other Causes of Action of the Debtor, including the Avoidance Actions. The SBA Plan Trust Administrator, subject to the provisions of Article VIII. §8.3 below, in its sole discretion, may commence and prosecute such Causes of Action (or any one of them). The SBA Plan Administrator shall have the right, but not the obligation, to commence and prosecute the Causes of Action (or any of them). The proceeds of any recovery shall be disbursed according to the terms of the Plan. Subject to the provisions of Article VIII. §8.3, these claims shall be transferred to and vested in the SBA Plan Trust with SBA Plan Trust Administrator as the duly appointed representative of the Debtor's Estate.

8.2 **Powers**. Except as set forth in the Plan, the SBA Plan Trust Agreement, and in Article VIII. §8.3 below with respect to the KPG-MCG Litigation which shall be administered by the Debtor's management, the SBA Plan Trust Administrator shall have the right to commence,

settle, compromise, sell, assign, terminate, release, discontinue or abandon any Cause of Action, or assert or defend any other claims held by the Debtor's Estate from time to time in its sole discretion without approval of the Bankruptcy Court or the Debtor.

8.3    **KPG-MCG Litigation.**  As of the Effective Date, the Debtor's management shall retain the right to prosecute, settle, or compromise the pending KPG-MCG Litigation.  Within thirty (30) days of entering into any Settlement of the KPG-MCG Litigation, including with KPG-MCG or DAS (the "KPG-MCG Settlement" or "DAS Settlement"), the Debtor shall file a motion with the Bankruptcy Court to approve the KPG-MCG Settlement or DAS Settlement under the provisions of Bankruptcy Rule 9019 with notice to the SBA Plan Trust Administrator, persons receiving documents pursuant to Bankruptcy Rule 2002, and the affected parties (or their counsel). The SBA Plan Trust Administrator shall have the right to object to any proposed KPG-MCG Settlement or DAS Settlement which it believes in its sole discretion is not in the best interest of the SBA Plan Trust or its beneficiaries.   The net proceeds of any recovery (after payment of the Allowed Professional Fee Claims of B&L and any other Allowed expenses incurred with respect to the KPG-MCG Litigation) from the KPG-MCG Litigation, or a KPG-MCG Settlement, or a DAS Settlement, shall be paid by the Disbursing Agent to the SBA Plan Trust.

## ARTICLE IX
### Procedures for Resolving Contingent, Unliquidated, and Disputed Claims

9.1    **Applicability.** All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of this Article IX.  All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article IV.

9.2    **Allowance of Claims.** After the Effective Date, the SBA Plan Trust Administrator (and the Debtor, as applicable) shall have and retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtor or SBA Plan Trust Administrator, on the one hand, and the holder of such Claim, on the other.

9.3    **Claims Administration Responsibilities.**  Except as otherwise expressly provided in the Plan, from and after the Effective Date, the SBA Plan Trust Administrator or Debtor, as applicable, shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

9.4    **Estimation of Claims.** The Debtor (before the Effective Date) or SBA Plan Trust Administrator (on and after the Effective Date) may at any time request that the Bankruptcy Court to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall

retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person. If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or the SBA Plan Trust Administrator (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

9.5    **No Distributions Pending Allowance.** No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtor or SBA Plan Trust Administrator, on the one hand, and the holder of such Claim, on the other.

9.6    **Distributions after Allowance.** To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

9.7    **Disputed Claims Reserve.** The provisions of this Article IX., §9.7 apply only to the extent that any Claim remains Disputed as of any Distribution Date.

9.7.1    If any Claim remains Disputed as of any Distribution Date, the undistributed portion of Distribution Account shall be held in a segregated account. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtor, the SBA Plan Trust Administrator, the Disbursing Agent, and holders of the Disputed Claims) shall be required to report for tax purposes in a manner consistent with the foregoing. The Disputed Claims Reserve shall be responsible for payment, out of the Assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its Assets.

9.7.2    The Debtor or SBA Plan Trust Administrator, as applicable, shall determine the amount of the Disputed Claims Reserve, if applicable, as of the initial Distribution Date, based on the least of: (a) the asserted amount of the Disputed Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article IX. §9.4. if, after the Effective Date, a motion is filed by SBA Plan Trust Administrator to estimate such Claim; (c) the amount otherwise agreed to by the Debtor (or SBA Plan Trust Administrator, if after the Effective Date) and the holders of such Disputed Claims; or (d) any amount otherwise approved by the Bankruptcy Court. Upon each Distribution Date, the SBA Plan Trust Administrator shall deposit into the Disputed Claims Reserve an amount of Cash equal to the amount sufficient to make the Distributions to which holders of Disputed

Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed Claims were Allowed Claims as of such date.

9.7.3    If a Disputed Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed Claim becomes an Allowed Claim (or, if the Disputed Claim becomes an Allowed Claim after the final Distribution Date, as soon as practicable after Allowance), Distribute to the holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such holder would have received in that Distribution and all prior Distributions (if any) if such holder's Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

9.7.4    If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the Disputed Claims Reserve, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to holders of Allowed Claims.

9.7.5    If any Assets remain in the Disputed Claims Reserve after all Disputed Claims have been resolved, such Assets shall be Distributed Pro Rata to all holders of Allowed Claims on the next Distribution Date (or, if all Disputed Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

9.8    **Adjustment to Claims Register without Objection.** Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by Notice and SBA Plan Trust Administrator's stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

9.9    **Time to File Objections to Claims.** Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time.

9.10    **Treatment of Untimely Claims.** Except as provided herein or otherwise agreed, any and all Creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distribution.  No Distributions shall be made on account of any Proof of Claim filed after the applicable Bar Date.

## ARTICLE X
## Retention of Jurisdiction

10.1    Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including, among others, the following matters:

10.1.1 modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

10.1.2  correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the SBA Plan Trust Agreement or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, so that the intended effect of the Plan may be substantially realized thereby;

10.1.3  assure performance by the SBA Plan Trust Administrator of his or her obligations to make distributions under the SBA Plan Trust Agreement and the Disbursing Agent of its obligations to make Distributions under the Plan;

10.1.4 enforce and interpret the terms and conditions of the Plan, the Plan Documents, and the SBA Plan Trust Agreement;

10.1.5  enter such orders or judgments, including injunctions (a) as are necessary to enforce the title, rights and powers of SBA Plan Trust, and (b) to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and all contracts, instruments, and other agreements or documents created in connection with the Plan or the Confirmation Order;

10.1.6  hear and determine any and all motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

10.1.7  hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Case;

10.1.8  hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331, or 503(b) of the Bankruptcy Code;

10.1.9  hear and determine any Causes of Action arising during the period from the Petition Date to the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtor, the SBA Plan Trust, and their respective representatives;

10.1.10      hear and determine any and all motions for the rejection, assumption or assignment of Executory Contracts or Unexpired Leases and the Allowance of any Claims resulting therefrom;

10.1.11      hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.1.12      hear and determine the Allowance and/or Disallowance of any Claims, including Administrative Expense Claims, against or Interests in the Debtor or its Estate, including any objections to any such Claims or Interests, and the compromise and settlement of any Claim, including Administrative Expense Claims, against or Interest in the Debtor or its Estate;

10.1.13      hear and resolve disputes concerning any reserves under the Plan or

27

the administration thereof;

10.1.14 hear and determine all questions and disputes regarding title to the Assets of the Debtor, its Estate or the SBA Plan Trust;

10.1.15 enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if Distributions pursuant to the Plan or Distributions under the SBA Plan Trust is enjoined or stayed;

10.1.16 hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case; and

10.1.17 enter a Final Order or decree concluding or closing the Chapter 11 Case.

## ARTICLE XI
## Miscellaneous

11.1 **Choice of Law.** Except to the extent superseded by the Bankruptcy Code or other federal law, the rights, duties and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to the choice of law rules thereof.

11.2 **Amendment or Modification of the Plan.**

11.2.1 **Plan Modifications.** The Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to jointly amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires additional disclosure. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtor may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

11.2.2 **Other Amendments.** Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; provided that notice of such proposed adjustments or modifications is filed on the docket at least five (5) days before the Effective Date and no creditor objects to such adjustments or modifications before the Effective Date. In the event such an objection is filed, the Bankruptcy Court shall rule on the objection.

11.3 **Request for Expedited Determination of Taxes**. The Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

11.4 **Non-Severability of Plan Provisions**. If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor or SBA Plan Trust Administrator (as the case may be), and (3) non-severable and mutually dependent.

11.5 **Notices**. All notices, requests, and demands to or upon the Debtor or Committee to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

      If to the Debtor, addressed to:

            Scungio Borst & Associates, LLC
            Attn:  Scott P. Scungio
            4 Manchester Road, P.O. Box 203
            Media, PA 19063

            With a copy to counsel:

            Aris J. Karalis, Esquire
            Robert W. Seitzer, Esquire
            Robert M. Greenbaum, Esquire
            Karalis PC
            1900 Spruce Street
            Philadelphia, PA 19103
            215-546-4500

(b)   If to the Committee, addressed to its counsel:

Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell and Hippel
1500 Market Street, Suite 3400,
Philadelphia PA 19102
(215) 665-3000

11.6   **Notices to Other Persons**.  After the occurrence of the Effective Date, the Debtor or the SBA Plan Trust Administrator shall have authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; provided, however, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, the Debtor and SBA Plan Trust Administrator are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those Persons that have filed such renewed requests.

11.7   **Entire Agreement**.   The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

11.8   **Filing of Reports and Payment of Quarterly Fees**.

11.8.1   Until the occurrence of the Effective Date, the Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report, and shall timely pay to the United States Trustee the Quarterly Fees due through and including the Effective Date.

11.8.2  Following the Effective Date, the SBA Plan Trust Administrator shall file a UST Form 11-PCR, Post Confirmation Report, every calendar quarter when they come due and each shall timely pay to the United States Trustee the Quarterly Fees when due and payable, provided, for the avoidance of doubt, that only the Debtor shall pay Quarterly Fees related to the disbursement of Professional Fee Reserve Amount, and the SBA Plan Trust Administrator shall be obligated to pay Quarterly Fees for all disbursements made from the Distribution Account.  For the avoidance of doubt, there will be no Quarterly Fees due or payable by the Debtor for any non-cash assets transferred on or after the Effective Date to the SBA Plan Trust.

11.8.3  Following the Effective Date, the Debtor shall file a UST Form 11-PCR, Post Confirmation Report with respect to disbursements from the Professional Fee Reserve or disbursement from any recovery from the KPG-MCG Litigation on account of an Allowed Professional Fee Claim of B&L. Upon the Debtor having disbursed all the monies in the Professional Fee Reserve, the Debtor shall file a final Post Confirmation Report and pay to the United States Trustee the Quarterly Fee due for period covered by the final Post Confirmation Report and thereafter the Debtor shall not be obligated to pay any additional Quarterly Fees.

11.8.4 The SBA Plan Trust Administrator shall remain obligated to pay the Quarterly Fees to the Office of United States Trustee for the SBA Plan Trust until the earlier of: (1) the Chapter 11 Case is closed; (2) the entry of a final decree in the Chapter 11 Case; (3) the conversion of the Chapter 11 Case to a case under another chapter of the Bankruptcy Code; or (4) the dismissal of the Chapter 11 Case.

11.9    **No Discharge of Debtor**.  The Confirmation Order shall not discharge the Debtor from any debt and liability that arose before the confirmation, as provided in § 1141(d)(3)(A) of the Bankruptcy Code.

11.10    **Binding Effect**.  The Plan will be binding upon and inure to the benefit of the Debtor, the SBA Plan Trust Administrator, and the holders of Allowed Claims, and their respective successors and assigns.

11.11    **Automatic Stay**.  The automatic stay of § 362 of the Code shall remain in effect until the Effective Date.

11.12    **Destruction of Records**.  After the Effective Date, the Debtor, shall continue to retain the Debtor's business records for eighteen (18) months.  The cost or expense of retention shall be paid by the SBA Plan Trust from the Distribution Account, without need for further Court approval.  The Debtor shall retain all computers and computer hardware, and shall deliver to the SBA Plan Trust Administrator all passwords for access to the Debtor's books and records.

11.13    **Exculpation**.  **From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Case, the negotiation of the Plan Documents, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or liquidation of the Assets of the Debtor (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith, willful misconduct, or fraud). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence**.

[*SIGNATURE PAGE TO FOLLOW*]

**SCUNGIO BORST & ASSOCIATES, LLC**

By:    /s/ Scott P. Scungio
        Scott P. Scungio,
        Sole managing member of Scungio &
        Company LLC, Member of the Debtor

**KARALIS PC**

By:    /s/ Aris J. Karalis
        Aris J. Karalis, Esquire
        Robert W. Seitzer, Esquire
        Robert M. Greenbaum, Esquire
        1900 Spruce Street
        Philadelphia, PA  19103
        215-546-4500
        Attorneys for the Debtor

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ESTATE OF SCUNGIO BORST & ASSOCIATES, LLC**

By:    /s/ Edmond M. George
        Edmond M. George, Esquire
        Michael D. Vagnoni, Esquire
        OBERMAYER REBMANN MAXWELL & HIPPEL LLP
        Suite 3400
        1500 Market Street
        Philadelphia PA 19102
        (215) 665-3000
        Attorneys for the Official Committee of Unsecured Creditors

[SIGNATURE PAGE TO JOINT PLAN OF LIQUIDATION]

## **EXHIBIT 1.65**

### **SBA PLAN TRUST AGREEMENT**

## SBA PLAN TRUST AGREEMENT

This SBA Plan Trust Agreement (this "Trust Agreement") dated as of _____, 2023, and effective as of the Effective Date (as defined in the Plan), is entered in accordance with the Joint Plan of Liquidation proposed by Scungio Borst & Associates, LLC, Debtor in Possession (the "Debtor"), and the Official Committee of Unsecured Creditors of the Debtor's Estate (the "Committee"), dated as of September 20, 2023 [D.I. ___] (as it may be amended, modified, or supplemented, the "Plan"), by the Debtor and Committee; [●], as the SBA Plan Trust Administrator (together with any successor serving in such capacity, the "SBA Plan Trust Administrator"; and the members of the SBA Plan Trust Advisory Board who are the individuals further identified on the signature pages hereto (together with any successors serving in such capacity, the "SBA Plan Trust Advisory Board".

## RECITALS

**WHEREAS**, on March 11, 2022, the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Chapter 11 Case");

**WHEREAS**, on _____, the Bankruptcy Court entered an Order [D.I. __] (the "Confirmation Order") which approved the Plan, and without limitation, authorized the establishment of the SBA Plan Trust (as defined below) and the execution of this Trust Agreement;

**WHEREAS**, this Trust Agreement is executed to establish the SBA Plan Trust (the "SBA Plan Trust") pursuant to the Plan, to administer and liquidate the SBA Plan Trust Assets (defined below) and to distribute the proceeds thereof to holders of Allowed Claims under the Plan in accordance with the priorities and terms of the Plan;

**WHEREAS**, holders of Allowed Claims under the Plan shall mean (a) Allowed Administrative Expense Claims, including the Allowed Professional Fee Claims, (b) Allowed Class 1 Priority Non-Tax Claims, (c) Allowed Priority Tax Claims, (d) the fees and expenses incurred by the SBA Plan Trust, including the SBA Plan Administrator, and (e) Allowed Class 2 General Unsecured Claims, as each of these terms are defined in the Plan;

**WHEREAS**, the Effective Date of the Plan has occurred on or about the date hereof;

**WHEREAS**, pursuant to Treasury Regulation Section 301.7701-4(d), the SBA Plan Trust shall be created for the primary purpose of administering and liquidating the SBA Plan Trust Assets for the benefit of the holders of one or more beneficial interests in the SBA Plan Trust (each a "Beneficial Interest"), which represents the rights to receive Distributions from the SBA Plan Trust under the Plan (each a "Beneficiary" and collectively, the "Beneficiaries"), in accordance with the terms of this Trust Agreement and the Plan and for making all Distributions under the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the purposes of the Plan and the Confirmation Order; and

**WHEREAS**, the SBA Plan Trust is intended to qualify as a "grantor trust" for United States federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), with the Beneficiaries to be treated as the grantors of the SBA Plan Trust and deemed to be the owners of the SBA Plan Trust Assets (subject to the rights of the Beneficiaries of the SBA Plan Trust), and consequently, the transfer of the SBA Plan Trust Assets to the SBA Plan Trust shall be treated as a deemed transfer of those assets by the Debtor and its Estate to the Beneficiaries followed by a deemed transfer by such Beneficiaries to the SBA Plan Trust for federal income tax purposes; and

**WHEREAS**, under the terms of the Plan and the Confirmation Order, as of the Effective Date, the SBA Plan Trust Assets shall be transferred to and shall be deemed to have irrevocably transferred to the SBA Plan Trust, for and on behalf of the Beneficiaries, with no reversionary interest in the Debtor and its Estate in the SBA Plan Trust Assets existing as of the Effective Date.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

**ARTICLE I**
**DECLARATION OF TRUST**

**1.1     SBA Plan Trust Assets.**  The term "SBA Plan Trust Assets" shall mean, except for the Professional Fee Reserve, all Assets of the Debtor in existence as of the Effective Date of the Plan.

**1.2     Debtor's Creation and Purpose of the Plan Trust.**  Upon the Effective Date, the SBA Plan Trust shall be created for the primary purpose of liquidating and distributing the SBA Plan Trust Assets to the Beneficiaries in accordance with this Trust Agreement, the Plan, the Confirmation Order, and applicable tax statutes, rules and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business. Accordingly, the SBA Plan Trust Administrator shall hold the SBA Plan Trust Assets pursuant to the terms of this Trust Agreement (and shall not unreasonably prolong the duration of the SBA Plan Trust) by engaging in the following activities: (a) determining the identity of Beneficiaries hereunder by reconciling the Claims against the Debtor consistent with the terms of this Trust Agreement; (b) making all required Distributions to the Beneficiaries as provided for under the confirmed Plan and this Trust Agreement; (c) establishing and administering any necessary reserves for Claims, including the Disputed Claims Reserve, that may be required, all in accordance with this Trust Agreement; (d) taking other actions as may be necessary to effectuate the foregoing. The SBA Plan Trust will not hold itself out as an investment company and will not conduct a trade or business. This Trust Agreement is intended to create a liquidating trust for federal income tax purposes and to the extent provided by law shall be governed and construed as such a trust and any ambiguity herein shall be construed consistent with this intention and this Trust Agreement may be amended to comply retroactively with applicable federal income tax law.

**1.3     Declaration of Trust.**  For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to the terms of the Plan and the

2

Confirmation Order, the Debtor and the SBA Plan Trust Administrator have executed this Trust Agreement and, as of the Effective Date, the Debtor irrevocably transfers to the SBA Plan Trust, all of the rights, title, and interests of the Debtor in and to the SBA Plan Trust Assets, free and clear of liens, claims, and encumbrances of any kind to have and to hold unto the SBA Plan Trust and its successors and assigns forever, under the Plan and the Confirmation Order for the benefit of the Beneficiaries and their successors and assigns, all as provided for in this Trust Agreement.

1.4     **Vesting of Assets.**   On the Effective Date, notwithstanding any prohibition of assignability under non-bankruptcy law, the SBA Plan Trust Assets shall be vested in the SBA Plan Trust in accordance with applicable law and applicable bankruptcy law, which SBA Plan Trust also shall be authorized to obtain, liquidate, and collect all of the SBA Plan Trust Assets in the possession of third parties.  All such SBA Plan Trust Assets shall be delivered to the SBA Plan Trust free and clear of interests, claims, liens, and/or encumbrances of any kind.  The SBA Plan Trust Administrator shall have no duty to arrange for any of the transfers contemplated in this Section 1.4 and shall be conclusively entitled to rely on the legality and validity of such transfers. Upon the transfer of the SBA Plan Trust Assets to the SBA Plan Trust, the Debtor will not have any interest in or with respect to such SBA Plan Trust Assets or the SBA Plan Trust (except that the KPG-MCG Litigation shall be administered by the management of the Debtor).

1.5     **Privileges.**   As may be necessary, upon the Effective Date, in connection with any transferred Avoidance Actions and Causes of Action, the Debtor and the Committee hereby transfer, assign and deliver to the SBA Plan Trust Administrator, without waiver, and the SBA Plan Trust Administrator hereby assumes, all of the Debtor's and the Committee's respective rights, title and interests in and to any attorney-client privilege or other privilege or immunity, but excluding any work-product privileges of the Debtor (collectively, the "Privileges"), attaching to any documents or communications (whether written or oral) directly associated with the Avoidance Actions and Causes of Action for the purpose of the prosecution thereof, which may vest in the SBA Plan Trust Administrator, in trust, and, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Beneficiaries.  Other than the Privileges with respect to the Avoidance Actions and Causes of Action, no other privileges, including the attorney-client privilege and the work-product privilege of the Debtor and the Committee to which the Debtor or the Committee are entitled, shall be vested in or available for assertion by, or waiver by, the SBA Plan Trust Administrator on behalf of the SBA Plan Trust.  To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through this Trust Agreement, the Debtor and the Committee shall, on the Effective Date, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing.

1.6     **Funding of the Trust.**   On the Effective Date, the SBA Plan Trust shall be funded with the SBA Plan Trust Assets, as provided for in the Plan and in the Confirmation Order.

1.7     **Acceptance by SBA Plan Trust Administrator.**   The SBA Plan Trust Administrator hereby accepts the trust imposed upon it by this Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Trust Agreement, the Plan and the Confirmation Order.  In connection with and in furtherance of the purposes of the SBA Plan Trust, the SBA Plan Trust Administrator hereby accepts the transfer of the SBA Plan Trust Assets.

**1.8    Treatment of Transfer of SBA Plan Trust Assets; SBA Plan Trust Interests.**
For federal income tax purposes, all parties, including, without limitation, the Debtor, the SBA
Plan Trust Administrator, and the Beneficiaries shall treat the transfer of SBA Plan Trust Assets,
in accordance with this Trust Agreement, as: (a) a transfer of SBA Plan Trust Assets to the
Beneficiaries with each Beneficiary deemed to receive an undivided interest in the specific SBA
Plan Trust Assets pursuant and to the extent of the distribution rights set forth herein, the
liquidation proceeds of which such Beneficiary is entitled to share in pursuant to this Trust
Agreement, having a value that equals, as nearly as possible, the amount which such Beneficiary
would receive, if on the Effective Date, and subject to the Plan, if all Disputed Claims (defined
below) are treated as Allowed Claims hereunder, and all SBA Plan Trust Assets are liquidated,
converted to Cash and distributed to Beneficiaries on account of Allowed Claims of all sorts and
on account of SBA Plan Trust Administrative Expenses (defined below) under this Trust
Agreement; followed by (b) a transfer to the SBA Plan Trust by each such Beneficiary of the
undivided interest in that portion of the SBA Plan Trust Assets such Beneficiary was deemed to
receive pursuant to subparagraph (a) above, and each such holder of an identified and registered
interest hereunder shall be treated as the grantor and owner of such Beneficiary's respective portion
of the SBA Plan Trust.

**1.9    Name of SBA Plan Trust.**  As set forth above, the SBA Plan Trust established
hereby shall be known as the "SBA Plan Trust".

**ARTICLE II**
**THE SBA PLAN TRUST ADMINISTRATOR**

**2.1    Appointment.**  There shall be one (1) SBA Plan Trust Administrator.  The initial
SBA Plan Trust Administrator shall be [●].  As described in Section 2.2 of this Trust Agreement,
the SBA Plan Trust Administrator shall have all the rights, powers, and duties set forth herein, the
Plan, the Confirmation Order and pursuant to applicable law[1] for fulfilling the purposes of the
SBA Plan Trust.  The SBA Plan Trust Administrator's appointment shall continue until the earlier
of (a) the termination of the SBA Plan Trust, or (b) the SBA Plan Trust Administrator's death,
resignation, or removal.

**2.2    General Powers and Authority.**  Except as otherwise provided in this Trust
Agreement, the Plan or the Confirmation Order, the SBA Plan Trust Administrator may control
and exercise authority over the SBA Plan Trust Assets, over the acquisition, management, and
disposition thereof, and over the management and conduct of the business of the SBA Plan Trust.
No person dealing with the SBA Plan Trust shall be obligated to inquire into the SBA Plan Trust
Administrator's authority in connection with the acquisition, management, or disposition of SBA
Plan Trust Assets.  Without limiting the foregoing, but subject to the provisions of this Trust
Agreement and applicable law, the SBA Plan Trust Administrator, supervised by the SBA Plan

---

[1]  When used here and throughout this Trust Agreement, "applicable law" shall mean federal, state, local and
international laws, rules and regulations, as applicable, in jurisdictions in which the Debtor (as reorganized or
liquidated), and the SBA Plan Trust Assets are organized and/or held or as provided by contract, stipulation, written
agreement of the parties or order of a court having jurisdiction.

Trust Advisory Board and subject to the provisions of Section 3.3 hereof, shall be with respect to the SBA Plan Trust and the SBA Plan Trust Assets expressly authorized to:

(a)     Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the SBA Plan Trust Assets by any officer, director, shareholder, or other party acting in the name of the Debtor or its Estate, with like effect as if duly authorized, exercised, and taken by action of such officers, directors, shareholders, or other party;

(b)     Open and maintain bank accounts on behalf of or in the name of the SBA Plan Trust, calculate and make distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the SBA Plan Trust;

(c)     Perform the duties, exercise the powers, and assert the rights of a trustee under sections 108 and 1106 of the Bankruptcy Code, and, as provided under the Plan and the Confirmation Order, be a representative of the Debtor's Estate for purposes of section 1123(b)(3) of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling any Avoidance Actions and Causes of Action (except that the KPG-MCG Litigation shall be administered by the management of the Debtor), enforcing contracts, and asserting claims, defenses, offsets, and Privileges (in accordance with Section 1.5 of this Trust Agreement), to the extent not inconsistent with the status of the SBA Plan Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes;

(d)     Subject to the limitations provided herein, receive, manage, invest, supervise, and protect the SBA Plan Trust Assets;

(e)     Hold legal title to any and all SBA Plan Trust Assets or cause such title or evidence thereof to be held by any nominee on such terms and in such manner as the SBA Plan Trust Administrator shall determine in his or her sole discretion;

(f)     Subject to the applicable provisions of this Trust Agreement, collect, liquidate, recover or compel turnover of, or abandon all SBA Plan Trust Assets;

(g)     Review, and where appropriate, reconcile, dispute or object to Claims, exercise offsets and defenses to Claims, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims, subject to the provisions of this Trust Agreement and the Plan, all without the need for prior approval of the Bankruptcy Court;

(h)     commence, prosecute, compromise, settle, arbitrate, withdraw, abandon, or resolve any Causes of Action or Avoidance Actions, subject to the provisions of this Trust Agreement and the Plan, all without the need for prior approval of the Bankruptcy Court;

(i)     Seek a determination of tax liability under section 505 of the Bankruptcy Code (if the Chapter 11 Case is still pending); file, if necessary, any and all tax and information

returns required with respect to the SBA Plan Trust; make tax elections for and on behalf of the SBA Plan Trust; and pay taxes, if any, payable for and on behalf of the SBA Plan Trust;

(j)    Pay all lawful expenses, debts, charges, taxes, and liabilities of the SBA Plan Trust;

(k)    Take all other actions consistent with the provisions of this Trust Agreement that the SBA Plan Trust Administrator deems reasonably necessary or desirable to administer the SBA Plan Trust and comply with applicable law;

(l)    Supervise, administer, and make distributions to the Beneficiaries as provided for in this Trust Agreement;

(m)    Withhold from the amount distributable to any person (as defined in section 101(41) of the Bankruptcy Code, "Person") or entity (as defined in section 101(15) of the Bankruptcy Code, "Entity") such amount as may be sufficient to pay any tax or other charge the SBA Plan Trust Administrator has determined, based upon the advice of its agents and/or professionals, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof;

(n)    Enter into any agreement or execute any document or instrument required by or consistent with this Trust Agreement and perform all obligations thereunder;

(o)    Subject to Section 5.5 of this Trust Agreement, carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable;

(p)    Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under this Trust Agreement, the Plan, the Confirmation Order, and as may be applicable, in respect of the Plan;

(q)    Employ, compensate, and as may be necessary in the SBA Plan Trust Administrator's sole discretion, indemnify and exculpate, professionals and other agents, including agreeing to compensation on a contingency fee basis (the SBA Plan Trust Administrator may employ, as its counsel, counsel to the Committee and Debtor) without the need for prior approval of the Bankruptcy Court; and

(r)    Invest in demand and time deposits in banks or savings institutions, or temporary investments such as short-term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

**2.3    Limitations on the SBA Plan Trust Administrator.**  Notwithstanding anything to the contrary under applicable law and this Trust Agreement, the SBA Plan Trust Administrator shall not do or undertake any of the following:

(a)      Take, or fail to take, any action that would jeopardize treatment of the SBA Plan Trust as a "liquidating trust" for federal income tax purposes;

(b)      Receive transfers of any listed stocks or securities or any readily-marketable assets, except as is absolutely necessary or required under applicable law; provided, however, that in no event shall the SBA Plan Trust Administrator receive any such investment that would jeopardize treatment of the SBA Plan Trust as a "liquidating trust" for federal income tax purposes;

(c)      Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust", within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations or any modification in the IRS guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise;

(d)      Receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or 50% or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Confirmation Order; provided, however, that in no event shall the SBA Plan Trust Administrator receive or retain any such asset or interest that would jeopardize treatment of the SBA Plan Trust as a "liquidating trust" for federal income tax purposes;

(e)      Make the election described in Section 1.468B-9 of the Treasury Regulation to treat any portion of the SBA Plan Trust subject to Disputed Claims as a "disputed ownership fund." Neither the SBA Plan Trust, nor the SBA Plan Trust Administrator, shall take any action that would result in the SBA Plan Trust becoming subject to registration as an "investment company" pursuant to the Investment Company Act of 1940, as amended;

(f)      Commingle any of the SBA Plan Trust Assets with his or her own property or the property of any other Entity; and

(g)      Notwithstanding any of the foregoing, the SBA Plan Trust Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere with the SBA Plan Trust Administrator's administration of the SBA Plan Trust.

**2.4     Compensation of the SBA Plan Trust Administrator and Reimbursement of Expenses.**  The SBA Plan Trust Administrator shall be entitled to receive reasonable compensation in connection with the performance of his or her duties, plus reimbursement of all reasonable and documented out-of-pocket expenses incurred by the SBA Plan Trust Administrator or any personnel employed by the SBA Plan Trust Administrator in connection with the SBA Plan Trust Administrator's performance under this Trust Agreement in accordance with the SBA Plan Trust Budget (defined below).   The SBA Plan Trust Administrator shall be compensated by the SBA Plan Trust for his services. The SBA Plan Administrator shall be allowed (a) compensation for his services, payable after the he renders such services, in the amount of 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000, but not in excess of $50,000, 5 percent on any amount in excess of $50,000, but not in excess of $1,000,000, and 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in connection with the SBA Plan Trust by the SBA Plan Administrator, and (b) upon receipt of appropriate documentation, reimbursement of all reasonable out-of-pocket expenses incurred by the SBA Plan Administrator in the course of carrying out his duties in accordance with reasonable policies and procedures as may be adopted from time to time.  Any successor to the SBA Plan Trust Administrator shall also be entitled to reasonable compensation in connection with the performance of his or her duties, plus reimbursement of reasonable and documented out-of-pocket expenses in accordance with the SBA Plan Trust Budget.

**2.5     Application of SBA Plan Trust Assets**.  Cash in the SBA Plan Trust constituting SBA Plan Trust Assets will be applied as follows:  (a) first, to make Distributions to holders of Allowed Administrative Expense Claims, including the Allowed Professional Fee Claims; (b) second, to make Distributions to holders of Allowed Class 1 Priority Non-Tax Claims; (c) third, to make Distributions to holders of Allowed Priority Tax Claims; (d) fourth to satisfy any expense of the SBA Plan Trust, including, without limitation, SBA Plan Trust Administrator compensation and expense reimbursement under Section 2.4 of this Trust Agreement and the reasonable, itemized fees and expenses of any professionals retained by the SBA Plan Trust Administrator (the "Trust Administrative Expenses"); (e) and fifth, to make Distributions to holders of Allowed Class 2 General Unsecured Claims under the Plan pursuant to, and in accordance with the priorities of, the Plan.

**2.6     General Duties, Obligations, Rights, and Benefits of the SBA Plan Trust Administrator.**  The SBA Plan Trust Administrator shall have all duties, obligations, rights, and benefits assumed by, assigned to or vested in the SBA Plan Trust under this Trust Agreement. Such duties, obligations, rights, and benefits include, without limitation, all duties, obligations, rights and benefits relating to the collection and liquidation of the SBA Plan Trust Assets, identification and registration of Claims as set forth herein, Distributions to Beneficiaries, administration of the SBA Plan Trust, and any other duties, obligations, rights, and benefits reasonably necessary to accomplish the purpose of the SBA Plan Trust under this Trust Agreement. The SBA Plan Trust Administrator's powers are exercisable in a fiduciary capacity consistent with and in furtherance of the purposes of this Trust Agreement and consistent with and subject to this Trust Agreement and not otherwise.  Considering the best interests of the Beneficiaries, except as otherwise expressly set forth herein, the SBA Plan Trust Administrator shall have the absolute right to pursue any contests or disputes in connection with Claims or other litigation related to the SBA Plan Trust and shall have no liability for the outcome of his or her decision.  The SBA Plan

Trust Administrator shall convene a meeting of the SBA Plan Trust Advisory Board after the Effective Date and no later than eight (8) weeks after the formation of the SBA Plan Trust so that such Committee may review and approve an initial budget (the "SBA Plan Trust Budget") and any related action plan for the administration of the SBA Plan Trust.

       **2.7**    **Replacement of the SBA Plan Trust Administrator.**  The SBA Plan Trust Administrator may resign at any time upon 30 days' written notice delivered to the members of the SBA Plan Trust Advisory Board, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor SBA Plan Trust Administrator.  The SBA Plan Trust Administrator may also be removed by the unanimous vote of the SBA Plan Trust Advisory Board, or by a final order of the Bankruptcy Court, to the extent that the Chapter 11 Case remains pending, for cause upon the motion of the SBA Plan Trust Advisory Board and after notice and a hearing.  The Debtor and the Committee shall jointly select a successor SBA Plan Trust Administrator; provided, that Committee shall file with the Bankruptcy Court a notice of the appointment of such successor SBA Plan Trust Administrator.  Upon his/her/its appointment, any successor SBA Plan Trust Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor SBA Plan Trust Administrator relating to the SBA Plan Trust shall be terminated.  In the event the SBA Plan Trust Administrator's appointment terminates by reason of dissolution, liquidation, resignation, or removal, the fees and expenses of any such SBA Plan Trust Administrator and the fees and expenses of any professional employed by such SBA Plan Trust Administrator, accrued through the effective date of his/her/its termination shall be promptly paid pursuant to Section 2.4 of this Trust Agreement, whether or not previously invoiced.  The provisions of Article V of this Trust Agreement shall survive the resignation or removal of any SBA Plan Trust Administrator.  Any prior SBA Plan Trust Administrator shall reasonably cooperate with any successor SBA Plan Trust Administrator and deliver all books and records and other papers and information in his or her control to such successor SBA Plan Trust Administrator. Any replaced SBA Plan Trust Administrator hereby appoints any successor SBA Plan Trust Administrator as his/her attorney in fact and agent with power of substitution for and in his or her name, place and stead to do all acts necessary to SBA Plan Trust administration.  Such appointment shall not be affected by any subsequent disability or incompetence of the replaced SBA Plan Trust Administrator.

       **2.8**    **Confidentiality.**  The SBA Plan Trust Administrator shall, during the period that he or she serves as SBA Plan Trust Administrator under this Trust Agreement and for a period of twelve (12) months following the earlier to occur of the termination of this Trust Agreement or his/her removal or resignation hereunder, hold confidential and not use for personal gain any material, non-public information of the SBA Plan Trust or pertaining to SBA Plan Trust administration.

       **2.9**    **SBA Plan Trust Continuance.**  The dissolution, liquidation, resignation, or removal of the SBA Plan Trust Administrator shall not terminate the SBA Plan Trust or revoke any existing agency created by the SBA Plan Trust Administrator pursuant to this Trust Agreement or invalidate any action theretofore taken by the SBA Plan Trust Administrator, and the provisions of this Trust Agreement shall be binding upon and inure to the benefit of the successor SBA Plan Trust Administrator and all its successors or assigns.

9

**ARTICLE III**
**THE SBA PLAN TRUST ADVISORY BOARD**

**3.1     Appointment.  A committee of one or more Beneficiaries of the SBA Plan Trust** (the "SBA Plan Trust Advisory Board"), whose initial members shall be Aris J. Karalis, Esquire, Karalis PC ("Karalis"), and Edmond M. George, Esquire, Obermayer Rebmann Maxwell and Hippel ("George"), on behalf of the administrative claimants, and [**two additional members selected by the Committee**] on behalf of the unsecured creditors in the Chapter 11 Case, is hereby appointed as of the Effective Date.  Upon the Allowed Professional Fee Claims, Administrative Expense Claims, Priority Non-Tax Claims and Priority Claims being paid as provided by the provisions of the Plan, Karalis and George shall resign from the SBA Plan Trust Advisory Board.

**3.2     Termination.**  The SBA Plan Trust Advisory Board shall continue in existence until such time as the SBA Plan Trust is terminated or its members unanimously elect to cause such board's dissolution.

**3.3     SBA Plan Trust Advisory Board Duties and Powers.**  The SBA Plan Trust Advisory Board shall represent the interests of the Beneficiaries during the existence of the SBA Plan Trust and shall have the obligation to undertake in good faith each of the acts and the responsibilities set forth for the SBA Plan Trust Advisory Board in this Trust Agreement to:

(a)     Approve, in accordance with the terms of this Trust Agreement, the amount of any extraordinary reserves and material distributions from the SBA Plan Trust;

(b)     Terminate, by unanimous vote, the SBA Plan Trust Administrator for cause;

(c)     With respect to the initial SBA Plan Trust Budget that must be adopted by the SBA Plan Trust within eight (8) weeks of the formation of the SBA Plan Trust, approve such initial SBA Plan Trust Budget;

(d)     Receive and review any report detailing the means by which the SBA Plan Trust Administrator invests and/or insures SBA Plan Trust Assets pending final distribution;

(e)     Approve any and all actions of the SBA Plan Trust Administrator by a majority vote that would have an extraordinary impact upon distributions to Beneficiaries, including, without limitation, the Allowance of any Disputed Claim if the Allowed amount of such claim exceeds $250,000, provided, however, that the SBA Plan Trust Administrator must provide the SBA Plan Trust Advisory Board ten (10) business days prior, written, detailed notice of any proposed claim Allowance if the final amount of such claim exceeds $100,000.

**3.4     Vacancies.**  Vacancies on the SBA Plan Trust Advisory Board may be filled by a person designated by the remaining members of the SBA Plan Trust Advisory Board or if no such members remain by the SBA Plan Trust Administrator.  Upon appointment of a successor member of the SBA Plan Trust Advisory Board, notice of such appointment will be filed with the Bankruptcy Court by the SBA Plan Trust Administrator during the pendency of the Chapter 11

Case.  Unless and until such vacancy is filled, the SBA Plan Trust Advisory Board shall function with such reduced membership.

      **3.5**    **Voting Rights.**  The SBA Plan Trust Advisory Board may create by-laws (if any) as it deems necessary or convenient.  The passage of such by-laws and all other decisions and action of the SBA Plan Trust Advisory Board, except as otherwise expressly set forth in this Trust Agreement, shall be by majority vote of the members of the SBA Plan Trust Advisory Board.  The SBA Plan Trust Advisory Board may meet and vote in person, telephonically, or take action by the assertion of votes after written report by electronic mail and each member of the Committee shall be entitled to receive reasonable notice of any such meeting.  A majority of the sitting members of the SBA Plan Trust Advisory Board shall constitute a quorum for all purposes.

      **3.6**    **Reporting Rights.**  The SBA Plan Trust Administrator shall report to the SBA Plan Trust Advisory Board on a quarterly basis, or such other period as subsequently agreed to by the SBA Plan Trust Advisory Board and the SBA Plan Trust Administrator, as to the status of all Distributions, material litigation, investment/insurance of SBA Plan Trust Assets, Claim reconciliation, and all other material matters affecting the SBA Plan Trust and shall provide the SBA Plan Trust Advisory Board with (i) an updated quarterly SBA Plan Trust Budget in substantially the form as the initial SBA Plan Trust Budget; and (ii) a copy of the most recent SBA Plan Trust Report as set forth in Section 6.2 of this Trust Agreement.

      **3.7**    **Compensation of the SBA Plan Trust Advisory Board and Its Agents and Professionals.**  Members of the SBA Plan Trust Advisory Board shall be entitled to receive reimbursement of all reasonable and documented out-of-pocket expenses incurred by each such member or any personnel employed by each such member in connection with the SBA Plan Trust Advisory Board's performance of its duties under this Trust Agreement.

**ARTICLE IV**
**PROSECUTION AND RESOLUTION OF ANY**
**CAUSES OF ACTION AND AVOIDANCE ACTIONS**

      **4.1**    **The SBA Plan Trust Administrator's Authority to Pursue, Settle, or Abandon Any Causes of Action or Avoidance Actions.**  In accordance with the provisions of this Trust Agreement and pursuant to the Plan and the Confirmation Order, the SBA Plan Trust Administrator, subject to the rights of the SBA Plan Trust Advisory Board, shall have the right, power, and interest to pursue, settle, or abandon any Causes of Action (except that the KPG-MCG Litigation shall be administered by the management of the Debtor), including Avoidance Actions not otherwise released by the confirmed Plan as a representative of the Debtor's Estate pursuant to Bankruptcy Code section 1123(b)(3). For the avoidance of doubt, the Debtor shall continue to administer the KPG-MCG Litigation in accordance with the Plan.

## ARTICLE V
## LIABILITY OF SBA PLAN TRUST ADMINISTRATOR AND SBA PLAN TRUST ADVISORY BOARD

**5.1      Standard of Care; Exculpation**.  Neither the Debtor, the Committee, the SBA Plan Trust Administrator, the SBA Plan Trust Advisory Board, nor any director, officer, affiliate, employee, employer, member, professional, successors, assigns, agent, or representative of the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract, or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Trust Agreement (including these exculpation provisions), as and when imposed on the SBA Plan Trust Administrator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the SBA Plan Trust Administrator's or the SBA Plan Trust Advisory Board's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Trust Agreement or as may arise by reason of any action, omission, or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any losses suffered or incurred by any Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted directly from the fraud, gross negligence or willful misconduct of such Exculpated Party in connection with the SBA Plan Trust.  Every act taken or omitted, power exercised, or obligation assumed by the SBA Plan Trust or any Exculpated Party pursuant to the provisions of this Trust Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the SBA Plan Trust or any Exculpated Party acting for and on behalf of the SBA Plan Trust and not otherwise; provided, however, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions.  Except as provided in the first proviso of the first sentence of this Section 5.1, every Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the SBA Plan Trust or any Exculpated Party shall have recourse only to the SBA Plan Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Plan Trust and the Exculpated Parties shall not be individually liable therefore.  In no event shall the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board (or its members) be liable for indirect, punitive, special, incidental, or consequential damage or loss (including, but not limited to, lost profits) whatsoever, even if the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board has been informed of the likelihood of such loss or damages and regardless of the form of action.  Any liability of the SBA Plan Trust Administrator under this Trust Agreement will be limited to the amount of fees paid to the SBA Plan Trust Administrator.  Any liability of any member of the SBA Plan Trust Advisory Board will be limited to the amount of expenses paid to such member.  For the avoidance of doubt, the foregoing shall not exculpate the Debtor's officers and directors in connection with claims arising prior to the Effective Date.

**5.2      Indemnification**.

(a)    The Debtor, the SBA Plan Trust Administrator, the Committee, the SBA Plan Trust Advisory Board and any director, officer, affiliate, employee, employer, member, professional, successor, assign, agent, or representative of the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by the SBA Plan Trust against any and all losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Trust Agreement (including these indemnity provisions), as and when imposed on the SBA Plan Trust Administrator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the SBA Plan Trust Administrator's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Trust Agreement or as may arise by reason of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party.  For the avoidance of doubt, the foregoing shall not serve to indemnify the Debtor's officers and directors in connection with claims arising prior to the Effective Date.

(b)    The SBA Plan Trust Administrator may establish a segregated account and fund such account with an appropriate amount (the "Indemnification Reserve") from the SBA Plan Trust Assets for the sole purpose of satisfying obligations of the SBA Plan Trust arising pursuant to the terms of this Section 5.2 (the "Indemnification Obligations").    Payment of any Indemnification Obligation shall be made first from the SBA Plan Trust Assets and, if the SBA Plan Trust Assets are fully depleted, then from the Indemnification Reserve.  Indemnification Obligations shall have priority over any other rights to receive a distribution of the SBA Plan Trust Assets.  No later than two years after the final distribution of SBA Plan Trust Assets to Beneficiaries (excluding distributions of funds from the Indemnification Reserve), or earlier in the SBA Plan Trust Administrator's sole discretion, the SBA Plan Trust shall close the account holding the Indemnification Reserve and return to the SBA Plan Trust any funds remaining in such account after satisfaction of all Indemnification Obligations associated with claims already asserted as of such date by Indemnified Parties for indemnification pursuant to this Section 5.2.  Any funds from the Indemnification Reserve that become SBA Plan Trust Assets shall be distributed as SBA Plan Trust Assets pursuant to the terms of this Trust Agreement.

(c)    The SBA Plan Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis.  Each Indemnified Party hereby undertakes, and the SBA Plan Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the SBA Plan Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Trust Agreement.

**5.3    No Liability for Acts of Successor/Predecessor SBA Plan Trust Administrators.**  Upon the appointment of a successor SBA Plan Trust Administrator and the delivery of the SBA Plan Trust Assets to the successor SBA Plan Trust Administrator, the predecessor SBA Plan Trust Administrator and any director, officer, affiliate, employee, employer,

professional, agent, or representative of the predecessor SBA Plan Trust Administrator shall have no further liability or responsibility with respect thereto. A successor SBA Plan Trust Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor SBA Plan Trust Administrator shall be in any way liable for the acts or omissions of any predecessor SBA Plan Trust Administrator unless a successor SBA Plan Trust Administrator expressly assumes such responsibility. A predecessor SBA Plan Trust Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor SBA Plan Trust Administrator for any events or occurrences subsequent to the cessation of its role as SBA Plan Trust Administrator. For the avoidance of doubt, this Section 5.3 shall not waive or otherwise discharge the obligations under Section 2.8 of this Trust Agreement.

  **5.4 Reliance by SBA Plan Trust Administrator and SBA Plan Trust Advisory Board on Documents or Advice of Counsel.** Except as otherwise provided in this Trust Agreement, the SBA Plan Trust Administrator and the SBA Plan Trust Advisory Board, and any director, officer, affiliate, employee, employer, member, professional, agent, or representative of the SBA Plan Trust Administrator or SBA Plan Trust Advisory Board may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board to be genuine and to have been presented by an authorized party. The SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board shall not be liable for any action taken or omitted or suffered by the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board in reasonable reliance upon the advice of counsel or other professionals engaged by the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board in accordance with this Trust Agreement. The SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board shall be fully indemnified by the SBA Plan Trust for or in respect of any action taken, suffered, or omitted by it and in accordance with such advice or opinion.

  **5.5 Insurance. The SBA Plan Trust Administrator shall maintain a fiduciary bond for the Assets transferred to the SBA Plan Trust and administered by the SBA Plan Trust Administrator**. The SBA Plan Trust Administrator, in consultation with the SBA Plan Trust Advisory Board, may purchase, using the SBA Plan Trust Assets, and carry all insurance policies and pay all insurance premiums and costs that the SBA Plan Trust Administrator deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Trust Agreement.

  **5.6 Survival.** The provisions of this Article V shall survive the termination of this Trust Agreement and the resignation, removal, liquidation, dissolution, or replacement of the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board.

**ARTICLE VI**
**GENERAL PROVISIONS CONCERNING**
**ADMINISTRATION OF THE SBA PLAN TRUST**

**6.1     Books and Records.**

(a)     The Debtor shall provide the SBA Plan Trust Administrator with reasonable access to and copies of the books and records of the Debtor at the sole cost and expense of the SBA Plan Trust for the purposes of resolving Disputed Claims and winding up the Chapter 11 Case.  For the purpose of this Section 6.1, the Debtor's books and records include physical books and records along with any data generated or maintained by computer or any other electronic medium as well as any such physical or electronic information of the Debtor maintained by or in possession of third parties, wherever located.

(b)     The SBA Plan Trust Administrator also shall maintain, in respect of the SBA Plan Trust and the Beneficiaries, books and records relating to the SBA Plan Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the SBA Plan Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.  Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to compute and allocate the income of the SBA Plan Trust among its Beneficiaries and to facilitate compliance with the tax reporting requirements of the Plan Trust.  Except as expressly provided in this Trust Agreement or as may be required by applicable law, nothing in this Trust Agreement is intended to require the SBA Plan Trust to file any accounting or seek approval of any court with respect to the administration of the SBA Plan Trust, or as a condition for making any payment or distribution out of the SBA Plan Trust Assets.  Beneficiaries shall have the right upon 30 days' prior written notice delivered to the SBA Plan Trust Administrator to inspect the SBA Plan Trust's books and records, including the Register (defined below), provided such Beneficiary shall have entered into a confidentiality agreement in form and substance reasonably satisfactory to the SBA Plan Trust Administrator.  Satisfaction of the foregoing condition notwithstanding, if:  (i) the SBA Plan Trust Administrator determines in good faith that the inspection of the SBA Plan Trust's books and records, including the Register, by any Beneficiary would be detrimental to the SBA Plan Trust, or (ii) such Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the SBA Plan Trust or the Debtor or any Debtor Estate representative, the SBA Plan Trust may deny such request for inspection.  Nothing in this Trust Agreement provides any Beneficiary with a right to review, inspect, seek discovery, or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.  So long as the Chapter 11 Case is pending, the Bankruptcy Court shall resolve any dispute between any Beneficiary and the SBA Plan Trust Administrator under this Section 6.1.

**6.2     Distribution of Interim Reports.**  Following the Effective Date, on a quarterly basis, until entry of a final decree closing the Chapter 11 Case and so long as the Chapter 11 Case is pending, the SBA Plan Trust shall file with the Bankruptcy Court, and distribute to the SBA Plan Trust Advisory Board, the United States Trustee for the Eastern District of Pennsylvania (the "United States Trustee"), the United States Trustee Form 11-PCR (post confirmation reports) (the "SBA Plan Trust Reports") regarding the liquidation or other administration of the SBA Plan Trust

15

Assets.  Upon written request by a Beneficiary, the SBA Plan Trust Administrator shall provide a copy of such SBA Plan Trust Report to such Beneficiary promptly following such request.  SBA Plan Trust Reports shall provide information required by the United States Trustee, including, without limitation descriptions of: (a) assets and liabilities of the SBA Plan Trust; (b) any distributions made and expenses paid pursuant to the Plan and this Trust Agreement during the applicable quarter; (c) any changes to the SBA Plan Trust Assets that have not been previously reported; and (d) any material action taken by the SBA Plan Trust Administrator in the performance of its duties under this Trust Agreement not previously reported.

**6.3    Final Accounting of SBA Plan Trust Administrator.**  The SBA Plan Trust Administrator (or any such successor SBA Plan Trust Administrator) shall, within 90 days after the termination of the SBA Plan Trust or the dissolution, liquidation, resignation, or removal of the SBA Plan Trust Administrator, render an accounting to the SBA Plan Trust Advisory Board containing the following information:

(a)    A description of the SBA Plan Trust Assets;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the SBA Plan Trust and the SBA Plan Trust Assets during the SBA Plan Trust Administrator's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and income;

(d)    The ending balance of all SBA Plan Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept; and

(e)    All known liabilities of the SBA Plan Trust.

**6.4    Distribution of Accounting**.  A copy of the final accounting described in Section 6.3 of this Trust Agreement shall be made available to Beneficiaries and the United States Trustee upon request.  To the extent that the Chapter 11 Case is still pending, the SBA Plan Trust Administrator shall serve notice on the United States Trustee that the final accounting is complete and available for distribution and file the notice with the Bankruptcy Court.

## ARTICLE VII
## BENEFICIAL INTERESTS AND BENEFICIARIES

**7.1    Register of Beneficiaries.**  The SBA Plan Trust Administrator shall maintain at all times a register of the names, distribution addresses, amounts of Allowed and Disputed Claims, and the ratable Beneficial Interests in the SBA Plan Trust of the Beneficiaries (the "Register"). The initial Register shall be delivered to the SBA Plan Trust Administrator by the Debtor and shall be based on (a) the holders of Administrative Expense Claims, including the holders of Professional Fee Claims (except for B&L that will be paid from any recovery from the KPG-MCG Litigation only and not paid from any other Assets of the Bankruptcy Estate or the SBA Plan Trust) as reconciled against the Orders issued by the Bankruptcy Court approving the foregoing claims,

or, if for a period after the Effective Date, as may be approved by the SBA Plan Trust Administrator, and (b) with respect to holders of Priority Tax Claims, Class 1 Priority Non-Tax Claims, and Class 2 General Unsecured Claims, the claims register maintained in this Chapter 11 Case as reconciled against the Debtor's Schedules and the Debtor's books and records and any relevant orders of the Bankruptcy Court Allowing or disallowing/expunging Claims. Pursuant to this Trust Agreement, subject to the aforementioned review and subject to the Plan and the Confirmation Order, the SBA Plan Trust Administrator is permitted to deem Allowed Claims in his/her sole discretion based upon this review without liability to the Debtor's Estate or Beneficiaries. All references in this Trust Agreement to holders of Beneficial Interests shall be read to mean Holders of record as set forth in the Register maintained by the SBA Plan Trust Administrator and shall exclude any Beneficial Owner not recorded on such Register. The SBA Plan Trust Administrator shall cause the Register to be kept at its office or at such other place or places as may be designated by the SBA Plan Trust Administrator from time to time.

7.2    **Trust Beneficial Interests.** The SBA Plan Trust Administrator shall establish the Register, identifying and registering Trust Beneficial Interests in such manner as the SBA Plan Trust Administrator shall determine in his or her sole discretion consistent with section 7.1 above. Each holder of an identified and Allowed Claim, including without limitation, any such Claim Allowed by order of the Bankruptcy Court, shall be deemed to receive Beneficial Interests in accordance with the treatment of such Claim under this Trust Agreement, and shall be entitled to Distributions as set forth herein.

7.3    **Interest Beneficial Only**. Ownership of a Beneficial Interest in the SBA Plan Trust shall not entitle any Beneficiary to any title in or to the SBA Plan Trust Assets or to any right to call for a partition or division of the SBA Plan Trust Assets or to require an accounting. This Trust Agreement grants exclusive authority over SBA Plan Trust administration to the SBA Plan Trust Administrator.

7.4    **Evidence of Beneficial Interest.** Ownership of a Beneficial Interest in the SBA Plan Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the SBA Plan Trust by the SBA Plan Trust Administrator, which may be the Register.

7.5    **Exemption from Registration.** The parties hereto intend that the rights of the holders of the Beneficial Interests arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.

7.6    **Transfers of Beneficial Interests.** Beneficial Interests in the SBA Plan Trust shall be nontransferable except upon death of the holder of such Beneficial Interests or by operation of law. The SBA Plan Trust shall not have any obligation to recognize any transfer of Claims occurring after the Effective Date, except as specified in this Section 7.6. Only those Holders of Claims of record stated on the claims register in the Chapter 11 Case as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized on the SBA Plan

17

Trust's Register, to the extent such claims are Allowed and/or otherwise identified or registered, for all purposes hereunder.

7.7     **Absolute Owners.**  The SBA Plan Trust Administrator may deem and treat the Beneficiary reflected as the owner of a Beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

7.8     **Change of Address.**  After the Effective Date, a Beneficiary may select an alternative distribution address by serving a written notice on the SBA Plan Trust Administrator identifying such alternative distribution address by first class mail.  Absent such notice, the SBA Plan Trust Administrator shall not recognize any such change of distribution address.  Such notification shall be effective only upon receipt by the SBA Plan Trust Administrator.

7.9     **Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary.**  The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the SBA Plan Trust shall not operate to terminate the SBA Plan Trust during the term of the SBA Plan Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the SBA Plan Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the SBA Plan Trust.

7.10     **Standing.**  Except as expressly provided in this Trust Agreement, a Beneficiary does not have standing to direct the SBA Plan Trust Administrator or the SBA Plan Trust Advisory Board to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the SBA Plan Trust Assets.

**ARTICLE VIII**
**DISTRIBUTIONS**

8.1     **Distributions to Beneficiaries from SBA Plan Trust Assets.**  All payments to be made by the SBA Plan Trust to any Beneficiary shall be made only in accordance with the Plan and this Trust Agreement and from the SBA Plan Trust Assets net of the reserves established by the SBA Plan Trust Administrator for payment of expenses related to the actions of the SBA Plan Trust and the SBA Plan Trust Administrator, if any, and only to the extent that the SBA Plan Trust has sufficient SBA Plan Trust Assets (or income and proceeds realized from the SBA Plan Trust Assets) to make such payments in accordance with and to the extent provided for in this Trust Agreement.

8.2     **Distributions; Withholding.**  The SBA Plan Trust Administrator shall make Distributions to Beneficiaries at such times and in such amounts as the SBA Plan Trust Administrator may determine in its sole discretion, after consulting with the SBA Plan Trust Advisory Board, after appropriate reserves have been established to fund the Trust Administrative Expenses (the "Required Reserve"); provided, in addition, to the Required Reserve, the SBA Plan Trust may retain and supplement from time to time a supplemental reserve (the "Supplemental Reserve") in such amount:  (a) as is otherwise reasonably necessary to meet contingent liabilities and to maintain the value of the SBA Plan Trust Assets during the term of the SBA Plan Trust

(such as the Indemnification Reserve), and (b) to make Distributions on account of Administrative Claims of the Debtor, including Claims of Professional Persons.  All such Distributions shall be made as provided, and be subject to any withholding, the Required Reserve, or the Supplemental Reserve as set forth in this Trust Agreement.  Additionally, the SBA Plan Trust Administrator may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the SBA Plan Trust Administrator's sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.  In addition, all Distributions under this Trust Agreement shall be net of the actual and reasonable costs of making such Distributions.

      **8.3**    **No Distribution Pending Allowance.**  No payment or Distribution shall be made with respect to any Claim or its holder unless and until such Claim becomes an Allowed Claim pursuant to the Plan and the Confirmation Order and registered by the SBA Plan Trust Administrator as being held by a Beneficiary.

      **8.4**    **Disputed Claims Reserve.**

      (a)    On or prior to the initial Distribution Date, the SBA Plan Trust Administrator shall establish one or more reserves, including the Disputed Claims Reserve (collectively, the "Disputed Claims Reserves") for Claims that are Disputed (the "Disputed Claims") and are not as yet Allowed under the Plan, which Disputed Claim Reserves shall be administered by the SBA Plan Trust Administrator.  The SBA Plan Trust Administrator shall reserve in cash, for distribution on account of each Disputed Claim, the distribution due on account of the full asserted amount (or such lesser amount as may be determined in the discretion of the SBA Plan Trust Administrator, but, for the avoidance of doubt, the SBA Plan Trust Administrator may seek estimation by the Court to ascertain the amount to be reserved on account of any such Disputed Claim) with respect to each Disputed Claim as if such Disputed Claim were Allowed. The SBA Plan Trust Administrator or its designated disbursement agent will, in the SBA Plan Trust Administrator's sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, if and when any such Disputed Claim is resolved consistent herewith and becomes an Allowed Claim, and any such amount will be distributable in respect of such Disputed Claim as such amount would have been distributable had the Disputed Claim been Allowed as of the Effective Date.  To the extent required by applicable law, the SBA Plan Trust will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims on behalf of such holders, and if and when such Disputed Claims are ultimately Allowed, Holders whose Disputed Claims are determined to be Allowed will receive Distributions from the Plan Trust net of the taxes that the SBA Plan Trust previously paid on their behalf.

      (b)    To the extent that the property placed in the Disputed Claims Reserve consists of cash, that cash shall be deposited in an interest-bearing account.  The SBA Plan Trust Administrator shall hold property in the Disputed Claims Reserves in trust for the benefit of the Holders of Claims ultimately determined to be Allowed that are registered.

      **8.5**    **Claims Reserves**.  On the Effective Date, the SBA Plan Trust Administrator shall establish and maintain one or more bank and/or other investment account(s) into which it shall, in accordance with this Section 8.5, deposit cash in amounts consistent herewith and the Plan and the Confirmation Order and may establish separate claim reserves, including the Required Reserve,

the Supplemental Reserves, and the Disputed Claims Reserves (collectively, the "Claims Reserves").  Each Allowed Claim held by a Beneficiary shall be paid in cash ratably, subject to and in accordance with this Trust Agreement from funds held in the Claims Reserves as soon as practicable after the date on which such Claim becomes an Allowed Claim.  If all such Claims have been paid in full, amounts remaining in the appropriate Claims Reserve, if any, may be used by the SBA Plan Trust Administrator in accordance with this Trust Agreement.

**8.6    Non-Cash Property.**  Any non-Cash SBA Plan Trust Assets may be sold, transferred, or abandoned by the SBA Plan Trust Administrator.  If, in the SBA Plan Trust Administrator's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the SBA Plan Trust Administrator believes, in good faith, such property has no value to the SBA Plan Trust, the SBA Plan Trust Administrator shall have the right to abandon or otherwise dispose of such property.  Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a cause of action against the SBA Plan Trust Administrator or any director, officer, employee, consultant, or professional of the SBA Plan Trust Administrator arising from or related to the disposition of non-Cash SBA Plan Trust Assets in accordance with this Section 8.6.

**8.7    Unclaimed Property.**

(a)    The SBA Plan Trust Administrator shall hold any Distributions to Beneficiaries not cashed or otherwise claimed by the applicable Beneficiary ("Unclaimed Property") for the benefit of such Beneficiary in accordance with the Plan and the Confirmation order.  No Distribution to such holders shall be made unless and until the SBA Plan Trust Administrator, in the exercise of commercially reasonable efforts, has determined the current address of such Holders, at which time such Distribution shall be made to such Holders without any interest thereon whatsoever.

(b)    Upon the conclusion of ninety (90) calendar days following the date that any Cash or other SBA Plan Trust Assets becomes Unclaimed Property, consistent with the Plan and the Confirmation Order, the Holders of Allowed Claims theretofore entitled to such Unclaimed Property shall be deemed to have forfeited such property, whereupon: (i) all rights and title to and interest in such Unclaimed Property shall immediately and irrevocably re-vest in the SBA Plan Trust for the other Beneficiaries, (ii) such Beneficiaries theretofore entitled to such Unclaimed Property shall cease to be entitled to such Unclaimed Property or any further distributions on account of such Beneficial Interests, which shall be deemed to be expunged to the extent of such forfeiture, and (iii) such Unclaimed Property shall be re-distributed by the SBA Plan Trust Administrator to the Holders of Allowed Claims that remain unpaid, either in whole or in part, consistent with the distribution provisions of the Plan, the Confirmation Order and this Trust Agreement.

**8.8    Minimum Interim Distributions and Charitable Contributions Following Final Distributions.**  The SBA Plan Trust Administrator shall not be required to make Distributions to any Beneficiary of Cash less than $100.00 (the "Minimum Interim Distribution Amount") in value except during the final Distribution before the termination of the SBA Plan Trust.  If a Beneficiary would be entitled to receive less than the Minimum Interim Distribution

Amount as of the time of a particular interim Distribution, the SBA Plan Trust Administrator shall retain the interim Distribution to combine with subsequent Distributions to such Beneficiary so that such Beneficiary may eventually be entitled to a Distribution in excess of the Minimum Interim Distribution Amount in value. If any of the final Distributions are: (a) less than the postage and other direct costs of making such final Distribution that the SBA Plan Trust Administrator would incur in sending the final Distribution to an applicable Beneficiary or (b) are undeliverable, are Unclaimed Property that revert to the SBA Plan Trust, or if all Allowed Claims, all Trust Administrative Expenses and all Claims of Professional Persons have been paid in full, then the SBA Plan Trust Administrator may contribute such monies to the charity of its choosing before terminating the SBA Plan Trust in accordance with Section 10.1 of this Trust Agreement.

**8.9    Fractional Dollars.**  Notwithstanding anything to the contrary contained in this Trust Agreement, the SBA Plan Trust Administrator shall not be required to make distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under the Plan or this Trust Agreement would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

**8.10    Reversion.**  Consistent with the Plan, upon conclusion of ninety (90) calendar days following the date any SBA Plan Trust Asset becomes Unclaimed Property, such SBA Plan Trust Asset shall be deemed Unclaimed Property under section 347(b) of the Bankruptcy Code or other applicable law and the Claim of any Beneficiary or its successors referenced in Section 8.7(a) hereof with respect to such Unclaimed Property shall be cancelled, discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.  The provisions of Section 8.7(b) of this Trust Agreement regarding Distribution of Unclaimed Property shall apply with equal force to distributions that are issued by the SBA Plan Trust Administrator, notwithstanding any otherwise applicable federal or state escheat, abandoned or unclaimed property law.

**8.11    Time Bar to Cash Payments.**  Consistent with the Plan, checks issued by the SBA Plan Trust on account of Beneficial Interests shall be null and void and shall be deemed Unclaimed Property if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section 8.11 shall be made directly to the SBA Plan Trust Administrator by the Beneficiary to whom the check was originally issued.  Any request in respect of such voided check shall be made in writing on or before ninety (90) calendar-days after the expiration of the ninety (90) calendar-day period following the date of the issuance of such check.  After that date, all Beneficial Interests in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall re-vest in and become property of the SBA Plan Trust as Unclaimed Property in accordance with section 347(b) of the Bankruptcy Code or otherwise applicable law and be distributed as Unclaimed Property in accordance with Section 8.7 hereof.

**8.12    Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the SBA Plan Trust Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision

in the Plan or the Confirmation Order to the contrary, the SBA Plan Trust Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms believed to be reasonable and appropriate. The SBA Plan Trust Administrator may require any Beneficiary to furnish to the SBA Plan Trust Administrator its social security number or employer or taxpayer identification number as assigned by the IRS and the SBA Plan Trust Administrator may condition any Distribution to any Beneficiary upon the receipt of such identification number. If a Beneficiary fails to provide information necessary to comply with any withholding requirements of any Governmental Unit within ninety (90) calendar days from the date of first notification to such Beneficiary of the need for such information, then the right of such Beneficiary to receive his/her Beneficial Interests may be discharged and forever barred and the proceeds of those Beneficial Interests may re-vest in and become property of the SBA Plan Trust as Unclaimed Property in accordance with applicable law and be distributed as Unclaimed Property in accordance with Section 8.7 hereof.

**8.13    Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a business day shall be made, without interest, on the next business day.

**8.14    No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such claim any Distribution in excess of the Allowed amount of such Claim.

**8.15    Setoff**. Except as otherwise provided in the Plan or in an agreement approved by a Final Order of the Bankruptcy Court, the SBA Plan Trust Administrator may, pursuant to applicable law (including section 553 of the Bankruptcy Code), set off against any Distribution related to any Claim, before such Distribution is made on account of such Claim, any and all of the claims, rights, and causes of action of any nature that the SBA Plan Trust may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the identification or registration of any Claim relating to a Beneficial Interest, or any other act or omission of the SBA Plan Trust Administrator, nor any provision of the Plan, shall constitute a waiver or release by the SBA Plan Trust Administrator of any such claims and rights that the SBA Plan Trust Administrator may possess against such Holder.

## ARTICLE IX
## TAXES

**9.1    Income Tax Status.** Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the SBA Plan Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the SBA Plan Trust. Any items of income, deduction, credit, and loss of the SBA Plan Trust shall be allocated for federal income tax purposes to the Beneficiaries.

**9.2    Tax Returns.** In accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the SBA Plan Trust Administrator shall file with the IRS annual tax returns on

Form 1041. In addition, the SBA Plan Trust Administrator shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the SBA Plan Trust Assets (or the income or proceeds thereof). Within a reasonable time following the end of the taxable year, the SBA Plan Trust shall send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on their federal income tax returns. The SBA Plan Trust may provide each Beneficiary with a copy of the Form 1041 for the SBA Plan Trust (without attaching any other Beneficiary's Schedule K-1 or other applicable information form) along with such Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The SBA Plan Trust shall allocate the taxable income, gain, loss, deduction, or credit of the SBA Plan Trust with respect to each Beneficiary.

**9.3    Withholding of Taxes and Reporting Related to SBA Plan Trust Operations.** The SBA Plan Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and, as set forth in Article VIII of this Trust Agreement, all Distributions made by the SBA Plan Trust shall be subject to any such withholding and reporting requirements. To the extent that the operation of the SBA Plan Trust or the liquidation of the SBA Plan Trust Assets creates a tax liability, the SBA Plan Trust shall promptly pay such tax liability out of the SBA Plan Trust Assets (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the SBA Plan Trust payable without Bankruptcy Court order. The SBA Plan Trust may reserve a sum, the amount of which shall be determined by the SBA Plan Trust Administrator, sufficient to pay the accrued or potential tax liability arising out of the operations of the SBA Plan Trust or the operation of the SBA Plan Trust Assets. The SBA Plan Trust Administrator, on behalf of the SBA Plan Trust, may enter into agreements with taxing authorities or other Governmental Units for the payment of such amounts as may be withheld.

**9.4    Valuations.** As soon as possible after the Effective Date, but no later than the delivery of the initial SBA Plan Trust Administrator Report in accordance with Section 6.2 of this Trust Agreement, the SBA Plan Trust Administrator shall make a good faith determination of the value of all of the SBA Plan Trust Assets and report as to the same to the SBA Plan Trust Advisory Board. Such valuation shall be used consistently by all parties (including, without limitation, the Debtor, the SBA Plan Trust, and the Beneficiaries) for all federal income tax purposes. The SBA Plan Trust Administrator also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the SBA Plan Trust that are required by any Governmental Unit.

**9.5    Treatment of Disputed Reserves.** Notwithstanding any other provision of this Trust Agreement to the contrary, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the SBA Plan Trust shall (a) treat any SBA Plan Trust Assets allocable to, or retained on account of, any Disputed Claims Reserve in accordance with Section 8.4 of this Trust Agreement as held by one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the IRC (Sections 641 et seq.), (b) treat as taxable income or loss of reserves related to Disputed Claims, with respect to any given taxable year, the portion of the taxable income or loss of the SBA Plan Trust that would have been

23

allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (c) treat as a distribution from reserves regarding Disputed Claims any increased amounts distributed by the SBA Plan Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the reserves related to Disputed Claims determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.  All Beneficiaries shall report, for income tax purposes, consistent with the foregoing.  In the event, and to the extent, any cash retained as reserves on account of Disputed Claims is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the SBA Plan Trust Administrator as a result of the resolutions of such Disputed Claims.

**9.6     Expedited Determination of Taxes.**  While the Chapter 11 Case is pending, the SBA Plan Trust may request an expedited determination of taxes of the Debtor and of the SBA Plan Trust, including the reserves relating to Disputed Claims, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtor and the SBA Plan Trust for all taxable periods through the termination of the SBA Plan Trust.

**ARTICLE X**
**TERMINATION OF SBA PLAN TRUST**

**10.1     Termination of SBA Plan Trust.**  The SBA Plan Trust Administrator shall be discharged and the SBA Plan Trust shall be terminated, at such time as: (a) all Disputed Claims have been resolved, (b) all of the SBA Plan Trust Assets have been liquidated, (c) all duties and obligations of the SBA Plan Trust Administrator hereunder have been fulfilled, (d) all Distributions required to be made by the SBA Plan Trust Administrator under this Trust Agreement have been made, and (e) the SBA Plan Trust Administrator has submitted its final reports to the SBA Plan Trust Advisory Board; provided, however, that in no event shall the SBA Plan Trust be terminated later than the term of the SBA Plan Trust, as such term may be extended in accordance herewith.

**10.2     Maximum Term.**  The SBA Plan Trust will terminate as soon as practicable but in no event later than the fifth anniversary of the Effective Date, or as otherwise set forth in the Plan or Confirmation Order; provided that the SBA Plan Trust Administrator may extend the term of the SBA Plan Trust for a finite period if such an extension is necessary to liquidate the SBA Plan Trust Assets or to complete any Distribution required hereunder.  Multiple extensions may be obtained so long as the SBA Plan Trust Administrator receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the SBA Plan Trust as a grantor trust for federal income tax purposes or an order of a court of competent jurisdiction extending the term of the SBA Plan Trust (which court may be the Bankruptcy Court).

**10.3    Events Upon Termination.**  At the conclusion of the term of the SBA Plan Trust, the SBA Plan Trust Administrator shall distribute the remaining SBA Plan Trust Assets, if any, to the Beneficiaries in accordance with this Trust Agreement.

**10.4    Winding Up, Discharge, and Release of the SBA Plan Trust Administrator.** For the purposes of winding up the affairs of the SBA Plan Trust at the conclusion of its term, the SBA Plan Trust Administrator shall continue to act as SBA Plan Trust Administrator until its duties under this Trust Agreement have been fully discharged or its role as SBA Plan Trust Administrator is otherwise terminated under this Trust Agreement.  Upon a motion by the SBA Plan Trust Administrator, if the Chapter 11 Case is still pending, the Bankruptcy Court may enter an order relieving the SBA Plan Trust Administrator, his or her agents and employees of any further duties, discharging, and releasing the SBA Plan Trust Administrator and releasing its bond, if any.  In winding up the SBA Plan Trust, the SBA Plan Trust Administrator shall have no duty to dissolve, or cancel the equity of the Debtor or any affiliate of the Debtor.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

**11.1    Amendments.**  The SBA Plan Trust Administrator, in consultation with the SBA Plan Trust Advisory Board and, as applicable, the Committee, may modify, supplement, or amend this Trust Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

**11.2    Debtor Cooperation.**    The Debtor (as reorganized or liquidated under the confirmed Plan), shall, upon request of the SBA Plan Trust Administrator, execute, acknowledge, and deliver such further instruments and do such further acts as may be reasonably necessary or proper to transfer to the SBA Plan Trust Administrator the SBA Plan Trust Assets.

**11.3    Waiver.**  No failure by the SBA Plan Trust or the SBA Plan Trust Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**11.4    Cumulative Rights and Remedies.**  The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.5    Irrevocability.**  This Trust Agreement and the SBA Plan Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Trust Agreement.

**11.6    Tax Identification Numbers.**    As set forth herein, the SBA Plan Trust Administrator may require any Beneficiary to furnish to the SBA Plan Trust Administrator its social security number or employer or taxpayer identification number as assigned by the IRS and the SBA Plan Trust Administrator may condition any Distribution to any Beneficiary upon the receipt of such identification number.

**11.7    Division of SBA Plan Trust.**  Under no circumstances shall the SBA Plan Trust Administrator have the right or power to divide the SBA Plan Trust unless authorized by Section

11.1 herein or by a court of competent jurisdiction, which may be the Bankruptcy Court, while the Chapter 11 Case is pending.

    **11.8    Applicable Law and Related Matters.**  The SBA Plan Trust shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to rules governing the conflict of laws.  While the Chapter 11 Case is pending, the parties hereto consent to the jurisdiction of the Bankruptcy Court to resolve any dispute in connection with this Trust Agreement.

    **11.9    Severability.**  In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by a court of competent jurisdiction, which may be the Bankruptcy Court, while the Chapter 11 Case is pending, to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

    **11.10  Limitation of Benefits.**  Except as otherwise specifically provided in this Trust Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto, the Beneficiaries, any rights or remedies under or by reason of this Trust Agreement.

    **11.11  Notices.**  Except as provided in Section 11.10 of this Trust Agreement, all notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a Person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

        If to the SBA Plan Trust Administrator:

        Tel.:
        Email:

        -and-


        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____

**11.12   Further Assurances.**   From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

**11.13   Integration.**   This Trust Agreement constitutes the entire agreement with, by and among the parties hereto, and there are no representations, warranties, covenants, or obligations except as set forth herein.  Except as otherwise provided in this Trust Agreement, the Plan, and the Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any Person, other than the parties hereto and the Beneficiaries, any rights or remedies under or by reason of this Trust Agreement.

**11.14   Construction with Plan.**   In the event of any inconsistency between the terms, conditions and provisions of this Trust Agreement and the terms, conditions and provisions of the Plan as confirmed by the Confirmation Order, the terms, conditions and provisions of the Plan, as so confirmed, shall control.

**11.15   Interpretation.**   The enumeration and Section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.  Any reference to the "SBA Plan Trust Administrator" shall be deemed to include a reference to the "SBA Plan Trust" and any reference to the "SBA Plan Trust" shall be deemed to include a reference to the "SBA Plan Trust Administrator," except for the references in Sections 5.1 and 5.2 of this Trust Agreement, and such other provisions in which the context otherwise requires.

**11.16   Counterparts.**   This Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Trust Agreement by facsimile or email in PDF format shall be equally effective as delivery of a manually executed counterpart.

*[Remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

Scungio Borst & Associates, LLC

By:_____
   Name:
   Title:     Authorized Signatory


By:_____
   Committee Member #1


By:_____
   Committee Member #2


By:_____
   Edmond M. George


By:_____
   Aris J. Karalis

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

[        ] solely in its capacity as SBA Plan Trust Administrator for the SBA Plan Trust:

_____

Name:

Title:

[Type here]